UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
AT LAW AND IN ADMIRALTY

CIGNA INSURANCE COMPANY
OF EUROPE S.A.-N.V.

        Plaintiff,

v.

FIRST SOUTH DEVELOPMENT
AND INVESTMENT LTD., And
WILLIAM STOVER,

        Defendants.

_____/

CASE NO. 00-6097 CV WPD

FLORIDA BAR NO. 503630

NIGHT BOX
FILED

MAR 3 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## MOTION TO DISMISS OR, IN THE
## ALTERNATIVE, FOR A STAY OF PROCEEDINGS

      Defendants First South Development and Investment Ltd. (hereinafter "First South") and William Stover (hereinafter "Stover"), by and through their undersigned attorneys, pursuant to Rules 12 and 57, Federal Rules of Civil Procedure, and Title 28 U.S.C. § 2201, move this Court to dismiss the plaintiff's complaint, or in the alternative, for a stay of these proceedings, and state as follows:

      1.    First South and Stover are the insureds under an all risks insurance policy issued by plaintiff CIGNA Insurance Company of Europe (hereinafter "CIGNA Europe"), covering the M/Y BASIL'S. The M/Y BASIL'S was a 116' motor yacht, built in 1993 and owned by First South. First South is a Cayman Islands corporation and Stover is a citizen and resident of Fort Lauderdale, Florida.

      2.    CIGNA Europe issued a policy covering the M/Y BASIL'S from July 1, 1999, through May 1, 2000. On July 25, 1999, during the term of the policy, the M/Y BASIL'S



caught fire and sank during a voyage from Chub Cay, Bahamas, to Fort Lauderdale, Florida. The fire and subsequent sinking resulted in the total loss of the vessel, and such loss is a covered peril under the policy.

      3.     Pursuant to the terms of the policy, First South and Stover submitted a notice of loss to CIGNA Europe on July 26, 1999, and a proof of loss on August 6, 1999. A copy of the proof of loss is attached as Exhibit "1".

      4.     The "Notice of Loss and Filing of Proof" clause of the policy states, in part, that:

> Assureds shall also file with the Assurers and/or their representatives a detailed sworn Proof of Loss, a Proof of Interest and in case of partial loss, receipted bills as soon as practicable following the date of loss.

      5.     The "Payment of Loss" clause of the policy states:

> In case of loss payable under this policy, such loss to be paid by Assurers within 90 days after receipt by the Assurers and/or their representative who issued this policy, satisfactory proof of loss, proof of interest in the property insured and in the event of partial loss, receipted bills, all indebtedness of the Assured being first deducted.

      6.     In breach of its obligations under the policy, CIGNA Europe, on August 17, 1999, stated that it rejected First South's and Stover's proof of loss because CIGNA Europe had not completed its investigation. A copy of CIGNA Europe's letter rejecting the insureds' proof of loss is attached as Exhibit "2".

      7.     Under the terms of the policy, CIGNA Europe was required to pay the agreed value of the vessel on or before November 4, 1999, which was the ninetieth day after

August 6, 1999. CIGNA Europe had no right under the policy to arbitrarily and unilaterally reject First South's and Stover's proof of loss due to an incomplete investigation on CIGNA Europe's part.

8.     CIGNA Europe's unauthorized rejection of First South's and Stover's proof of loss constituted a denial of the insured's claim and/or an anticipatory repudiation by CIGNA Europe of CIGNA Europe's obligations to pay the agreed value of the vessel under the policy on or before November 4, 1999.

9.     Based upon CIGNA Europe's unauthorized rejection of the proof of loss and CIGNA Europe's consequent repudiation of its obligation to pay the claim by November 4, 1999, First South and Stover filed suit in the Circuit Court of Broward County, case no.: 99-017385 (07), on October 11, 1999.

10.     Despite First South's and Stover's demand for payment, CIGNA Europe refused to pay the claim on November 4, 1999, and it also refused to state its coverage decision.

11.     CIGNA Europe did not communicate its coverage decision until January 20, 2000, at which time it denied coverage. On that same day, CIGNA Europe filed this lawsuit.

12.     On January 25, 2000, First South and Stover filed an amended and supplemental complaint in the Broward County Circuit Court. The summons, complaint and amended and supplemental complaint, copies of which are attached as Exhibits 3, 4 and 5, respectively, were served on CIGNA Europe on January 25, 2000. First South and Stover accepted service of process of CIGNA Europe's complaint in this case on February 16, 2000.

13.     This Court should dismiss CIGNA Europe's complaint or stay these proceedings for the following reasons:

I.      The "Service of Suit" clause in the policy gives the
        insureds the right to choose the forum;

II.     CIGNA Europe, as an unauthorized insurer, is prevented by
        Florida law from filing suit in Florida;

III.    Federal courts have broad discretion to decline to exercise
        jurisdiction over declaratory judgment actions if there is a
        parallel state court proceeding. This is especially true when
        an insurance company denies coverage and files suit at the
        same time, attempting to prevent the insured from being
        able to seek coercive relief in the forum of his or her
        choice.


## MEMORANDUM OF LAW


## I. THE INSURANCE POLICY GIVES THE INSUREDS THE RIGHT TO CHOOSE THE FORUM


### a.    Service of Suit Clause

Section "F" of the policy, entitled "Service of Suit", states that "[i]t is agreed that

in the event of the failure of the Assurers to pay any amount claimed to be due hereunder, the

Assurers, at the request of the Assured (or Reinsured), will submit to the jurisdiction of any

Court of competent jurisdiction within the United States and will comply with all requirements

necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in

accordance with the law and practice of such Court." Section "F" of the policy is attached to the

complaint at Exhibit 6 to this motion.

The issues in this case are also before the Broward County Circuit Court in a case

filed by the insureds prior to CIGNA Europe filing this declaratory judgment action. The

insureds have requested that CIGNA Europe submit to the jurisdiction of the Broward County

Circuit Court in accordance with its obligations under the Service of Suit clause, but CIGNA

Europe has refused. Instead, CIGNA Europe insists on maintaining this action which it filed the same day it notified the insureds that it was denying coverage. CIGNA Europe's actions were an attempt to prevent the insureds from being able to choose the forum for their action for coercive relief.

In Aegon Insurance Co. Ltd. v. Willamina Lumber Company, 844 F. Supp 332 (S.D. Texas 1994), the court stayed the insurer's declaratory judgment action pending the outcome of a *later*-filed state court claim asserted by the insured. The insurance policy in Aegon contained a service of suit clause almost identical to the one in this case. The clause in Aegon stated that:

> In the event of the failure of the insurer hereon to pay any amount claimed to be due hereunder, the insurer hereon, at the request of the insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States.

844 F.Supp. at 332.

The Court held that the clause explicitly granted the insured "the right to control the choice of jurisdiction regardless of who files first and in what court." 844 F.Supp. at 332. The court further held that the clause would require remand if the insurer had removed the case. Finally, the court stated that, even if it had discretion to go forward, there was ample reason to stay the case, not only because of the service of suit clause, but also based on the court's conclusion that the insurer "clearly filed this case in anticipation of the state-court litigation filed by Willamina." 844 F.Supp. at 332.

Similarly, in Foster v. Chesapeake Insurance Co. Ltd., 933 F.2d 1207 (3d Cir. 1991), the court stated that "by consenting to 'submit' to 'any court' of competent jurisdiction 'at the request of the Company' and to comply with all requirements necessary to give 'such court' jurisdiction, Chesapeake agreed to go to, and stay in, the forum chosen by Mutual Fire." 933 F.2d at 1216 – 1217.

It has also been established that a service of suit clause is a waiver of an insurer's right to remove a case from state to federal court.[1] Additional cases which have held that the service of suit clause is, at least, a waiver of an insurer's right to remove include City of Rose City v. Nutmeg Insurance Co., 931 F.2d 13 (5th DCA 1991), and Archdiocese of Milwaukee v. Underwriters at Lloyds London, 955 F.Supp. 1066 (E.D. Wis. 1997).

Although there are some cases which have held that the service of suit clause does not prevent an insurer from filing a lawsuit if the insured has not filed a lawsuit, there is no case to support CIGNA Europe's efforts in this case to go forward in a declaratory judgment action in federal court, despite the service of suit clause, when the insured previously filed a claim in state court. The policy obligates CIGNA Europe to "comply with all requirements necessary" to give the state court jurisdiction, but CIGNA Europe is doing the opposite, and attempting to wrest jurisdiction from the state court. CIGNA Europe's actions in this regard are an additional breach of the policy.

Based upon the service of suit clause, this Court should dismiss or stay these proceedings so that the insureds can pursue their claim in state court.

---

[1] There appear to be two separate service of suit clauses in the policy issued by CIGNA Europe. The first service of suit clause in the policy, which is in Section "F" of the main body of the covernote, is the clause relied upon by the insureds. There is a second "Institute Service Of Suit Clause (USA)" in a group of documents attached to the covernote which states that nothing in *that* service of suit clause constitutes a waiver of CIGNA Europe's right to remove.

b.    **The State Court Litigation**

Based upon recent experience with yacht insurance underwriters, counsel for the insureds knew that CIGNA Europe would probably select a forum and file suit at or before the time it communicated its decision to deny coverage, in order to prevent Stover and First South from being able to file suit in Broward County Circuit Court.

The recent experience involved a yacht claim on a policy issued by Lloyd's. The beneficial owner of the vessel lived in Fort Lauderdale where he often kept the vessel. His daughter, in whose name he had placed the vessel, lived in Canada and the vessel flew the Canadian flag. Immediately after Lloyd's learned that we had been retained to file suit, Lloyd's filed suit in Canada before we were able to file suit in Broward County Circuit Court. The Canadian judge refused to dismiss the Canadian action and the judge in Broward County dismissed the lawsuit because Lloyd's had filed the Canadian case first.

In this case, we faced the possibility of CIGNA Europe suing the insureds in England, where CIGNA Europe claims the policy was effectuated, or in the Cayman Islands, where the vessel is registered, or simply filing a declaratory judgment action in federal court. As it turned out, CIGNA Europe chose to do the latter and filed this lawsuit the same day it denied coverage. Although we could not predict where CIGNA Europe would file suit, we were correct that it would not give notice of its decision to deny coverage before it filed suit, in an effort to preempt the choice of forum. Accordingly, when CIGNA Europe committed its first breach by rejecting a valid proof of loss, the insureds filed suit at that time in their choice of forum.

II.    **CIGNA EUROPE IS PREVENTED BY FLORIDA LAW**
       **FROM FILING SUIT IN FLORIDA**

Section 626.903, Florida Statutes, states that "[a]s to transactions not permitted under s. 624.402, no unauthorized insurer shall institute, file, maintain, or cause to be instituted, filed, or maintained, any suit, action or proceeding in this State to enforce any right, claim or demand, arising out of any insurance transaction in this State."

Section 624.402, Florida Statutes, sets out seven categories of actions in which unauthorized insurers may engage in the State of Florida. The only potentially applicable subsection is subsection "2". Section 624.402 provides that "a certificate of authority shall not be required of an insurer with respect to:

> (2) Transactions involving a policy, subsequent to issuance thereof, covering only subjects of insurance not resident, located, or expressly to be performed in this state at the time of issuance, and lawfully solicited, written, or delivered outside this state."

Section 624.10 states that:

> "Transact" with respect to insurance includes any of the following, in addition to other applicable provisions of this code:
>
> 1. Solicitation or inducement.
>
> 2. Preliminary negotiations.
>
> 3. Effectuation of a contract of insurance.
>
> 4. Transaction of matters subsequent to effectuation of a contract of insurance and arising out of it.

8

In addition, § 624.11(1), Florida Statutes, states that "no person shall transact insurance in this state, or relative to a subject of insurance resident, located, or to be performed in this state, without complying with the applicable provisions of this code."

CIGNA Europe transacted insurance in Florida when it issued the policy covering the BASIL'S. The insureds on the policy are First South, a Cayman corporation, and Stover, a resident of Fort Lauderdale. Also, the application clearly states that the subject of the insurance, the M/Y BASIL'S, would be located in Florida during summers. When a Florida resident insures property located in Florida through a Florida insurance agent, the insurance company providing the coverage is transacting insurance in Florida.

Since CIGNA Europe was not authorized to transact insurance in Florida, it is prohibited by § 626.903, Florida Statutes, from maintaining this action.

## III.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS THIS CASE IN FAVOR OF THE PENDING STATE COURT ACTION

### a.    District Courts have Broad Discretion to Refuse to Exercise Jurisdiction Under the Declaratory Judgment Act

The United States Supreme Court has twice held that an insurer's declaratory judgment action should be dismissed or stayed in federal court in favor of parallel state court proceedings. Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), and Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). In Wilton, the Supreme Court stated that "[o]ver 50 years ago, in Brillhart . . . this Court addressed circumstances virtually identical to those present in the case before us today. An insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an

9

insurance policy." 515 U.S. at 282. The insureds in <u>Wilton</u> requested coverage from Lloyd's following a jury verdict against the insureds. Lloyd's filed a declaratory judgment action in the Southern District of Texas under the Declaratory Judgment Act requesting the court to determine that Lloyd's policies did not cover the verdict in question. Shortly thereafter, the insureds filed suit in Texas state court. The case was not removable because certain Texas insurance companies were defendants along with Lloyd's. In describing the discretion accorded to district courts, the Supreme Court stated that "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court 'may declare the rights and other legal relations of any interested parties seeking such declaration . . . .' The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface. " 515 U.S. at 286.

        In <u>Brillhart</u>, the Supreme Court held that, although the district court had jurisdiction of the suit under the Federal Declaratory Judgments Act, "it was under no compulsion to exercise that jurisdiction." 316 U.S. at 494. The court explained that "[o]rdinarily, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." <u>Id.</u> at 495. The question for a district court presented with a suit under the Declaratory Judgment Act is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." <u>Ibid.</u> The court held that, in determining whether to dismiss or stay an action under the

Declaratory Judgment Act, the court should examine "the scope of the pending state court proceeding and the nature of defenses open there." Ibid. This inquiry, in turn, entails consideration of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." Ibid.

This Court should apply the standards set forth in Wilton and Brillhart and dismiss or stay CIGNA Europe's lawsuit. Although CIGNA Europe may try to argue that one of its seven counts is for rescission, not declaratory relief, this would be a distinction without a difference because paragraphs 76 and 77 of the complaint request declaratory relief as to all counts. Moreover, CIGNA Europe filed this lawsuit in anticipation of a coercive suit being brought by the insureds in state court. It is more fitting that the insureds be the plaintiffs in an action seeking coercive relief, which is the situation in the state court lawsuit. Also, based upon CIGNA Europe's references to this Court's admiralty jurisdiction, it likely that CIGNA Europe will take the position that First South and Stover are not entitled to a jury in this action. While the insureds do not concede that they will not be entitled to a jury in this Court, they have demanded a jury in the state court case and will undoubtedly be entitled to a jury there. The fact that CIGNA Europe agreed in the service of suit clause to submit to the insureds' choice of forum, and the fact that CIGNA Europe violated Section 626.903 by filing suit in Florida, are sufficient reasons in themselves for dismissal, but should also weigh heavily in this Court's exercise of its discretion to dismiss this lawsuit.

Federal courts in Florida have consistently applied Wilton and Brillhart and dismissed declaratory judgment actions filed by insurers in favor of pending Florida state court proceedings. In Lumbermans Mutual Casualty Co. v. Insurance Co. of the State of

Pennsylvania, 45 F.Supp. 2d 1349 (S.D. Fla. 1999), the district court ordered a stay of the insurer's declaratory judgment action in favor of pending state litigation involving the same coverage issue. The court stated that "[w]hile district courts may not decline to hear actions for declaratory relief 'on the basis of whim or personal disinclination' . . . the standard is clearly generous." 45 F.Supp. 2d at 1351. Applying the Brillhart guidelines to the case before it, the court found that the same issues presented in the declaratory judgment action were before the Florida state court in a third-party claim brought by the insured against the insurer. The third-party complaint was served three months after the insurer filed its declaratory judgment action. The district court noted that the adjudication of the third-party claim would require the same arguments, including interpretation of the same provisions of the insurance policy, and the same witnesses as the declaratory judgment action.

Similarly, in Casualty Indemnity Exchange v. Hugh Croft Enterprises, Inc., 714 F.Supp. 1190 (S.D. Fla. 1989), the district court dismissed the insurer's declaratory judgment action. The insured moved to add the insurance agent as a party plaintiff, which destroyed diversity. In describing the action, the court stated that "[i]n many respects, this action is upside-down. The plaintiff is the defendant's insurer who, after denying coverage on plaintiff's claim, brought this declaratory judgment action." 714 F.Supp. at 1191. The court further stated that a party's declaratory judgment action should be dismissed where it was filed for purposes of "procedural fencing." The court said that "[p]rocedural fencing exists when a party in filing a declaratory action accomplishes something that the party could not do through removal." 714 F.Supp. at 1193. The court further stated that a declaratory judgment action "should not be utilized for the purpose of anticipating the trial of an issue in a court of coordinate jurisdiction. A declaratory judgment is not a mechanism to furnish a new choice of tribunals or to draw into

12

federal courts the adjudication of causes properly cognizable by the courts of the states. Moreover, the declaratory remedy is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse." 714 F.Supp. at 1193, citing State Farm Fire and Casualty Co. v. Taylor, 118 FRD 426, 431 (M.D. N.C. 1988). The court described the insurer's conduct in filing the declaratory judgment action as "a type of procedural fencing," Ibid., and noted that the insurer filed the suit shortly after denying coverage. The court stated that "[i]n attempting to beat the defendant to the punch, the plaintiff hoped to avoid the usual non-diverse situation of the insured suing both the insurer and the insurance agent. If the plaintiff waited until the defendant sued in state court, the plaintiff -- then a defendant -- would not be able to remove. The plaintiff has misused the Declaratory Judgment Act in attempting to accomplish a 'back door' removal." Ibid.

        In the present case, CIGNA Europe attempts to accomplish the same result denied the insurer in Hugh Croft. CIGNA Europe filed this lawsuit the same day it denied coverage in an obvious attempt to deprive the insureds of their choice of forum. The only different is, in this case, the insureds anticipated that CIGNA Europe would probably try to usurp the choice of forum, and they filed suit in state court first. The state court case filed by the insureds is not removable because both CIGNA Europe and one of the insureds, First South, are aliens. See, International Shipping Co. v. Hydra Offshore, Inc., 875 F.2d 388 (2d Cir. 1989). Also, the fact that a case involves admiralty or maritime claims does not bring the case within Federal question jurisdiction. See, Romero v. International Terminal Operating Co., 358 U.S. 351, 79 S.Ct. 468 (1959).

        The insurer filed a declaratory judgment action in federal court the same day it denied coverage in General Star Indemnity Co. v. Puckit, L.C., 818 F.Supp. 1526 (M.D. Fla.

1993). The insured, Puckit, operated a manufacturing facility in Florida and insured the facility with General Star. The property was destroyed by fire and Puckit submitted a claim to General Star. General Star denied the claim based on its argument that the insurance application contained misrepresentations or omissions. That same day, General Star filed its declaratory judgment action in the Middle District of Florida. The insured filed a coercive suit in Florida state court one month later. In discussing its decision to dismiss the case, the court stated that "declaratory complaints filed in anticipation of a suit and used to forum shop are to be actively discouraged, and may be considered in review of a motion to dismiss any such declaratory action." 818 F.Supp. at 1532. The court noted that General Star had made the decision to deny coverage several days before filing suit, but that it waited until the day it filed suit to give notice of denial of the claim.

In this case, First South and Stover have no direct evidence as to when CIGNA Europe decided to deny coverage. However, it is not likely that CIGNA Europe reached its decision to deny coverage and prepared and filed its 19-page, 7-count complaint the same day. It is more likely that CIGNA Europe delayed in communicating its coverage decision until it filed this lawsuit.

One of the cases relied upon by the court in General Star was Mission Insurance Co. v. Puritan Fashions Corporation, 706 F.2d 599 (5th Cir. 1983). In that case, the Fifth Circuit affirmed the District Court's dismissal of the insurer's declaratory judgment action. The insurer had agreed to extend the contractual limitations period for the insured to file suit until thirty days after the insurer gave written notice of its coverage decision. The insurer thereafter orally denied the claim and filed the declaratory judgment action the same day. The insured filed suit three weeks later in state court. The Fifth Circuit concluded that there was sufficient evidence to

14

support the District Court's conclusion that the insurer filed its action in anticipation of the insured filing suit in state court. The court stated that "there can really be no dispute that [the insurer] expected [the insured] to file suit if its claim was denied, and this suit was in anticipation of that expected action. The District Court therefore acted within its discretion in considering the anticipatory nature of this suit." 706 F.2d at 602.

Similarly, the court in Commercial Union Insurance Companies v. Torbaty, 955 F.Supp. 1162 (E.D. Mo. 1997), dismissed the insurer's declaratory judgment action seeking to void the insurance policy based upon alleged misrepresentations. The insurer denied coverage and filed the declaratory judgment action three days later. The insured filed suit in Missouri state court one month later. In explaining its decision to dismiss the case, the court stated that "plaintiff gave defendant merely three days notice of its position prior to filing suit. The Court finds that plaintiff had not given 'adequate notice' of its position on the policy claim before bringing this action." 955 F.Supp. at 1163.

The Eleventh Circuit, in Old Repulic Union Insurance Co. v. Tillis Trucking Co., Inc., 124 F.3d 1258 (11th Cir. 1997), affirmed the District Court's dismissal of the insurer's declaratory judgment action. The insured was sued in state court and the jury entered a large punitive award against the insured. The insurer filed the declaratory judgment action three days after the jury verdict requesting the District Court to, among other things, declare the Alabama Wrongful Death Act unconstitutional. Citing to Wilton, the Eleventh Circuit reiterated the broad discretion conferred on federal courts in deciding whether to declare the rights of litigants. The Eleventh Circuit affirmed the dismissal of the insurer's action based upon "considerations of practicality and wise judicial administration", as well as the Younger abstention doctrine.

15

**b.    Annotation of Cases in Which an Insurer's Federal Court Declaratory Judgment Action was Dismissed in Favor of Parallel State Court Proceedings**

In addition to the above cases, there are many federal court decisions dismissing declaratory judgment actions filed by insurers in favor of state court proceedings filed by the insureds. Due to the number of such cases, the defendants will not discuss all of the cases in detail, but provide the following annotations and procedural status:

**Circuit Courts of Appeal:**

**St. Paul Fire and Marine Insurance Co. v. Runyon**, 53 F.3d 1167 (10th Cir. 1995) – Affirmed the District Court's dismissal of the insurer's declaratory judgment action filed one day before the insured filed breach of contract case in state court;

**Continental Cas. Co. v. Robsac Industries**, 947 F.2d 1367 (9th Cir. 1991) – Reversed a summary judgment in favor of insurer based upon a finding that the District Court erred in exercising its discretion to grant declaratory relief in light of pending parallel state action filed one month before the declaratory judgment suit was filed;

**Mitcheson v. Harris**, 955 F.2d 235 (4th Cir. 1992) – Reversed the District Court's summary judgment in favor of the insurer based upon its determination that the District Court should have dismissed the declaratory judgment action due to a pending parallel state court case, filed before the declaratory judgment action;

**Aetna Casualty and Surety Co. v. Jefferson Trust and Savings Bank of Peoria**, 993 F.2d (8th Cir. 1993) – Affirmed the District Court's dismissal of the declaratory judgment action which the insurer filed three weeks before the insured filed suit in state court;

**National Union Cire Ins. Co. Of Pittsburgh v. Karp**, 108 F.3d 17 (2nd Cir. 1997) – Affirmed the District Court's dismissal of the insurer's interpleader action based upon previously-filed state court direct action against the insurer;

**Continental Cas. Co. v. Fuscardo**, 35 F.3d 963 (4th Cir. 1994) – Affirmed the District Court's dismissal of the insurer's declaratory judgment action due to pending tort lawsuit in state court, although none

of the insurance issues were being litigated in state court at the time the declaratory action was filed;

**American National Fire Ins. Co. v. Hungerford**, 53 F.3d 1012 (9th Cir. 1995) – Reversed District Court's entry of summary judgment in favor of insured based upon its determination that the District Court erred in granting declaratory relief since issues necessary to declaratory relief were before state court;

**Continental Ins. Co. v. Bayless & Roberts, Inc.**, 366 F.Supp. 287 (D. Alaska 1973, aff'd 503 F.2d 1379 (9th Cir. 1974) – Affirmed District Court's dismissal of insurer's declaratory judgment action filed one month before insured's breach of contract claim in state court;

**Employers Insurance of Wausau v. Missouri Electric Works, Inc.**, 23 F.3d 1372 (8th Cir. 1994) – Affirmed the District Court's dismissal of the insurer's declaratory judgment action since insurer had been added as a defendant to pending state court litigation involving the same issues four days before the declaratory judgment action was filed.

**District Court Cases**:

**Phoenix Insurance Co. v. Harby Marina, Inc.**, 294 F.Supp. 663 (N.D. Fla. 1969) – District Court dismissed insurer's declaratory judgment action where state court lawsuit was pending against insured and insured had obtained leave from the state court to file a third-party claim against insurer;

**State Farm Fire and Casualty Co. v. Taylor**, 118 F.R.D. 426 (M.D. N.C. 1988) – District Court dismissed fire insurer's declaratory judgment action which was filed three days before insurer denied coverage based upon the inequity of permitting a declaratory plaintiff to gain precedence in time and forum by filing a declaratory action which is merely anticipatory of a parallel state action;

**U.S. Fidelity and Guaranty Co. v. Algernon-Blair, Inc., etc., et al.**, 705 F.Supp. 1507 (M.D. Ala. 1988) – District Court dismissed contractor's surety's declaratory judgment action in favor of pending Florida state court action between parties to construction contract;

**National Union Fire Insurance Co. of Pittsburgh v. Freeport-McMoran, Inc.**, 767 F.Supp. 568 (D. Delaware 1991) – District Court dismissed insurer's declaratory judgment action in favor of later-filed state court action where it appeared that insurer's action had been filed in anticipation of the other pending proceeding;

17

**Hartford Acc. & Indem. Co. v. Hop-On Intern. Corp.**, 568 F.Supp. 1569 (S.D. N.Y. 1983) – District Court dismissed insurer's declaratory judgment action against insured in favor of state court action filed by insured one month after declaratory judgment action was filed;

**American Economy Ins. Co. v. Williams**, 805 F.Supp. 859 (D.Idaho 1992) – District Court dismissed insurer's declaratory judgment action which the insurer filed five months before the insured was sued by the state for environmental damages, based upon the court's determination that factual determinations in the state lawsuit would be necessary to a determination of coverage;

**Canal Ins. Co. v. Morgan**, 961 F.Supp. 145 (S.D. Miss. 1996) – District Court dismissed insurer's declaratory judgment action against insured which was filed after the insured sued the insurer in state court for uninsured motorist benefits;

**Federal Insurance Co. v. Sprigg Lake Investment Corp., et al.**, 915 F.Supp. 122 (E.D. Missouri 1996) – District Court dismissed insurer's declaratory judgment action in favor of state court garnishment proceedings commenced by judgment creditors eleven months after declaratory judgment action was filed;

**Safeco Insurance Co. of America v. Miller**, 591 F.Supp. 590 (D. Maryland 1984) – District Court dismissed insurer's declaratory judgment action against insured in favor of later-filed state court proceeding in another state based upon the fact that the other state's law would apply to the case and because the pending federal litigation duplicated the pending state litigation.

c.  **Designation of an Action as an Admiralty Claim Does Not Confer any Additional Rights to a Declaratory Judgment**

Although CIGNA Europe's jurisdictional allegations in its complaint include admiralty jurisdiction, it has been held that invocation of admiralty jurisdiction does not give a party any additional right to a declaratory judgment. In Travelers Indemnity Co. v. Boles, 503 F.Supp. 179 (N.D. Cal. 1980), aff'd, 673 F.2d 1340 (9th Cir. 1982), the court dismissed the insurer's declaratory judgment action. The insured owned a fishing vessel which grounded and sank. The insured filed a claim with its insurers, and the insurers denied coverage claiming that

18

the insured breached a warranty in the policy. The insurers filed a declaratory judgment in federal court and invoked the court's admiralty jurisdiction under Rule 9(h). Three days later, the insured filed suit in California state court. The insured moved to dismiss the declaratory judgment action based upon the parallel state court case. The insurers contended that the court had no discretion to decline to exercise jurisdiction over their admiralty action. The District Court, citing to Brillhart, supra, stated that the Federal Declaratory Judgment Act was not intended "to permit the use of a declaratory judgment action in federal court merely as a means of asserting what otherwise would be defenses to a claim brought in state court by a defendant in the federal declaratory action." 503 F.Supp. at 181. In response to the insurers' argument that dismissal would deprive them of their historical right to proceed in admiralty, the court observed that "at least as recently as 1968 it has been held unequivocally that an admiralty court cannot grant declaratory relief." 503 F.Supp. at 182. Although the insured did not argue that the court would be prohibited from granting declaratory relief, the court said that "it surely cannot be argued that declaratory relief has any deep historical roots in admiralty . . . In short, the court is unable to discern any special considerations in admiralty which would prevent it from exercising the discretion regarding declaratory relief available in other situations, and the companies have cited no authority to that effect." Ibid. See, also, Homestead Insurance Co. v. Kim Hung, Inc., 1994 WL 518261 (E.D. La. 1994) (vessel insurer's federal declaratory judgment action dismissed in favor of pending state court action).

## IV.   CONCLUSION

This Court should dismiss or stay this declaratory judgment action in favor of the state court case involving the identical parties and identical issues. The service of suit clause

19

allows the insureds to choose the forum and, moreover, obligates CIGNA Europe to "comply with all requirements" to give the state court jurisdiction. Not only does CIGNA Europe have a contractual obligation to dismiss this action, it filed the action in violation of Section 626.903, which prohibits unauthorized insurers who have entered into a transaction of insurance in Florida from filing suit in Florida based on that transaction. Finally, this Court should exercise its broad discretion to decline to exercise jurisdiction based upon the service of suit clause, CIGNA Europe's violation of Section 626.903, the fact that there is a pending state court proceeding involving the identical parties and issues which was filed before this proceeding, the fact that it is more fitting that the party seeking coercive relief would be the plaintiff, as in the state court proceeding, the fact that CIGNA Europe filed this action in an attempt to prevent the insureds from having their choice of forum, and so that Stover and First South will have an unquestionable right to a jury.

Dated this ____ day of February, 2000.

HOLLAND & KNIGHT LLP

By:_____
   J. Raul Cosio
   Florida Bar No.:  503630
   Robert M. Dees
   Florida Bar No.:  714399
   701 Brickell Avenue, Suite 3000
   Miami, Florida  333131
   Tel:  (305) 374-8500
   Fax:  (305) 789-7799

   Attorneys for Plaintiffs First South
   Development & Investment, Ltd. and
   William T. Stover

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY  that a copy of the foregoing Motion to Dismiss or, in the

Alternative, for a Stay of Proceedings has been served by U.S. Mail to Christopher R. Fertig,

Esquire, Fertig & Gramling, 200 Southeast 13th Street, Fort Lauderdale, Florida  33316, on this

_____ day of February, 2000.

_____
J. Raul Cosio

JAX1 #535492 v1

21

# PROOF OF LOSS

**$3,500,000.00**
Amount of policy at time loss

**MH995605**
Policy No.

To:    CIGNA Insurance Company of Europe
       c/o ACE USA
       Tampa, Florida

1. My name is William T. Stover, and I am the Sole Director of First South Development and
   Investment, Ltd., ("First South"), the record owner of the M/Y BASIL's ("Vessel").

2. At the time of loss described herein , by the above indicated policy of insurance, you insured First
   South against loss by fire and other perils which might befall the M/Y BASIL's, Official Number
   (Cayman) 732394, according to the terms and conditions of the policy and all forms, endorsements,
   transfers, and assignments attached to it.

3. On July 1, 1999, First South entered into a contract of insurance (the "Policy") for the Vessel through
   C.A. Hansen. The Policy provides for hull and machinery coverage in addition to protection and
   indemnity insurance on the Vessel. The term of the Policy runs from July 1, 1999 through May 1,
   2000.

4. On Sunday, July 25, 1999, at approximately 1:30 in the afternoon as the Vessel was en route from
   Chubb Key to Ft. Lauderdale, Florida, a fire broke out on the Vessel. It is believed that the fire
   originated in the engine room of the Vessel although the cause of the fire is unknown and is currently
   the subject of investigation. Despite the efforts of the captain and crew to extinguish the fire, it
   burned intensely, resulting in the captain and crew abandoning the Vessel in fear of danger to life and
   limb. The Vessel burned to the water line and eventually sank.

5. There were no known personal injuries as a result of the fire.

6. Immediately following the loss, First South notified C.A. Hansen. First South has cooperated with the
   insurer to preserve and protect the integrity of the Vessel for purposes of investigating the cause and
   origin of the fire, as well as to salvage and protect both the Vessel and the surrounding environment.

7. Upon commencement of the voyage during which the fire occurred, and at all relevant times, the
   Vessel was in all respects seaworthy, properly manned, equipped and supplied.

8. At the time of the loss, First South owned 100% of the Vessel. No other person or persons had any
   interest therein or encumbrance thereon, except for Branch Banking & Trust which is the mortgagee
   under a first preferred ship mortgage on the Vessel.

9. Since the policy was issued, there has been no assignment, change of interest, use, occupancy,
   possession or exposure of the Vessel.

10. The total amount of insurance on the Vessel at the time of the loss was Three Million Five Hundred
    Thousand Dollars ($3,500,000), besides which there was no other policy or other contract of insurance,
    written or oral, valid or invalid.

11. As a result of the fire, the Vessel was rendered a total loss. The amount claimed under the above
    numbered policy is Three Million Five Hundred Thousand Dollars ($3,500,000).

12. The loss did not originate by any act, design or procurement on the part of your insured, or this affiant.
    Nothing has been done by or with the privity or consent of your insured or this affiant to violate the
    conditions of the policy, or to render it void.

13. Any other information that may be required will be furnished and considered a part of this proof.

Dated this _16th_ day of August, 1999.

FIRST SOUTH DEVELOPMENT AND
INVESTMENT LTD.

By _____

William T. Stover

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

    The foregoing Proof of Loss was acknowledged before me this 6th day of August, 1999, by

William T. Stover, the sole  Director of First South Development and Investment Ltd., a Cayman Island

Company.  He is personally known to me or has produced _____ as identification and who

did/did not take an oath.

_____

Notary Public, State of Florida

My Commission Expires:

Julie L. Dunham
MY COMMISSION # CC648024 EXPIRES
May 23, 2001
BONDED THRU TROY FAIN INSURANCE, INC.

MIA1 #858275 v1



# FERTIG & GRAMLING
### L A W   P A R T N E R S H I P
200 Southeast 13th Street · Ft. Lauderdale, FL 33316



Christopher R. Fertig, P.A.
Frank R. Gramling, P.A.
Allen L. Cannon
Darlene M. Lidondici*
Michael W. McLeod ***
Mark F. Dickson, P.A.*

Merryl S. Haber ***
Levi G. Williams, Jr.****
Kevin A. Fernander
Paul N. Anderson****
Joanne M. Foster

Of Counsel
 Raissa I. Rouse **
 Stephanie Arma Kraft

January 18, 2000

Broward (954) 763-5020
Dade (305) 945-6250
Fax (954) 763-5412
e-mail: admin@fertig.com

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Robert Dees, Esq.
Holland & Knight
P.O. Box 52687
Jacksonville, Florida 32201

| Re: | **Insured** | : | **First South Development/William T. Stover** |
|-----|-------------|---|-----------------------------------------------|
|     | **Vessel**  | : | **M/Y "BASIL'S"** |
|     | **Policy No** | : | **MH995605** |
|     | **D/Loss**  | : | **7/25/99** |
|     | **Claim No.** | : | **8122 130 808417-5** |
|     | **Our File No.** | : | **7736** |

Dear Mr. Dees:

Please be advised that Cigna Insurance Company of Europe S.A.-N.V. has conducted a thorough investigation into the facts and circumstances surrounding the formation of the marine insurance contract and the incidents in which the M/Y Basil's, insured under the above captioned policy, sustained damages for which your clients have filed a Proof of Loss. On the basis of that investigation, Cigna Insurance Company of Europe is rejecting your client's claim and is voiding its policy of insurance with your clients from its inception and returning the premiums which have been paid to date.

Mr. Robert Dees
January 20, 2000
Page 2

Cigna Insurance Company of Europe's investigation revealed that William Stover misrepresented, concealed or failed to disclose the purchase price of the vessel, use of vessel, prior losses, condition/classification of the vessel and the vessel's crew.

Specifically the investigation discovered:

a)    The following losses were concealed or not disclosed:

i.    August 2, 1998 - Allison by M/V Collshine, hull loss was approximately $70,000.00 .

ii.   October 10, 1998 - Wake damage to tender and swim platform. Approximate loss $11,000.00.

iii.  December 22, 1998 - Grounding - damage to shafts and props of approximately $13,000.00.

iv.   December 24, 1998 - Grounding - damage to shafts and propellers of approximately $20,000.00.

v.    December 24, 1998 - Allision with sailboat, unknown losses.

vi.   April 23, 1999 - Grounding - damage to propellers, shafts and shaft logs of approximately $37,000.00.

vii.  June 15, 1999 - Grounding - damage to propellers of approximately $4,000.00.

b)    The true purchase price was $2,875,000.00 not $3,500,000.00 as represented on the application.

c)    The vessel was not classed by Bureau Veritas as represented on the application.  Bureau Veritas confirmed on December 21, 1998,

"Presently the certificates (Class and Load Line), are expired.  Thus the vessel is not in class."

In addition the application failed to disclose or concealed the condition of the vessel on July 1, 1999:

•    $CO_2$ system not functional.
•    Fire alarm systems not functional.

Mr. Robert Dees
January 20, 2000
Page 3

    d)    The vessel did not maintain 3 full-time crew members as represented on the application.  The application concealed or fail to disclose:

- The crew declared on the application were part-time only, dividing their attentions between vessels owned by the insured.

- The engineer declared on the application did not sail on the vessel.

    e)    The following facts were concealed or not disclosed:

- The vessel was being held for resale.
- The insured (Stover) was in the business of boat trading.
- The M/Y Basil's was admitted to the U.S. solely for purpose of sale with no other use permitted.

A copy of the application is attached for your review.

Additionally, the investigation revealed the vessel was unseaworthy at both the inception of the policy and continuing up to and through M/Y Basil's last voyage. The unseaworthiness included, but was not limited to:

    a.    Insufficient crew.
    b.    Incompetent crew.
    c.    Nonfunctional fire alarm systems.
    d.    Inoperative fire suppression systems.
    e.    Lack of maintenance.

The covernote issued to your clients evidencing insurance provided the following language:

> "Every proposer when seeking new insurance or renewing an existing policy must disclose any information which might influence the Underwriters in deciding whether or not to accept the risk, what terms the risk should be, or what premiums to charge.  Insurance contracts being subject to a duty of the utmost good faith, failure to do so

Mr. Robert Dees
January 20, 2000
Page 4

> may render the insurance voidable from inception and enable the Underwriters to repudiate liability.
>
> The covernote is our advice to you that a contract of insurance has been effected with the Underwriters shown, using the information which you have provided or agreed."

Further, the covernote forwarded to your client's U.S. insurance broker by your client's English insurance broker, Crawley Warren & Company, Ltd., provided,

> "This covernote is our advice to you that the above contract of insurance or reinsurance has been effected with Underwriters shown, using the information provided or agreed by you. Underwriters require disclosure of all material facts relating to this contract and may have grounds for voiding the contract if the information provided or agreed by you was incomplete or inaccurate. There is an ongoing obligation during the period of the contract for you to disclose any changes in the information provided. If you are in any doubt whether a fact is material you should disclose it."

The policy of insurance provided,

> "This entire policy shall be void if the Assured or their representative have concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Assured therein . . ."

The Sworn Proof of Loss dated August 6, 1999 falsely represented the vessel was,

> "In all respects seaworthy, properly manned, equipped and supplied."

Mr. Robert Dees
January 20, 2000
Page 5

Mr. Stover on the application for insurance and on examination under oath stated three crew members were appropriate to man the vessel for trips. Mr. Stover further admitted he was surprised the vessel sailed from Chub Key on the date of the loss without Chuck acting as engineer.

The policy of insurance provides,

> "The entire policy shall be void . . . in the case of fraud or false swearing by the Assured touching on any matter relating to this insurance or the subject thereof whether before or after a loss."

The policy of insurance contains an exclusion which is applicable to this loss. Exclusion 9 provides:

> "The insurance does not cover:
>
> 9.    Any losses or damages directly or indirectly caused by or in consequence of the willful or intentional act of the Assured or negligence of the Assured in maintaining the vessel, whether ashore or afloat."

The investigation discovered the vessel was either intentionally or negligently maintained including, but not limited to failing to properly maintain the $CO_2$ system, fire suppression system, fire alarms and/or the vessel's exhaust system.

The attached Sworn Proof of Loss submitted to support the claim contains an affirmative representation that,

> "Upon commencement of the voyage during which the fire occurred, and at all relevant times, the vessel was in all respects seaworthy, properly maintained, equipped and supplied."

The investigation discovered the above representation is false. The policy of insurance provides:

Mr. Robert Dees
January 20, 2000
Page 6

> "This entire policy shall be void . . . in the case of fraud or
> false swearing by the assured touching any matter relating
> to this insurance or the subject thereof whether before or
> after a loss."

Therefore, Cigna Insurance Company of Europe is rescinding the policy of insurance because of the misrepresentations, concealment and nondisclosures recited above. In addition the claim is denied because of the unseaworthiness of the vessel, insufficiency and incompetency of the crew and the effect of exclusion 9 upon the facts of this claim.

The legal grounds for recission and denial is more fully explained in the attached Declaratory Judgment action which has been filed in the U.S. District Court, Southern District of Florida. The Declaratory Judgment action has been filed because it appears a controversy exists between Cigna Insurance Company of Europe and the insureds. Cigna Insurance Company of Europe is seeking the guidance of the U.S. District Court to resolve the issue.

Consistent with recission, Cigna is tendering return of the Hull Insurance premium. There is an issue regarding to whom the check should be issued since the application for insurance discloses Branch Banking and Trust as a loss payee. The attached letter has been sent to Branch Banking and Trust seeking their guidance. If we do not hear from you or the bank within 15 days, we will issue the check to First South Development & Investment, Ltd., and William Stover and send it to you. Your advices on this matter is most appreciated.

This letter is written entirely without prejudice to any rights, benefits and/or additional defenses which are or which might be available to Cigna Insurance Company of Europe under the captioned policy of Marine Insurance, and is subject to Cigna Insurance Company of Europe's assertion of any and such additional rights, benefits and/or defenses as might be learned in the course of further investigation and/or discovery. Cigna Insurance Company of Europe hereby reserves the right to modify and/or amend its stated position in the event that further or different information becomes known.

Mr. Robert Dees
January 20, 2000
Page 7

If either you or your client are in possession of any information which has not been considered by Cigna Insurance Company of Europe which in your judgment may be relevant regarding the contents of this letter, please submit same for review and consideration. Information submitted will be carefully reviewed by Cigna Insurance Company of Europe.

Very truly yours,

FERTIG AND GRAMLING

Christopher R. Fertig

CRF/eml
Enclosures
cc:    Rosanne Williams

IN THE CIRCUIT COURT, SEVENTEENTH
JUDICIAL CIRCUIT, IN AND FOR BROWARD
COUNTY, FLORIDA

Civil Action No.

**99017385**
**07**

FIRST SOUTH DEVELOPMENT & INVESTMENT,
LTD., a Cayman corporation, and WILLIAM T.
STOVER, an individual,

       Plaintiffs,

v.

CIGNA INSURANCE COMPANY OF EUROPE,
an alien corporation,

       Defendants.

_____/

## SUMMONS

**TO THE STATE OF FLORIDA:**

**To Each Sheriff of the State:**

     YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant(s): <u>CIGNA Insurance Company of Europe, c/o Mendes & Mount, 750 Seventh Avenue, New York, New York  10019-6325.</u>

     Each defendant is required to serve written defenses to the complaint or petition on plaintiff's attorney, whose name and address is <u>Robert M. Dees, Esquire, Holland & Knight LLP, 50 N. Laura Street, Suite 3900, Jacksonville, Florida  32202,  (904)  353-2000</u>   within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of this Court on



OCT 1 1 1999

_____
ROBERT E. LOCKWOOD
As Clerk of the Court

By: _____
As Deputy Clerk

**(SEAL)**
**ROBERT E. LOCKWOOD**
**Clerk of the Circuit Court**

JAX1 #512493 v1

IN THE CIRCUIT COURT, SEVENTEENTH
JUDICIAL CIRCUIT, IN AND FOR BROWARD
COUNTY, FLORIDA
----------------------------------------
FIRST SOUTH DEVELOPMENT & INVESTMENT,
et. al.,

                             Plaintiff(s),        Case No.
      -against-                           99017385 -07

CIGNA INSURANCE COMPANY OF EUROPE,

                         Defendant(s).      AFFIDAVIT OF
                                          SERVICE
----------------------------------------
STATE OF NEW YORK)
COUNTY OF NEW YORK } ss.:

John T. McLaughlin, being duly sworn, deposes and says: I am
not a party to this action, am over 18 years of age and
reside at Bronx, NY:

On January 25, 2000 at 12:30 p.m. at 750 Seventh Avenue
New York, NY 10019 I served the within SUMMONS, COMPLAINT and
AMENDED SUPPLEMENTAL COMPLAINT on CIGNA INSURANCE COMPANY OF
EUROPE defendant therein named, by delivering a true copy to
LEO FRASER, ESQ. Partner c/o MENDES and MOUNT.

The person served is a white male, black hair, 40-50 years
old, 6'1"-6'4", 195-205 pounds.

                                John T. McLaughlin
                                License No. 684953

Sworn to before me this
25th day of January 2000.

_____
NOTARY PUBLIC

        BRUCE LAZARUS
    Notary Public, State of New York
         No. 4990593
    Qualified in Westchester County
  Commission Expires January 13, 200_

*LegalEase Inc.*

139 Fulton Street, New York, NY 10038
Tel: 212-393-9070  •  800-393-1277  •  Fax: 212-393-9796

IN   THE   CIRCUIT   COURT,
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND   FOR   BROWARD   COUNTY,
FLORIDA

CASE NO:    99-0117385

DIVISION:    07

FIRST SOUTH DEVELOPMENT
& INVESTMENT, LTD., a Cayman
corporation, and WILLIAM T. STOVER,
an individual,

       Plaintiffs,

v.

CIGNA INSURANCE COMPANY OF
EUROPE, an alien corporation,

       Defendant.
_____/

## COMPLAINT

Plaintiffs First South Development & Investment, Ltd. (hereinafter "First South"),

and William T. Stover (hereinafter "Stover"), by and through their undersigned attorneys, sue the

defendant CIGNA Insurance Company of Europe (hereinafter "CIGNA"), and allege as follows:

1.      This is an action for damages in excess of $15,000.00, exclusive of

interest, costs and attorneys' fees.

2.      At all relevant times, plaintiffs First South and Stover were the assureds

under an all risks insurance policy issued by CIGNA covering the M/Y BASIL'S.  The M/Y

BASIL'S was a 116 foot motor yacht, built in 1993 and owned by plaintiffs.

3. First South is a Cayman Islands corporation and Stover is a resident of Florida.

4. At all relevant times, defendant CIGNA was an alien insurance company which transacted insurance and was otherwise doing business in Florida. At all relevant times, CIGNA was engaged in substantial and not isolated activity within the State of Florida and the cause of action alleged herein arose out of such activities. Plaintiffs are not aware, however, as to whether or not CIGNA is authorized by the Florida Department of Insurance to transact insurance in Florida either as an authorized insurer or as a surplus lines carrier.

5. At all relevant times, CIGNA was operating, conducting, engaging in, or carrying on a business or business venture in the State of Florida or had an office or agency in the State of Florida.

6. At all relevant times, CIGNA subscribed to and underwrote insurance on the M/Y BASIL'S pursuant to C.A. Hansen Cover Note MP995606, which was issued in connection with and became a part of C.A. Hansen Cover Note MH995605. The two Cover Notes are hereafter collectively referred to as "the policy."

7. The policy period for the M/Y BASIL'S was from July 1, 1999, through May 1, 2000, and the agreed value of the vessel in the policy is $3,500,000. The policy was delivered or issued for delivery in Florida. A copy of the policy is attached hereto as Exhibit 1.

8. On July 25, 1999, during the term of the policy, the M/Y BASIL'S caught fire and sank during a voyage from Chubb Cay, Bahamas, to Fort Lauderdale, Florida. The fire and subsequent sinking resulted in the total loss of the vessel, and such loss is a covered peril under the policy.

2

9.    Pursuant to the terms of the policy, plaintiffs submitted a notice of loss on July 26, 1999, and a proof of loss on August 6, 1999. Copies of the notice of loss and proof of loss are attached as exhibits 2 and 3, respectively.

10.    In breach of its obligations under the policy, CIGNA, on August 17, 1999, stated that it rejected the insureds' proof of loss because it had not yet completed its examination. The "Notice of Loss and Filing of Proof" clause of the policy states, in part, that:

> Assureds shall also file with the Assurers and/or their representatives a detailed sworn Proof of Loss, a proof of interest and in a case of partial loss, receipted bills as soon as practicable following the date of loss.

The "Payment of Loss" clause of the policy states that:

> In case of loss payable under this policy, such loss to be paid by Assurers within 90 days after receipt by the Assurers and/or their representative who issued this policy, [sic] satisfactory proof of loss, proof of interest in the property insured and in the event of partial loss, receipted bills, all indebtedness of the Assured being first deducted.

11.    Under the terms of the policy, CIGNA is required to pay the agreed value of the vessel on or before November 4, 1999, which is the ninetieth day after August 6, 1999. CIGNA has no right under the policy to reject the insureds' proof of loss due to an incomplete investigation on CIGNA's part.

12.    Based upon CIGNA's unauthorized rejection of the insureds' proof of loss in breach of the terms of the policy, the insureds anticipate that CIGNA will further breach the

policy by refusing to pay the agreed value of the vessel under the policy on or before November 4, 1999.

13.    All conditions precedent to the bringing of this action have been satisfied by plaintiffs or waived by defendant.

14.    As a direct and proximate result of CIGNA's breach of contract, plaintiffs have sustained and continue to sustain monetary damages including, but not limited to, sue and labor expenses, salvage costs and surveyors' fees. Plaintiffs are also obligated to pay reasonable attorneys' fees for the services of the undersigned.

WHEREFORE, plaintiffs request judgment in their favor for damages, attorneys' fees, costs, prejudgment interest and such further relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

HOLLAND & KNIGHT LLP

By _____
    Barbara E. Locke
    Florida Bar No.:
    Robert M. Dees
    Florida Bar No.: 714399
    Frederick D. Page
    Florida Bar No.: 968587
50 N. Laura Street, Suite 3900
Jacksonville, Florida 32202
Tel: (904) 353-2000
Fax: (904) 358-1872

Attorneys for Plaintiffs First South
Development & Investment, Ltd. and
William T. Stover

JAX1 #512407 v1

4

# C. A. Hansen

A Division of Brown & Brown, Inc.
5900 N. Andrews Avenue, Suite 900
Fort Lauderdale, FL. 33309
Tel: 954-776-2222
Fax: 954-493-9730

July 21, 1999

### COVERNOTE

*In accordance with your instructions the following insurance has been effected through our correspondent broker in London on your behalf:*

COVER NOTE:    MH995605

FORM:    MAR 91

ASSURED:    Bill Stover and/or First South Development

VESSEL:    "BLUE PACIFIC" 1994 90' Fiberglass Twin Man Diesel Montefino Motor Yacht.

PERIOD:    Twelve months at noon, 1st May 1999, Eastern Standard Time

INTEREST:    <u>Hull Machinery & Equipment valued</u>: USD1,500,000. including personal effects; including tenders & outboards/watercraft; including electronics.
<u>Protection & Indemnity</u>:    USD1,000,000. Any One Person/Any One Accident
<u>Medical Payments</u>:    USD100,000 Any One Person
USD500,000 Any One Accident
(Including Named Assured)
<u>Uninsured Boaters</u>:    USD2,000,000. Any One Accident.

SUM INSURED:    100% of Value and Limits

CONDITIONS:    Hansen Yacht Form 893CW00048 with Section A-Exclusions 2, 3 & 5 deleted.
Including Strikes, Riots, Civil Commotions, Vandalism and Malicious Mischief 893CW00111.
Warranted Private Pleasure Use including Charter, warranted owner/owners skipper in charge.
Omnibus Clause amended to include a paid Master or a paid member of the crew of the insured vessel while acting in their capacity as Captain and Crew of the insured vessel.
Noted and agreed that in cases where the liability of the Assured shall be contested in any suit or action with the consent in writing of the Assurers, the Assurers will pay such ensuing costs as the Assured may incur as a result of such suit or action in addition to the applicable limits of insurance coverage stated in the relevant Sections of this insurance.
This insurance does not cover any liability cost or expense in respect of fines, penalties, punitive or exemplary damages, howsoever described but agreed to pay any fine or penalty assessed by any Government or agency thereof for damage to marine environment or pollution to marine environment subject to a maximum limit of USD500,000.
Section "D" - Medical Payments Insurance extended to include repatriation expenses and to include captain and crew while in the employment of the Assured and signed onto the Yacht, ashore and afloat.

Page 1 of 3

# *C. A. Hansen*

*Attaching to and forming part of Cover Note Number:*        MH995605

CONDITIONS:   Institute Additional Perils Clauses-Hulls (1/10/83)CL.301 amended for use with Hansen Yacht Form.

Agreed provide cover for the act of any Governmental Authority or State Authority done for the purpose of saving the yacht.

Agreed pay the reasonable cost of inspecting the bottom of the vessel after grounding, even if no damage be found, without application of any deductible.

Uninsured Boaters Wording.

American Institute Hull War Risks Clauses dated 1st December, 1977 87B-108 and Addendum dated 1st April, 1984 amended to apply to war and Related Exclusions of the Hansen Yacht Form and extended to include claims for loss, damage or expense caused by or resulting from any terrorist or any person acting maliciously or from a political motive.

Deliberate Damage Clause 893CW00041.

War Protection and Indemnity Clause R.13 extended to include claims for loss, damage or expense caused by or resulting from any terrorist or any person acting maliciously or from a political motive.

Subject to current war risk trading warranties.

Personal Effects Clause 893CW00132.

Institute Radioactive Contamination Exclusion Clause(CL.356).

Cancelment Notice Clause 893CW00105.

Institute Service of Suit Clause (USA) CL.355.

Computer Date Recognition ("Millennium Bug") Wording as attached.

Including Master/Crew Endorsement 893CW00088.

Agreed to provide additional protection in the event there is an emergency situation where the Assured and the Insured Vessel are in not in imminent danger.

Agreed to reimburse reasonable costs incurred, not to exceed a total of USD50,000 resulting from the following services to the Insured Vessel if help is not available and commercial assistance must be obtained:
   a.   towing to the nearest place where necessary repairs can be made;
   b.   delivery of gas, oil, parts or loaned battery (excluding the cost of these items themselves) or emergency labor, while away from safe harbour.
The policy deductible does not apply to this coverage.

Noted & agreed that from time to time there may be more than 12 passengers on board whilst alongside, at anchor or whilst under way at sea.

Agreed pay for loss or damage to the vessel when caused by the breach of any warranty contained in this policy by a paid Captain and/or paid crew members or charterer provided the breach of such warranty does not constitute a violation of the laws of the country that has jurisdiction over the yacht at the time the breach occurred or breach is not committed with the consent, approval or knowledge of the Assured.

Provided this insurance is renewed with the same Underwriters and upon receipt of written confirmation from the Assured that there are no claims attaching to this policy, it is agreed that there shall be payable at expiry a no claims bonus calculated at 5% of the current years premium paid by the Assured, after all adjustments for additional &/or return premiums.

Page 2 of 3

# C. A. Hansen

*Attaching to and forming part of Cover Note Number:*    MH995605

CONDITIONS:    Subject to Underwriters Sight and Approval of a satisfactory proposal form signed by the assured or his authorized representative prior to attachment.
Subject to Underwriters sight and approval of full crew details/resumes prior to attachment.

DEDUCTIBLE:    USD15,000. as clauses; deductible in respect of Personal Effects USD100. as Clauses; deductible in respect of Tenders and Outboards USD250. each vessel; deductible in respect of electronics, communications and navigation equipment USD500. each and every loss; but deductible not applicable to claims for Sue and Labour following an incident likely to produce a claim under the policy and where the Assured is attempting to mitigate loss to Insuring Underwriters.

12 Months in Commission

NAVIGATING:    Western Hemisphere not North of 50 degrees North Latitude, nor South of the Equator; excluding waters of Cuba, Colombia, Haiti, the Panama Canal, Pacific Ocean and Trans-Atlantic voyages.

PREMIUM:    USD13,500.

SECURITY:    100% Cigna Insurance Company of Europe S.A.-N.V

INFORMATION:    Coverage to include 5 (five) permanent paid crew.

*Every proposer when seeking new insurance or renewing an existing policy must disclose any information which might influence the underwriters in deciding whether or not to accept the risk, what the terms should be, or what premiums to charge. Insurance contracts being subject to a duty of the utmost good faith, failure to do so may render the insurance voidable from inception and enable the underwriters to repudiate liability.*

*This cover note is our advice to you that a contract of insurance has been effected with the underwriters shown, using the information which you have provided or agreed. The insurance contract is subject to all terms and conditions of the policy to be issued and in the event of any inconsistency between the policy and this cover note, the policy shall prevail.*

*Please examine this cover note carefully to confirm that coverage has been arranged in accordance with your requirements and that the security shown is acceptable. If not, please advise us immediately.*

*C. A. Hansen*

JUL 26 1999 10:26                                                                PAGE.09

# *C. A. Hansen*

A Division of Brown & Brown, Inc.
5900 N. Andrews Avenue, Suite 900
Fort Lauderdale, FL. 33309
Tel: 954-776-2222
Fax: 954-493-9730

July 21, 1999

## COVERNOTE

*In accordance with your instructions the following insurance has been effected through our correspondent broker in London on your behalf:*

COVER NOTE:      MP995606

FORM:            MAR 91.

ASSURED:         Bill Stover and/or First South Development

VESSEL:          "BLUE PACIFIC" 1994 90' Fiberglass Twin Man Diesel Montefino Motor Yacht

PERIOD:          Twelve months at noon, 1st May 1999, Eastern Standard Time

LIMITS:          Protection & Indemnity:

                 USD1,000,000. Any One Person/Any One Accident
                 Excess of
                 USD1,000,000. Any One Person/Any One Accident

SUM INSURED:     100% Limits

CONDITIONS:      As Underlying as far as applicable

PREMIUM:         USD500.

SECURITY:        This Insurance is placed with various Underwriting Members of Lloyd's, London. Each Member being liable only for their own share of this Insurance and not one for another. The total percentage undertaken by Lloyd's Underwriters subscribing to this Insurance is 100 per cent.

*Every proposer when seeking new insurance or renewing an existing policy must disclose any information which might influence the underwriters in deciding whether or not to accept the risk, what the terms should be, or what premiums to charge. Insurance contracts being subject to a duty of the utmost good faith, failure to do so may render the insurance voidable from inception and enable the underwriters to repudiate liability.*

*This cover note is our advice to you that a contract of insurance has been effected with the underwriters shown, using the information which you have provided or agreed. The insurance contract is subject to all terms and conditions of the policy to be issued and in the event of any inconsistency between the policy and this cover note, the policy shall prevail.*

*Please examine this cover note carefully to confirm that coverage has been arranged in accordance with your requirements and that the security shown is acceptable. If not, please advise us immediately.*

*C. A. Hansen*

Page 1 of 1



# *C. A. Hansen*

| Attached to and forming part of:<br>MH995605 | Company:<br>Cigna Insurance Company of Europe | Endt. No.:<br>1 |
|---|---|---|
| Insured:<br>First South Development and<br>Bill Stover | Effective Date:<br>06/11/99 | Expiration Date:<br>05/01/00 |

"BLUE PACIFIC"

Notwithstanding anything contained herein to the contrary it is hereby noted and agreed, effective 11th June, 1999, vessel named hereon is amended to read as follows: -

"CHRISTINE"

It is further noted and agreed, effective inception, number of crew is amended to read as follows:

Coverage to include two (2) permanent paid crew and three (3) part-time paid crew.
New annual Protection and Indemnity etc. premium: USD250 in full.
For Protection and Indemnity/Medical/Uninsured Boaters, plus USD250. in full per permanent paid crew member, plus USD125. in full per part-time paid crew member.

All other terms, clauses and conditions remain unaltered.

**ALL OTHER TERMS AND CONDITIONS**
**OF THE POLICY REMAIN UNCHANGED** _____

# C. A. Hansen

| Attached to and forming part of: MH995605 | Company: Cigna Insurance Company of Europe | Endt. No.: 2 |
|---|---|---|
| Insured: First South Development and Bill Stover | Effective Date: 07/01/99 | Expiration Date: 05/01/00 |

"CHRISTINE"

It is hereby noted and agreed, effective 1st July 1999, to include the following vessel hereon: -

"BASIL'S    1993 116' Fiberglass Mondomarine Motor Yacht
            Twin 1200 H.P. Caterpillar Diesel Engines.

Hull Machinery & Equipment valued: USD3,500,000. including personal effects; including tenders & outboards/watercraft; including electronics.

| Protection & Indemnity: | USD1,000,000. Any One Person/Any One Accident |
|---|---|
| Medical Payments: | USD100,000 Any One Person |
| | USD500,000 Any One Accident |
| | (Including Named Assured) |
| Uninsured Boaters: | USD2,000,000. Any One Accident. |

Subject deductible USD35,000. as Clauses

All other terms and conditions as policy.

Premium: Pro rata premium USD19,124 (annual USD22875.)

Information:   Coverage to include three (3) permanent paid crew.

**ALL OTHER TERMS AND CONDITIONS
OF THE POLICY REMAIN UNCHANGED** _____

# *C. A. Hansen*

| Attached to and forming part of: MP995606 | Company: Lloyds and other British Companies | Endt. No.: 3 |
|---|---|---|
| Insured: First South Development & Bill Stover | Effective Date: 07/01/99 | Expiration Date: 05/01/00 |

"CHRISTINE"

It is hereby noted and agreed, effective 1st July 1999, to include the following vessel hereon:-

"BASIL'S     1993 116' Fiberglass Mondomarine Motor Yacht.
Twin 1200 H.P. Caterpillar Diesel Engines.

LIMITS:     Protection & Indemnity:

USD3,000,000. Any One Person/Any One Accident
Excess of
USD1,000,000. Any One Person/Any One Accident

All other terms and conditions as policy.

Premium:     Pro rata premium USD1,254. (annual USD1,500.)

All other terms and conditions remain unaltered.

**ALL OTHER TERMS AND CONDITIONS
OF THE POLICY REMAIN UNCHANGED**

# HANSEN YACHT FORM

## WARRANTIES AND GENERAL CONDITIONS
### (Applicable to all coverages unless otherwise indicated.)

**Privileges** — In port and at sea, under power or sail, in docks and graving docks, in hauling and launching, and on ways, gridirons, pontoons, and on shore, and while being transported. With leave to sail with or without pilots to tow and assist vessels or craft in all situations and to be towed.

**Private Pleasure Warranty** — Warranted to be used solely for private pleasure purposes and not to be hired or chartered unless approved and permission endorsed hereon.

**Continuation Clause** — If the vessel insured hereunder is at sea, at the expiration of this policy, the risk may be continued until the arrival of the vessel at her port of destination or her being moored therein twenty-four (24) hours in good safety, provided notice be given to the Assurers and additional premium paid as required.

**Transfer of Interest** — This insurance shall inure to the benefit only of the named assured and shall be void in case this Policy or the interest insured thereby shall be sold, assigned, transferred or pledged without the previous consent in writing of these Assurers.

**Personal Negligence** — Personal negligence or fault of the Owner or Assured in the navigation of the yacht or privity or knowledge in respect thereto (excepting loss, damage or liability willfully or intentionally caused by the Owner or Assured) shall not relieve the Assurers of liability under this Policy.

**Other Insurance** — If a named Assured has other insurance against a loss covered by any section of this Policy, the Assurers shall not be liable under this Policy for a greater proportion of such loss than the applicable amount stated bears to the total amount of all valid and collectable insurance against such loss. If an Assured other than a named Assured has other insurance against a loss covered by any section of this Policy, this insurance shall be excess over other such insurance.

**Notice of Loss and Filing of Proof** — It is agreed by the Assured to report immediately to the Assurers or to their representative who shall have issued this policy every occurrence which may become a claim under this policy and afford to the Assurers, if they deem it desirable, an opportunity to appoint surveyors and/or investigators prior to any repairs being undertaken; Assureds shall also file with the Assurers and/or their representatives a detailed sworn Proof of Loss, proof of interest and in a case of partial loss, receipted bills as soon as practicable following the date of loss.

**Payment of Loss** — In case of loss payable under this policy, such loss to be paid by Assurers within 90 days after receipt by the Assurers and/or their representative who issued this policy, satisfactory proof of loss, proof of interest in the property insured and in the event of partial loss, receipted bills, all indebtedness of the Assured being first deducted.

**Subrogation** — Upon making payment under this policy the Assurers shall be vested with all of the assured's rights of recovery against any person, corporation, vessel or interest and the Assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

Any agreement, contract or act, past or future, expressed or implied, by the Assured whereby any right of recovery of the Assured against any vessel, person or corporation is released, decreased, transferred or lost which would, on payment of claim by the Assurer, belong to the Assurer but for such agreement, contract or act shall render this policy null and void as to the amount of any such claim, but only to the extent and to the amount that said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of the Assurer, but the Assurer's right to retain or recover the full premium shall not be affected.

**Time for Suit Against the Assurers** — No suit or action on this Policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Policy, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that were such limitation of time is prohibited by the laws of the state wherein this Policy is issued, then, and in that event, no suit or action under this Policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state.

**Action Against the Assurers** — Any person or organization or the legal representative thereof who has secured judgment against the Assured shall be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. Bankruptcy or insolvency of the Assured or of the Assured's estate shall not relieve the Assurers of any of their obligations hereunder.

**Legal Representation and Cooperation Clause** — The Assured shall cooperate with the Assurers and shall not assume any obligation, admit any liability or incur any expense for which the Assurers may be liable, without the written approval of the Assurers, except as may be necessary and permitted to safeguard the Yacht under the "SUE AND LABOR" clause in section "A" of this Policy. In case the liability of the Assured shall be contested with the written approval of the Assurers first obtained, the Assurers will pay the cost and expense of such defense, in which event the Assurers shall have the option of naming the attorneys who shall represent the Assured in said defense, and, if such option is exercised, shall have the direction and control thereof. The Assured shall, whenever required, attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits and limitations proceedings.

**Examination Under Oath** — The Assured, as often as may be reasonably required, shall exhibit to any person designated by the Assurers all that remains of any property herein described, and shall submit, and in so far as it is within his or their power cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Assurers and subscribe the same; and as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Assurers or their representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Assurers or any of their employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Assurers might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Assurers' liability.

**Misrepresentation or Fraud** — This entire Policy shall be void if the Assured or their representative has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Assured therein, or in case of fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof whether before or after a loss.

**Notice of Cancellation and Return Premiums for Cancellation** — This Policy may be cancelled by the Assured by surrender thereof to the Assurers or their representative written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Assurers or their representative by mailing to the Assured at the address shown in this Policy or last known address, written notice stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the Policy period. Delivery of such written notice either by the assured or by the Assurers or their representative shall be equivalent to mailing.

If the Assured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Assurer cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is affected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Assurers' or their representative's check mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Assured.

**Premium Fully Earned** — There shall be no return of premium under any section of this Policy if the Insured yacht is a total or constructive total loss by a peril insured against.

# PARAMOUNT EXCLUSIONS

Warranted free from any claim for loss, damage or expense caused by or resulting from capture, seizure, arrest, restraint or detainment or the consequences thereof or of any attempt thereat or any taking of the vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; also from all consequences of hostilities or warlike operations (whether there be a declaration or war or not) but the foregoing shall not exclude collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power, and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power; also warranted free, whether in time of peace or war, from all loss, damage or expense caused by any weapon or war employing atomic or nuclear fission and/or other fusion or other reaction or radioactive force or matter.

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom. If, however, war risks are hereafter insured by endorsement on the policy, such endorsement shall supersede the above exclusions only to the extent that their terms are inconsistent and only while such war risks endorsement remains in force.

This Policy is made and accepted subject to the foregoing stipulations and conditions, and to the conditions on the following pages which are hereby specially referred to and made a part of this Policy, it being understood and agreed that in the case of any conflict or inconsistency the foregoing provisions shall prevail over those which follow; provided, however, that with respect to any insurance under Section "E" of this Policy, the liability of the Assurers for the term above stated shall be in all respects as provided in such Section "E", unaffected by any other condition or provision of this Policy.

# SECTION "A" — HULL INSURANCE

**Property Covered**
Upon the Hull, Spars, Sails, Fittings, Gear and Equipment, Apparel, Provisions, Stores, Machinery, Boats and other Furniture and Furnishings of and in the yacht hereby insured, subject to all of the terms and conditions (including the Running Down Clause) of this Policy. The foregoing does not include fishing tackle, moorings, firearms, jet skis, land vehicles, aircraft, windsurfers, or personal property.

## COVERAGE

The insurance provided by this Section covers, SUBJECT TO THE EXCLUSIONS AND LIMITATIONS OF THIS POLICY, against physical loss or damage to the property covered from any external cause, as well as physical loss or damage directly caused by fire, explosions, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull (excluding the cost and expense of repairing or replacing any defective part), provided such loss or damage has not resulted from want of due diligence or intentional act by the owners of the Yacht or by the Assured; provided always that the amount recoverable hereunder shall not exceed the amount of insurance.

**Deductible Clause**
When a deductible amount is stated on this Policy, each claim for loss or damage covered under Section "A" shall be adjusted separately and from the aggregate amount of each separately adjusted claim, the sum so stated shall be deducted. Such deduction shall not apply in the event of Total Loss or Constructive Total Loss of the vessel covered nor shall it apply with respect to claims under the Running Down Clause.

**Equipment Separated and on Shore**
It is also agreed that should any part of the furniture, boats or other property of the said yacht be separated and laid up on shore during the life of this Policy, then this Policy shall cover the same to an amount not exceeding 50% of the sum stated under the heading "Amount of Insurance". The amount attaching on the said yacht shall be decreased by the amount so covered.

**Valuation Clause**
The said yacht, for so much as concerns the Assured by agreement between the Assured and the Assurers is and shall be valued at the amount stated under the heading "Agreed Valuation".

**Partial Loss**
In the event of partial loss or damage, costs of repairs to be paid without deduction, new for old, except with respect to sails and covers of canvas or other like material; the Assurers shall be liable for no more than the cost of repair or a reasonable value, whichever is less.

**Constructive Total Loss**
No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and repairing the vessel shall exceed the amount of insurance on hull and machinery.

**Unrepaired Damage**
In no case shall the Assurers be liable for unrepaired damage in addition to a subsequent total loss sustained during the term covered by this Policy.

**Proportion of Loss Covered**
Where the amount of insurance as set forth is less than the agreed valuation stated herein, the Assurers shall be liable only for such proportion of any loss recoverable under this Section as the said amount of insurance bears to the said agreed valuation.

**Strikes Clause**
This insurance also covers loss of or damage to the property hereby insured caused by strikers, locked out workmen or persons taking part in labour disturbances, riots or civil commotions or caused by vandalism or persons acting maliciously.

**Tenders**
The tenders of the yacht are insured subject to all of the terms and conditions, including the Running Down Clause, of this Policy.

**Running Down Clause**
And it is further agreed that if the yacht hereby insured shall come into collision with any other ship or vessel, and the Assured shall, in consequence thereof, become liable to pay, and shall pay by way of damages to any other person or persons, any sum or sums not exceeding in respect of any one such collision the value of the yacht hereby insured, we, the Assurers, will pay the Assured such sum or sums so paid up to the amount hereby insured. And in cases where the liability of the Assured has been contested, with the consent, in writing, of the Assurers, we will also pay the costs thereby incurred or paid; but when both vessels are to blame, then unless the liability of the owners of one or both of such vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of CROSS LIABILITIES, as if the owners of each vessel had been compelled to pay to the owners of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such collision; and It is further agreed that the principles involved in this clause shall apply in the case where both vessels are the property, in part or in whole, of the same owners, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the managing owners of both vessels, and one to be appointed by the majority in amount of Underwriters interested in each vessel; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single, or of any two of such three Arbitrators, appointed as above, to be final and binding.

Provided always that the foregoing clause shall in no case extend to any sum which the Assured may become liable to pay, or shall pay for removal of obstructions under statutory powers, for injury to harbors, wharves, piers, stages, and similar structures, consequent on such collisions, or in respect of the cargo or engagements of the insured yacht, or for loss of life, or personal injury.

**Members of Assured's Family**
It is understood and agreed that the word "Assured" shall include, in addition to the named Assured hereunder, irrespective of interest in the insured yacht, the members of the immediate family of the Assured, who may be operating the yacht with the prior permission of the Assured.

**Sue and Labor Clause**
And in case of any loss or misfortune, it shall be lawful and necessary for the Assured, their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said yacht or any part thereof, without prejudice to this insurance; the charges whereof we, the Assurers, will pay. And it is especially declared and agreed that no acts of the Assurer or Assured in recovering, saving or preserving the property insured shall be considered as a waiver or estoppel of any provision of this policy or acceptance of abandonment.

## EXCLUSIONS

This insurance does not cover:

1. Any loss or damage directly or indirectly caused by or resulting from wear and tear, gradual deterioration, inherent vice, marine borers, vermin, electrolysis, or osmosis.

2. Theft or mysterious disappearance of equipment or accessories, other than tenders and their motors, unless occurring in conjunction with theft of the entire yacht or unless there be visible evidence of forcible entry.

3. Any loss, damage or expense directly or indirectly caused by or in consequence of ice and/or freezing.

4. Any loss, damage or expense directly or indirectly caused by or in consequence of faulty construction and/or improper design.

5. Any loss or damage to electrical apparatus, including wiring, directly or indirectly caused by electricity, other than lightning, unless fire ensues and then only the loss or damage by such ensuing fire.

6. Wages and/or provisions.

7. Mechanical breakdown or derangement of machinery.

8. Any loss of use, demurrage or charter hire to the yacht insured hereunder.

9. Any losses or damages directly or indirectly caused by or in consequence of the wilful or intentional acts of the Assured or negligence of the Assured in maintaining the vessel, whether ashore or afloat.

## SECTION "B" — PROTECTION AND INDEMNITY INSURANCE

If the Assured shall by reason of his interest in the insured yacht become liable to pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages, and/or expense or shall become liable for any other loss arising from or occasioned by any of the following matters or things during the currency of this Policy in respect of the yacht hereby insured, that is to say:—

**Property Damage** (I) Loss of or damage to any other ship or boat or goods, merchandise, freight or other things or interest whatsoever, on board such other ship or boat, caused proximately or otherwise by the yacht insured in so far as the same would not be covered by the Running Down Clause in Section "A" of this Policy, except that if this Policy is subject to a Deductible Average the amount deductible from claims under the said Running Down Clause shall not be recoverable hereunder;

Loss of or damage to any goods, merchandise, freight or other things of interest whatsoever other than as aforesaid, whether on board said yacht or not, which may arise from any cause whatever;

Loss or damage to any harbor, dock (graving or otherwise), slipway, way, gridiron, pontoon, pier,quay, jetty, stage, buoy, telegraph cable, or other fixed or movable thing whatsoever, or to any goods or property in or on the same, however caused;

Any attempted or actual raising, removal or destruction of the wreck of the insured ship or the cargo thereof, or any neglect or failure to raise, remove or destroy the same;

The Assurers will pay the Assured such sum or sums so paid, or which may be required to indemnify the Assured for such loss; PROVIDED always that the amount recoverable hereunder in respect to any one accident or series of accidents arising out of the same event shall not exceed the sum stated under Limit of Protection and Indemnity Insurance.

**Bodily Injury** (II) Loss of life, illness, or bodily injury and payments made on account of life salvage:

The Assurers will pay the Assured such sums so paid or which may be required to indemnify the Assured for such loss; PROVIDED always that the liability of these Assurers is limited to the sum stated under Limit of Protection and Indemnity Insurance, and subject to the same limit for each person, it being understood that this limit applies to any one accident or series of accidents arising out of the same event.

**Costs** (III) And in case the liability of the Assured shall be contested in any suit or action with the consent in writing of these Assurers, we will also pay such ensuing costs as the Assured may incur as a result of such suit or action.

**Aggregate Limit** The total amount recoverable under the Protection and Indemnity Insurance coverage of this Policy, for all losses, including property damage, personal injury, loss of life, payments made on account of life salvage, and costs, resulting from any accident or series of accidents arising out of the same event, shall not exceed, in the aggregate, the sum stated under Limit of Protection and Indemnity Insurance.

**Pollution** This Policy does not insure against any loss, damage, cost, liability, or expense, imposed on the Assured, arising out of the discharge, dispersal, release, or escape of oil, fuel, chemicals, waste materials, or other pollutants, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

**Members of Assured's Family** It is understood and agreed that the word "Assured" whenever used in this Section shall include, in addition to the named Assured hereunder, irrespective of interest in the insured yacht, the members of the immediate family of the Assured, domiciled with the Assured, who may, at the time liability was incurred, be operating the yacht with the prior permission of the Assured.

**Exclusions** The Assurers will not be liable for:

1. Any fine, or penalty or assessment against the Assured or yacht named herein, by any national, state or local government;

2. Liability of any charterer of the yacht named herein;

3. Any liability assumed by the Assured under any contract or agreement unless specifically endorsed hereon.

4. Any liability while the vessel is being transported on land.

5. Any liability arising out of the ownership or use of any property not covered under Section A.

6. Any liability for bodily injury including but not limited to loss of life, illness or bodily injury, and payments made on account of life salvage of any Assured caused by or resulting from any action, negligence, malfeasance or misfeasance, whether intentional or unintentional, of a co-insured whether said co-insured is a spouse, parent, son or daughter, or an unrelated individual or company; or to any property damage or loss sustained by any Assured caused by or resulting from any action, negligence, malfeasance, misfeasance, whether intentional or unintentional, of a co-insured whether said co-insured is a spouse, parent, son or daughter, or an unrelated individual or company.

## SECTION "C" — OMNIBUS CLAUSE

It is understood and agreed that the word "Assured" whenever used in the Running Down Clause in Section "A" — Hull Insurance, of this Policy, and whenever used in Section "B" — Protection and Indemnity Insurance of this Policy, includes in addition to the named Assured any person, firm, corporation or other legal entity who may be operating the vessel with the prior permission of the named Assured, but does not include a charterer or a paid Master or a paid member of the crew of the insured vessel or a person, firm, corporation or other legal entity, or any agent or employee thereof, operating a shipyard, boat repair yard, marina, yacht club, sales agency, boat service station, or similar organization. Notwithstanding anything contained herein, the insurance provided by this clause does not cover liability of such additional Assureds to the Assured and/or Assureds named in this Policy. This insurance is conditioned upon compliance by an Assured with all the terms, conditions and warranties applicable to the named Assured. Nothing contained herein shall be construed to increase the limits of the Assurers' liability as stated in this Policy.

## SECTION "D" — MEDICAL PAYMENTS INSURANCE

The Assurers agree to pay to or for each person who sustains bodily injury caused by accident occurring during the Policy period, while in or upon, boarding or leaving the yacht insured hereunder, the reasonable expense of necessary medical, surgical, ambulance, hospital and professional nursing services and, in the event of death resulting from such injury, the reasonable funeral expense, all incurred within one (1) year from the date of accident, subject to the following conditions:

**Limit of Liability**    Notwithstanding the foregoing, the Assurers shall not be liable hereunder for any expense or combined expenses incurred in excess of that stated, as a result of any one accident or series of accidents arising out of the same event.

**Exclusions**    The coverage afforded shall not apply:

(1)   To bodily injury to or death of any person:

    (a)   To or for whom benefits are payable under any Workmen's Compensation or under the Federal Longshoremen's and Harbor Workers' Compensation Act;

    (b)   Who is a trespasser in or upon or boarding or leaving the insured yacht;

    (c)   Who is an employee of the Assured while engaged in the employment of the Assured except those in domestic service for whom no benefits are payable or required to be provided under any Workmen's Compensation Law;

(2)   To liability assumed by the Assured under any contract or agreement;

(3)   While the yacht is being used for other than private pleasure purposes;

(4)   To death of the Assured or registered owner of the yacht;

(5)   To bodily injury to the Assured or registered owner of the yacht, unless in excess of any other medical payments insurance collectible.

**Medical Reports: Proof and Payment of Claim**    As soon as practicable, the injured person or someone on his behalf shall give the Assurers written proof of claim, under oath if required, and shall, after each request from the Assurers, execute authorization to enable the Assurers to obtain medical reports and copies of records.

The injured person shall submit to physical examination by physicians selected by the Assurers when and as often as the Assurers may reasonably require.

The Assurers may pay the injured person or any persons or organizations rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute admission of liability of the Assured, or, except hereunder, of the Assurers.

## SECTION "E" — FEDERAL LONGSHOREMEN'S AND HARBOR WORKERS' COMPENSATION INSURANCE

The Assurers agree to insure under this Section for the term of the policy as stated, any liability of the Assured in respect of the insured yacht which shall arise under the United States Longshoremen's and Harbour Workers' Compensation Act, U. S. Code (1946) Title 33, Sections 901-49, and all laws amendatory thereof or supplementary thereto which may be or become effective while this Section of the Policy is in force.

## SECTION "F" — SERVICE OF SUIT

**SERVICE OF SUIT CLAUSE.** It is agreed that in the event of the failure of the Assurers to pay any amount claimed to be due hereunder, the Assurers, at the request of the Assured (or Reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon: Mendes & Mount, 3 Park Ave., New York, N.Y. 10016, that in any suit instituted against any one of them upon this contract, the Assurers will abide by the final decision of such Court or of any Appellate Court, in the event of an appeal. The named are authorized and directed to accept service of process on behalf of the Assurers in any such suit and/or upon the request of the Assured (or Reinsured) to give a written undertaking to the Assured (or Reinsured) that they will enter a general appearance upon the Assurers' behalf in the event such a suit shall be instituted. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Assurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

This Clause shall be paramount and shall override anything contained in this insurance inconsistent herewith.
In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

(1).   ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

(2).   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

(3).   any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

It is a provision of this Radioactive Contamination Exclusion Clause that:

If fire is an insured peril and where the subject matter insured is within the U.S.A., its islands, on shore territories or possessions and a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1 and 2 of this Radioactive Contamination Exclusion Clause; any loss or damage arising directly from that fire shall, subject to the provisions of this insurance; be covered, excluding however any loss, damage, liability or expense caused by nuclear reaction, nuclear radiation contamination arising directly or indirectly from that fire.

## STRIKES CLAUSES (INCLUDING VANDALISM) - HULLS - TIME

Subject always to the Exclusion hereinafter referred to, this insurance also covers loss of or damage to the vessel caused by: -

(a)  Strikers, locked-out workmen or persons taking part in labour disturbances, riots or civil commotions;

(b)  Any terrorist or any person acting maliciously or from a political motive;

(c)  Vandalism.

## EXCLUSION

This insurance excludes any claim for expenses arising from delay except such expenses as would be recoverable in principle in English Law and Practice under the York-Antwerp Rules 1974.

893CW00111

(1/10/83)

## INSTITUTE ADDITIONAL PERILS CLAUSES - HULLS
### (For use only with the American Institute Hull Clauses)

1.     In consideration of an additional premium this insurance is extended to cover     1

    1.1     the cost of repairing or replacing     2

       1.1.1     any boiler which bursts or shaft which breaks     3

       1.1.2     any defective part which has caused loss or damage to the vessel covered     4
             by the peril 'any latent defect in the machinery or hull' as it appears in     5
             lines 79/80 of the American Institute Hull Clauses (June 2, 1977)     6

    1.2     loss of or damage to the Vessel caused by any accident or by negligence,     7
       incompetence or error of judgement of any person whatsoever.     8

2.     Except as provided in 1.1.1 and 1.1.2, nothing in these Additional Perils Clauses shall allow     9
any claim for the cost of repairing or replacing any part found to be defective as a result of     10
a fault or error in design or construction and which has not caused loss of or damage to the     11
Vessel.

3.     The cover provided in Clause 1 is subject to all other terms, conditions and exclusions     12
contained in this insurance and subject to the proviso that the loss or damage has not resulted     13
from want of due diligence by the Assured, Owners or Managers. Master Officers Crew or     14
Pilots not to be considered Owners within the meaning of this Clause should they hold shares     15
in the Vessel.

CL.301

JUL-29-1999  MON  09:03    ID:                          TEL:                          P:20

# UNINSURED BOATER WORDING

**Perils Insured Against:**      Underwriters will pay the damages which, because of bodily
injury received aboard your Yacht, you are legally entitled to
recover from the uninsured owner or operator of another yacht.

"Uninsured Boater" and "Uninsured Owner or Operator" mean
an owner or operator of a yacht other than the yacht named
in this policy who is legally responsible for the accident, and;
a) to whom no liability policy applies; or
b) who cannot be identified (such as a hit and run operator).

**Exclusions:**      Underwriters do not provide Uninsured Boater coverage:
a) for claims settled without our written consent;
b) for a yacht which is insured by governmental agency or
unit;
c) for yachts owned by or furnished for the regular use of you, a
member of your immediate family, or any person insured by
this policy;
d) for an insured using a yacht without permission; or
e) when the yacht named in this policy is being chartered.
f) where no evidence of physical contact exists between your
yacht and an unidentified yacht or where no evidence of physical
contact exists between your yacht and an uninsured yacht.

This coverage will not apply directly or indirectly to the benefit
of any insurer under any state or federal compensation law or
act.

Payment made for this coverage to or for an insured person will
reduce the amount that person is entitled to recover from the
Liability coverage of this policy

**Amount of Insurance:**      The amount shown for Uninsured Boater Coverage on Policy
Schedule is the most Underwriters will pay under this Insurance,
regardless of the number of insured persons, claims made, or
yachts involved in any one accident or series of accidents arising
out of the same event.

MISCUBW

**American Institute**                                                      678-108

Hull War Risks and Strikes Clauses
(Including Automatic Termination and Cancellation Provisions)
For Attachment to American Institute Hull Clauses
December 1, 1977

To be attached to and form a part of Policy No. ............................... of the.................    1

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

This insurance, subject to the exclusions set forth herein, covers only those risks which would be covered by the    3
attached Policy (including collision liability) in the absence of the WAR, STRIKES AND RELATED EXCLUSIONS clause    4
contained therein but which are excluded thereby and which risks shall be construed as also including;    5
    1. Any mine, bomb or torpedo not carried as cargo on board the Vessel;    6
    2. Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force    7
       or matter;    8
    3. Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom;    9
    4. Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power;    10
    5. Malicious acts or vandalism to the extent only that such risks are not covered by the attached Policy;    11
    6. Hostilities or warlike operations (whether there be a declaration of war or not) but this paragraph (6) shall not    12
       include collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object, or strand-    13
       ing, heavy weather, fire or explosion unless caused directly by a hostile act by or against a belligerent power    14
       which act is independent of the nature of the voyage or service which the Vessel concerned or, in the case of    15
       a collision, any other vessel involved therein, is performing. As used herein, "power" includes any authority    16
       maintaining naval, military or air forces in association with a power.    17

EXCLUSIONS

This insurance does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence    18
of:    19
    a. Any hostile detonation of any weapon of war described above in paragraph (2);    20
    b. Outbreak of war (whether there be a declaration of war or not) between any of the following countries: United    21
       States of America, United Kingdom, France, the Union of Soviet Socialist Republics or the People's Republic    22
       of China;    23
    c. Delay or demurrage;    24
    d. Requisition or preemption;    25
    e. Arrest, restraint or detainment under customs or quarantine regulations and similar arrests, restraints or detain-    26
       ments not arising from actual or impending hostilities;    27
    f. Capture, seizure, arrest, restraint, detainment, or confiscation by the Government of the United States or of the    28
       country in which the Vessel is owned or registered.    29

HELD COVERED AND OTHER PROVISIONS

The held covered clause appearing under the heading ADVENTURE in the attached Policy is deleted and the follow-    30
ing clause substituted therefore:—    31
    "Subject to the provisions of the Automatic Termination and Cancellation Clauses below, held covered in the    32
    event of any breach of conditions as to loading or discharging of cargo at sea, or towage or salvage activities    33
    provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the    34
    Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are    35
    agreed to by the Assured."    36

If at the natural expiry time of this insurance the Vessel is at sea, this insurance will be extended, provided previous    37
notice be given to the Underwriters, for an additional premium at a rate to be named by the Underwriters, until midnight    38
Local Time of the day on which the Vessel enters the next port to which she proceeds and for 24 hours thereafter, but    39
in no event shall such extension affect or postpone the operation of the Automatic Termination and Cancellation Clauses    40
below.    41

    Warranted not to abandon in case of capture, seizure or detention, until after condemnation of the property insured.    42
    The provisions of the attached Policy with respect to constructive Total Loss shall apply only to claims arising from    43
physical damage to the Vessel.    44

## AUTOMATIC TERMINATION AND CANCELLATION CLAUSES

45  A.  This insurance and any extension thereof, unless sooner terminated by the provisions of section B or C, shall terminate
46      automatically upon and simultaneously with the occurrence of any hostile detonation of any nuclear weapon of war
47      as defined above, wheresoever or whensoever such detonation may occur and whether or not the Vessel may be
48      involved.

49  B.  This insurance and any extension thereof, unless sooner terminated by the provisions of section A or C, shall termi-
50      nate automatically upon and simultaneously with the outbreak of war, whether there be a declaration of war or not,
51      between any of the following countries: United States of America, United Kingdom, France, the Union of Soviet
52      Socialist Republics or the People's Republic of China.

53  C.  This insurance and any extension thereof, unless sooner terminated by section A or B, shall terminate automatically
54      if and when the Vessel is requisitioned, either for title or use.

55  D.  This insurance and any extension thereof may be cancelled at any time at the Assured's request, or by Underwriters
56      upon 14 days' written notice being given to the Assured, but in no event shall such cancellation affect or postpone
57      the operation of the provisions of sections A, B or C. Written or telegraphic notice sent to the Assured at his (its)
58      last known address shall constitute a complete notice of cancellation and such notice mailed or telegraphed to
59      the said Assured, care of the broker who negotiated this insurance, shall have the same effect as if sent to the
60      said Assured direct. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date
61      and hour of cancellation shall be 14 days from midnight Local Time of the day on which such notice was mailed or
62      telegraphed as aforesaid. Underwriters agree, however, to reinstate this insurance subject to agreement between
63      Underwriters and the Assured prior to the effective date and hour of such cancellation as to new rate of premium
64      and/or conditions and/or warranties.

### RETURNS OF PREMIUM

65      The RETURNS OF PREMIUM clause of the attached Policy is deleted and the following substituted therefore:—
66      "In the event of an automatic termination or cancellation of this insurance under the provisions of sections
67      A, B, C or D above, or if the Vessel be sold, pro rata net return of premium will be payable to the Assured,
68      provided always that a Total Loss of the Vessel has not occurred during the currency of this Policy. In no
69      other event shall there be any return of premium."

70  THIS INSURANCE SHALL NOT BECOME EFFECTIVE IF, PRIOR TO THE INTENDED TIME OF ITS ATTACHMENT, THERE
71  HAS OCCURRED ANY EVENT WHICH WOULD HAVE AUTOMATICALLY TERMINATED THIS INSURANCE UNDER THE
72  PROVISIONS OF SECTIONS A, B, OR C HEREOF HAD THIS INSURANCE ATTACHED PRIOR TO SUCH OCCURRENCE.

CL 237.   Sold by Witherby & Co. Ltd., London.

## DELIBERATE DAMAGE CLAUSE

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which the Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard or threat. Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

893CW00041

R13

## "WAR ETC." PROTECTION & INDEMNITY CLAUSE
### INCLUDING CONFISCATION & EXPROPRIATION

This insurance is to cover in full (up to the amount of this policy in respect of any one occurrence but including costs as below in addition) such claims for Protection and Indemnity as per clauses or conditions of Protection and Indemnity Insurance and/or entry (with any Lloyd's Underwriters, Companies or Protection and Indemnity Associations) in connection with insured vessel, as are not and/or may not be recoverable under such insurance and/or entry by reason of any clause or clauses therein excluding capture, seizure, arrest, restraint or detainment confiscation, expropriation or the consequences thereof or any attempt thereat, hostilities, warlike operations or the consequences thereof whether there be a declaration of war or not, civil war, revolution, rebellion, insurrection or civil strife arising therefrom mines, torpedoes, bombs or other engines of war, piracy, strikes, lockout, political or labor disturbances, riots, civil commotions, military or usurped power or acts of persons acting maliciously, or any of them by reason of any conditions in such insurance and/or entry stating that the insured vessel shall be deemed to be entered in a "WAR RISKS ASSOCIATION".

Should the insurance and/or entry for Protection and Indemnity risks in connection with the insured vessel omit and/or exclude any of the protection granted by entry against all Protection and Indemnity risks with and/or under Hansen Yacht Form then for the purpose of this insurance such omitted and/or excluded protection shall be deemed to be included in such insurance and/or Club entry.

In the event of there being no insurance and/or Club entry against Protection and Indemnity risks it is agreed that for the purpose of this clause the vessel shall be deemed to be entered for all Protection and Indemnity risks with and/or under Hansen Yacht Form.

Underwriters hereunder agree to waive any right they might have to disclosure of the terms of the insurance and/or Club entry against Protection and Indemnity risks.

All claims under this policy shall be paid in full and without deduction or franchise even though such claims might impliedly be subject to limit deduction or franchise by reason of the terms of the insurance and/or Club entry against Protection and Indemnity risks.

Any costs incurred, with the consent of the majority (in amount) of the Underwriters hereunder, in determining the liability of the Assured to any third party or of any third-party (which expression shall include any other Underwriters) to the Assured or the Underwriters hereunder shall be payable by the latter without regard to any sum which may or may not be payable hereunder.

Underwriters liability under this clause shall be limited to the amount insured hereunder any one accident or occurrence (including costs in addition) independently of all other claims arising hereunder. Nevertheless these risks are subject to the Automatic Termination and Cancellation Provisions contained in the American Institute Hull War Risks and Strikes Clauses - December 1, 1977 including Addendum dated April 1, 1984.

15 April 1999

## WAR RISK TRADING WARRANTIES

### For use with Insurances on Vessels engaged in "World-Wide" Trade.

1.  This coverage shall extend world-wide, but in the event of a vessel or craft
    insured hereunder sailing for, deviating towards, or being within the Territorial
    Waters of any of the Countries or places described in the Current Exclusions as
    set out below (including any port area that at the date of this notice constitutes
    part of such a country or place however it may hereafter be described) additional
    premium shall be paid at the discretion of insurers hereon.

    Information of such voyage or deviation shall be given to insurers as soon as
    practicable, and the absence of prior advice shall not affect the cover hereon. In
    the event of the assured not requiring continuation of coverage for a vessel
    proceeding into or remaining within an excluded area, he shall so advise insurers
    hereon before the commencement of such voyage, deviation or period, and it
    shall be at the insurers' discretion whether and on what terms the insurance shall
    be reinstated.

2.  Current Exclusions

    A) Persian or Arabian Gulf and adjacent waters including the Gulf of Oman North
       of 24° N
    B) Angola (including Cabinda)
    C) Israel
    D) Lebanon
    E) Libya (including Gulf of Sidre/Sirte)
    F) Eritrea
    G) Somalia
    H) Congo, Democratic Republic of (formerly Zaire)
    I) Liberia
    J) Sri Lanka
    K) Albania
    L) Sierra Leone
    M) Yugoslavia, Federal Republic of (Serbia & Montenegro)
    N) Bosnia - Herzegovina
    O) Croatian Ports South of 42° 53' 48" N and East of 017° 39' 36" E

UL-26-1999  MON 09:26  ID:                                                          TEL:                    P:26

# PERSONAL EFFECTS CLAUSE

It is hereby agreed that this Policy is extended, for the period stated hereunder, to cover the Personal Effects of the Assured and/or Assured's family and/or crew and/or passengers against all risks of whatsoever nature but excluding claims arising from:

1.    Damp, mould, mildew, moth, vermin, wear, tear and gradual deterioration.

2.    Breakages of articles of a brittle nature unless such is caused by burglars, thieves, fire, stress of weather, stranding, sinking or collision.

This cover only to operate whilst embarking/disembarking and on board, or used in connection with the insured vessel.

Total value to be insured USD N/A. (Maximum value).

USD N/A any single article.

## AVERAGE CLAUSE

This insurance is subject to the conditions of average that is to say, if the property covered shall at the time of any loss be of greater value than the sum insured hereby, the Assured shall only be entitled to recover hereunder such proportion of the said loss as the sum insured bears to the total value of the said property.

## NON CONTRIBUTION CLAUSE

This insurance does not cover any loss or damage which at the time of the happening of such loss or damage is insured by or would but for the existence of this Policy, be insured by any other existing policy or policies except in respect of any excess beyond the amount which would have been payable under such other policy or policies had this insurance not been effected.

Subject to a deductible of USD 100 each and every loss.

893CW00132

## INSTITUTE RADIOACTIVE CONTAMINATION EXLUSION CLAUSE

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1. In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

   1.1 ionising radiations from or contamination by radioactivity from any nuclear waste or from combustion of nuclear fuel.

   1.2 the radioactive, toxic explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

   1.3 any weapon or war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

CL 356
1st October 1990

L-26-1999  MON 29:27  ID:

## CANCELMENT NOTICE CLAUSE

Whereas (notwithstanding anything contained in this Policy to the contrary) credit has been given by CRAWLEY WARREN & COMPANY LIMITED (hereinafter called the Brokers) for premium due to them hereon it is hereby agreed between the Assured and the Brokers that in the event of the premium or any instalment thereof not having been received by the Brokers as soon as it has become due to them and/or in the event of the Assured not having paid the premium or any instalment thereof prior to the expiry of the five days hereinafter mentioned the Brokers are hereby authorised by the Assured on the expiry of the five days from dispatch to the Assured of a telegram demanding payment to cancel risk under this Policy from expiry of the aforesaid five days or from any later date at the sole discretion of the Brokers and on such cancellation the Underwriters shall not be responsible for accidents that can be proved to have happened after such cancellation and the Brokers may collect and retain any return premium hereon.  In such case Underwriters hereby agree to cancel and return to the Brokers any premium that may have been already received by the Underwriters in excess of pro-rata premium up to cancelling date or if the premium shall not then have been paid to the Underwriters they shall receive from the Brokers the balance of premium up to the said cancelling date.  This clause shall not prejudice or affect the Brokers lien on this policy for any amount remaining due to them whether in connection with this Policy or otherwise or any right of the Brokers against the Assured.

1/5/90

## INSTITUTE SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters severally subscribing this Insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to Jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

Subject to the Underwriters' rights set forth above:

(a)     It is further agreed that the Assured may serve process upon any senior partner in the firm of:

Mendes & Mount (Attorneys), 3 Park Avenue, New York, N. Y. 10016

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

(b)     The above named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

(c)     The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgagee under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgagee.

(d)     Further, pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the Officer is authorized to mail such process or a true copy thereof.

If this clause is attached to a contract of reinsurance the terms insurance and Assured shall mean reinsurance and Reassured respectively.

CL. 355

## MASTER/CREW ENDORSEMENT

The inclusion of the Master and/or Crew of the insured vessel as an additional assured under the Protection and Indemnity section of this policy, shall not affect their rights against any other named assured in this policy; nor will it affect any named assured's right of recovery under the terms of this insurance for any claim made by them or indemnification for any claim made against them.

893CW00088

# COMPUTER DATE RECOGNITION PROBLEMS ("MILLENIUM BUG")

We are writing to you to inform you of an issue that concerns all owners of pleasure craft and, indeed, larger vessels. Much has been written about the "so-called" Millenium Bug, a convenient shorthand for describing a range of problems affecting computers, microchips and the GPS navigation system. These problems can be summarised as follows:-

1.  Some computers and computer chips are programmed to identify dates using a two-digit designation - "97" for 1997, "98" for 1998, and so on. At the end of 1999, therefore, the computer may not recognise "00" as 2000, but possibly 1900 or some other date. The likely consequence of this is that the software or hardware freezes, crashes, or produces corrupted data.

2.  Some programming languages attach significance to a series of nines, often as a code or shorthand for other operations. The unfortunate consequence of this is that 9 September 1999 ("9/9/99") may be interpreted by the computer as a command to stop functioning or carry out some other operation.

3.  The year 2000 is a leap year, whereas the year 1900 was not. It is possible that 29 February 2000 may be disregarded by some software.

4.  There is a separate problem arising from the Global Positioning System ("GPS"). The system is designed to operate in periods of 1024 weeks until it resets. This has been calculated to occur at midnight on 22 August 1999 UTC. It is possible that, once the system has reset on that day, it may revert to the original date 1024 weeks earlier, 6 January 1980. The consequences of this are almost impossible to predict.

The problem affects computers and software, as well as embedded chips in a wide variety of equipment, or subsidiary control and monitoring systems. These often are found in objects that do not resemble traditional computers in the sense of desk tops or lap tops. Typically, yachts and small pleasure craft contain one or any combination of types of equipment which may be reliant on computer software or embedded micro-processor chips. Such equipment includes:

1.  GPS and other navigational systems
2.  Telecommunications
3.  Radar
4.  Echo-sounding, depth and distance-measuring equipment
5.  Alarms systems (fire, smoke, engine temperature, etc.)
6.  Helm control systems (speedometers, tachometers, etc.)
7.  Data-recording systems
8.  Automatic pilot systems
9.  Security systems.
10. Engine management and control systems

This list is not intended to be exhaustive.

If you are in any doubt as to any of the systems employed on your vessel, we would advise you to contact the manufacturer and/or suppliers of any such equipment.

Obviously, any insured who fails to recognise and address problems associated with the so-called Millenium Bug places himself, his vessel and the public in harm's way.   We strongly recommend that, in compliance with your obligations under your insurance policy, you take all necessary steps to ensure that your vessel, its systems and equipment will not be affected by any date recognition problem whatsoever.   For the avoidance of doubt, any costs or expenses incurred in connection with these efforts are for your account.   Underwriters will not respond to them.

# PROOF OF LOSS

$3,500,000.00
Amount of policy at time loss

MH995605
Policy No.

To:  CIGNA Insurance Company of Europe
     c/o ACE USA
     Tampa, Florida

1.  My name is William T. Stover, and I am the Sole Director of First South Development and Investment, Ltd., ("First South"), the record owner of the M/Y BASIL's ("Vessel").

2.  At the time of loss described herein , by the above indicated policy of insurance, you insured First South against loss by fire and other perils which might befall the M/Y BASIL's, Official Number (Cayman) 732394, according to the terms and conditions of the policy and all forms, endorsements, transfers, and assignments attached to it.

3.  On July 1, 1999, First South entered into a contract of insurance (the "Policy") for the Vessel through C.A. Hansen. The Policy provides for hull and machinery coverage in addition to protection and indemnity insurance on the Vessel. The term of the Policy runs from July 1, 1999 through May 1, 2000.

4.  On Sunday, July 25, 1999, at approximately 1:30 in the afternoon as the Vessel was en route from Chubb Key to Ft. Lauderdale, Florida, a fire broke out on the Vessel. It is believed that the fire originated in the engine room of the Vessel although the cause of the fire is unknown and is currently the subject of investigation.  Despite the efforts of the captain and crew to extinguish the fire, it burned intensely, resulting in the captain and crew abandoning the Vessel in fear of danger to life and limb. The Vessel burned to the water line and eventually sank.

5.  There were no known personal injuries as a result of the fire.

6.  Immediately following the loss, First South notified C.A. Hansen. First South has cooperated with the insurer to preserve and protect the integrity of the Vessel for purposes of investigating the cause and origin of the fire, as well as to salvage and protect both the Vessel and the surrounding environment.

7.  Upon commencement of the voyage during which the fire occurred, and at all relevant times, the Vessel was in all respects seaworthy, properly manned, equipped and supplied.

8.  At the time of the loss,  First South owned 100% of the Vessel. No other person or persons had any interest therein or encumbrance thereon, except for Branch Banking & Trust which is the mortgagee under a first preferred ship mortgage on the Vessel.

9.  Since the policy was issued, there has been no assignment, change of interest, use, occupancy, possession or exposure of the Vessel.

10.  The total amount of insurance on the Vessel at the time of the loss was Three Million Five Hundred Thousand Dollars ($3,500,000), besides which there was no other policy or other contract of insurance, written or oral, valid or invalid.

11.  As a result of the fire, the Vessel was rendered a total loss. The amount claimed under the above numbered policy is Three Million Five Hundred Thousand Dollars ($3,500,000).

12.  The loss did not originate by any act, design or procurement on the part of your insured, or this affiant. Nothing has been done by or with the privity or consent of your insured or this affiant to violate the conditions of the policy, or to render it void.

13. Any other information that may be required will be furnished and considered a part of this proof.

Dated this 6th day of August, 1999.                     FIRST SOUTH DEVELOPMENT AND
                                                        INVESTMENT LTD.


                                                        By _____
                                                           William T. Stover


STATE OF FLORIDA

COUNTY OF MIAMI-DADE

     The foregoing Proof of Loss was acknowledged before me this 6th day of August, 1999, by

William T. Stover, the sole Director of First South Development and Investment Ltd., a Cayman Island

Company. He is personally known to me or has produced _____ as identification and who

did/did not take an oath.


                                                        _____
                                                        Notary Public, State of Florida
                                                        My Commission Expires:

                                                        Julie L. Dunham
                                                        MY COMMISSION # CC648024 EXPIRES
                                                        May 23, 2001
                                                        BONDED THRU TROY FAIN INSURANCE, INC.


MIA1 #858275 v1

JUL 29 1999 17:30 FR HOLLAND KNIGHT          TO 7760#37464#11#13 P.02/02

| ACORD PROPERTY LOSS NOTICE | | OP ID | DATE (MM/DD/YY) 07/26/99 |
|---|---|---|---|

| PRODUCER PHONE (A/C, No, Ext): 954-776-2222 | MISCELLANEOUS INFO (Site & location own) | DATE OF LOSS AND TIME 07/25/99 | AM [ ] PM [ ] | PREVIOUSLY REPORTED YES [ ] NO [ ] |
|---|---|---|---|---|

C. A. Hansen Marine Insurance
A Division of Brown & Brown
P.O. Box 5727
Fort Lauderdale FL 33310-5727
James Scott Sharrod

| | TYPE | COMPANY AND POLICY NUMBER | NAIC CODE | POLICY DATES |
|---|---|---|---|---|
| CODE: | PROP NAME | CO: 98 Crawley Warren CIGNA | | EFF: 05/01/99 |
| | POL: MH995605 | | EXP: 05/01/00 | |
| SUB CODE: | CO: | | | EFF: |
| AGENCY CUSTOMER ID | FLOOD | POL: | | EXP: |
| PIRS-22 | WIND | CO: | | EFF: |
| | | POL: | | EXP: |

**INSURED** | **CONTACT** | CONTACT INSURED [ ]

| NAME AND ADDRESS | SOC SEC #: | NAME AND ADDRESS | WHERE TO CONTACT |
|---|---|---|---|
| First South Development<br>William T. Stover<br>P.O. Box 14280<br>Greensboro NC 27415 | | BARBARA LOCKE<br>305 789-7760<br>CAPT. BLAKE 954 523-9172 OR<br>CELL# 629-7940 | WHEN TO CONTACT |

| RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) |
|---|---|---|---|

**LOSS**

| LOCATION OF LOSS | 15MILES NE BIMINI ON BAHAMA BANK. | POLICE OR FIRE DEPT TO WHICH REPORTED |
|---|---|---|

| KIND OF LOSS | [X] FIRE  LIGHTNING  FLOOD  OTHER<br>THEFT  HAIL  WIND  (explain) | PROBABLE AMOUNT ENTIRE LOSS 3,500,000 |
|---|---|---|

DESCRIPTION OF LOSS & DAMAGE (Use separate sheet, if necessary)
FUEL IN ENGINE ROOM STARTED FIRE.  BOAT ENGULFED IN FLAMES.
CAPT. AND 1 CREWMAN JUMPED OFF AND WERE RESCUED NO INJURIES
AWAIT INFO ON EXACT LOCATION OF VESSEL FROM COAST GUARD.

**POLICY INFORMATION**

MORTGAGEE
[ ] NO MORTGAGEE

HOMEOWNER POLICIES SECTION I ONLY (Complete for coverages A, B, C, D & additional coverages. For Homeowners Section II Liability Losses, use ACORD 3.)

| A. DWELLING | B. OTHER STRUCTURES | C. PERSONAL PROPERTY | D. LOSS OF USE | DEDUCTIBLES | DESCRIBE ADDITIONAL COVERAGES PROVIDED |
|---|---|---|---|---|---|
| | | | | | ON |

[ ] COVERAGE A EXCLUDES WIND
SUBJECT TO FORMS (Insert form numbers and edition dates, special descriptions)

FIRE, ALLIED LINES & MULTI-PERIL POLICIES (Complete only those items involved in loss)

| ITEM. | SUBJECT OF INSURANCE | AMOUNT | % COINS | DEDUCTIBLE | COVERAGE AND/OR DESCRIPTION OF PROPERTY INSURED |
|---|---|---|---|---|---|
| | BLDG [ ] CNTS [ ] | | | | |
| | [X] HULL | 3,500,000 | | 35,000 | |
| | BLDG [ ] CNTS [ ] | | | | |
| | BLDG [ ] CNTS [ ] | | | | |

SUBJECT TO FORMS
(Insert form numbers and edition dates, special descriptions)

| FLOOD POLICY | BUILDING | | DEDUCTIBLE | | ZONE | PRE FIRM [ ] | DIFF IN ELEV | FORM TYPE | GENERAL [ ] DWELLING | CONDO [ ] |
|---|---|---|---|---|---|---|---|---|---|---|
| | CONTENTS | | DEDUCTIBLE | | | POST FIRM [ ] | | | | |
| WIND POLICY | BUILDING | | DEDUCTIBLE | CONTENTS | ZONE | FORM TYPE | GENERAL [ ] DWELLING | | CONDO [ ] | |

REMARKS/OTHER INSURANCE (List companies, policy numbers, coverages & policy amounts)
WILL ADVISE IF BOAT WAS SALVAGED WHEN WE ARE ABLE TO CONTACT BARBARA LOCKE
WHO HAS BEEN WORKING WITH THE COAST GUARD.

| CAT # | FICO # | ADJUSTER ASSIGNED | | ADJUSTER # | DATE ASSIGNED |
|---|---|---|---|---|---|

| REPORTED BY CAPT. KELLY BLAKE | REPORTED TO ARLENE WEICHER | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER James Scott Sharrod |
|---|---|---|---|

ACORD 1 (1/97)          NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE          ACORD CORPORATION 1968

JUL 29 1999 09:42                                                    ** TOTAL PAGE.02 **

IN THE CIRCUIT COURT,
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY,
FLORIDA

CASE NO:    99-017385

DIVISION:    07

FIRST SOUTH DEVELOPMENT
& INVESTMENT, LTD., a Cayman
corporation, and WILLIAM T. STOVER,
an individual,

       Plaintiffs,

v.

CIGNA INSURANCE COMPANY OF
EUROPE, an alien corporation,

       Defendant.

_____/

## AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiffs, First South Development & Investment, Ltd. (hereinafter "First South"), and William T. Stover (hereinafter "Stover"), by and through their undersigned attorneys, sue the Defendant, CIGNA Insurance Company of Europe (hereinafter "CIGNA EUROPE"), and allege as follows:

1.    This is an action for damages in excess of $15,000.00, exclusive of interest, costs and attorneys' fees, and/or for declaratory relief in which the amount in controversy exceeds $15,000.00, exclusive of interest, costs and attorneys' fees.

2.     At all relevant times, Plaintiffs, First South and Stover, were the assureds under an all risks insurance policy issued by CIGNA EUROPE covering the M/Y BASIL'S. The M/Y BASIL'S was a 116 foot motor yacht, built in 1993 and owned by Plaintiffs.

3.     First South is a Cayman Islands corporation and Stover is a resident of Florida.

4.     At all relevant times, Defendant, CIGNA EUROPE, was an alien insurance company that transacted insurance and was otherwise doing business in Florida. At all relevant times, CIGNA EUROPE was not authorized by the Florida Department of Insurance to transact insurance in Florida either as an authorized insurer or as a surplus lines carrier.

5.     CIGNA EUROPE is subject to the jurisdiction of this Court as the causes of action alleged arise out of CIGNA EUROPE conducting the following activities: (a) operating, conducting, engaging in, or carrying on a business or business venture in the State of Florida, (b) maintaining an office or agency in the State of Florida, and/or (c) contracting to insure risks located in the State of Florida. Additionally, CIGNA EUROPE has contractually subjected itself to and consented to the jurisdiction of this Court for the causes of action alleged. Additionally, at all relevant times, CIGNA EUROPE was engaged in substantial and not isolated activity within the State of Florida.

6.     CIGNA EUROPE insured the M/Y BASIL'S pursuant to a policy of insurance issued to First South and Stover (the "policy").

7.     The policy period for the M/Y BASIL'S was from July 1, 1999, through May 1, 2000, and the agreed value of the vessel in the policy is $3,500,000.00. The policy was delivered or issued for delivery to Plaintiffs in Florida and insured risks located in Florida. A copy of the policy is attached hereto as Exhibit 1.

2

8.    On July 25, 1999, during the term of the policy, the M/Y BASIL'S caught fire and sank during a voyage from Chub Cay, Bahamas, to Fort Lauderdale, Florida. The fire and subsequent sinking resulted in the total loss of the vessel, and such loss is a covered peril under the policy.

9.    Pursuant to the terms of the policy, Plaintiffs submitted a notice of loss on July 26, 1999, and a proof of loss on August 6, 1999. Copies of the notice of loss and proof of loss are attached as exhibits 2 and 3, respectively.

10.    In breach of its obligations under the policy, CIGNA EUROPE, on August 17, 1999, stated that it rejected the Plaintiffs' proof of loss because it had not yet completed its examination.

11.    The "Notice of Loss and Filing of Proof" clause of the policy states, in part, that:

> Assureds shall also file with the Assurers and/or their representatives a detailed sworn Proof of Loss, a proof of interest and in a case of partial loss, receipted bills as soon as practicable following the date of loss.

12.    The "Payment of Loss" clause of the policy states:

> In case of loss payable under this policy, such loss to be paid by Assurers within 90 days after receipt by the Assurers and/or their representative who issued this policy, [sic] satisfactory proof of loss, proof of interest in the property insured and in the event of partial loss, receipted bills, all indebtedness of the Assured being first deducted.

13.    Under the terms of the policy, CIGNA EUROPE was required to pay the agreed value of the vessel on or before November 4, 1999, which is the ninetieth day after

3

August 6, 1999. CIGNA EUROPE has no right under the policy to arbitrarily reject the Plaintiffs' proof of loss due to an incomplete investigation on CIGNA EUROPE's part.

14.    CIGNA EUROPE's unauthorized rejection of the Plaintiffs' proof of loss constituted a denial of the Plaintiffs' claim and/or an anticipatory repudiation by CIGNA EUROPE of CIGNA EUROPE's obligations to pay the agreed value of the vessel under the policy on or before November 4, 1999.

15.    CIGNA EUROPE further breached the policy by refusing to pay the agreed value of the vessel under the policy on or before November 4, 1999.

16.    CIGNA EUROPE further breached the policy by harassing and threatening the Plaintiffs during its investigation, by continuing to conduct an investigation after November 4, 1999, and by demanding the Plaintiffs either comply with unreasonable demands during the investigation or their substantial claim would be denied for lack of cooperation. CIGNA EUROPE's investigation was performed in a bad faith, vexatious and harassing manner.

17.    On or about January 20, 2000, CIGNA EUROPE again breached the policy by reaffirming its denial of the Plaintiffs' claim for benefits under the policy for the loss of the M/Y BASIL'S and by purporting to rescind the policy. This conduct by CIGNA EUROPE constitutes additional bad faith, vexatious and harassing conduct on its part in connection with Plaintiffs' claim.

18.    All conditions precedent to the bringing of this action have occurred, have been satisfied by Plaintiffs and/or have been waived by Defendant.

19.    The Plaintiffs have retained the undersigned attorneys to represent their interests herein and are obligated to pay a reasonable fee for said attorneys' services.

### Count I – Breach of Contract

20.    Plaintiffs reassert and reallege paragraphs 1 – 19.

21.    CIGNA EUROPE has breached the policy by, among other actions, (a) arbitrarily denying Plaintiffs' claim without any investigation, (b) repudiating its obligations under the policy, (c) conducting an unreasonable, overreaching and harassing investigation beyond that permitted by the policy, (d) failing to timely act on Plaintiffs' claim, (e) again denying Plaintiffs' claim following its investigation, and/or (f) attempting to rescind the policy.

22.    As a direct and proximate result of CIGNA EUROPE's breaches of the policy, Plaintiffs have sustained and continue to sustain monetary damages including, but not limited to, the agreed value of the M/Y BASIL'S, sue and labor expenses, salvage costs, surveyors' fees, attorney's fees and the loss of use of the funds owed under the policy.

**WHEREFORE**, Plaintiffs, FIRST SOUTH DEVELOPMENT & INVESTMENT, LTD., a Cayman corporation, and WILLIAM T. STOVER, individually, request judgment in their favor and against Defendant, CIGNA INSURANCE COMPANY OF EUROPE, for damages, costs, prejudgment interest, attorneys' fees pursuant to section 627.428, Florida Statutes, and/or the inequitable conduct doctrine, and because of CIGNA EUROPE's bad faith and vexatious conduct as alleged herein, and such further relief as this Court deems fair and just.

### Count II – Declaratory Relief

23.    Plaintiffs reassert and reallege paragraphs 1 – 19, 21 and 22.

24.    There is a current controversy between Plaintiffs and CIGNA EUROPE regarding (a) the covered nature of the Plaintiffs' claim arising out of the loss of the M/Y

BASIL'S, (b) the validity and enforceability of the policy at the time of the loss, and (c) the legality of the investigation performed by CIGNA EUROPE in Florida following the loss.

25.    Plaintiffs request the Court declare as follows:

(a)    that CIGNA EUROPE breached the policy by arbitrarily rejecting Plaintiffs' proof of loss without performing any investigation;

(b)    that CIGNA EUROPE only provided itself in the policy ninety (90) days after receipt of the Plaintiffs' proof of loss either to accept and to pay the claim or to deny the claim;

(c)    that CIGNA EUROPE failed to take either action within the time provided by the policy and instead sought to extend an unreasonable investigation after that time;

(d)    that CIGNA EUROPE's investigation was unreasonable in scope and conducted in a bad faith and vexatious manner to harass its insureds and/or to intimidate witnesses;

(e)    that CIGNA EUROPE's failure to take any action within the time provided by the policy was a breach of the policy that bars or estops CIGNA EUROPE from using any investigative materials gathered after November 4, 1999 in this lawsuit, and/or bars or estops CIGNA EUROPE from denying the Plaintiffs' claim;

(f)    that the policy cannot be rescinded by CIGNA EUROPE except for intentional, material concealments or misrepresentations by its insureds and that no such concealments or misrepresentations occurred in this matter;

6

(g)    that the policy was is full force and effect at the time of the loss;

(h)    that CIGNA EUROPE's issuance of the policy and investigation in the State of Florida were illegal under the laws of the State of Florida;

(i)    that CIGNA EUROPE is barred from using any materials gathered during its illegal investigation in the State of Florida in this action or in any other efforts to avoid its obligations under the policy;

(j)    that CIGNA EUROPE is barred from defending this action in the State of Florida under Florida law due to its illegal issuance of the policy, its illegal investigation of the claim, and other illegal activities under Florida law;

(k)    that CIGNA EUROPE is obligated to pay to plaintiffs the full value of their claim, plus interest from the date of the loss, together with costs, attorneys' fees pursuant to section 627.428, Florida Statutes, and/or the inequitable conduct doctrine, and because of CIGNA EUROPE's bad faith and vexatious conduct as alleged herein; and

(l)    any further declaratory and/or incidental legal or equitable relief as the Court deems fair and just under the circumstances.


**WHEREFORE**, Plaintiffs, FIRST SOUTH DEVELOPMENT & INVESTMENT, LTD., a Cayman corporation, and WILLIAM T. STOVER, individually, request judgment in their favor and against Defendant, CIGNA INSURANCE COMPANY OF EUROPE, as alleged herein.

7

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

**HOLLAND & KNIGHT LLP**

By: _____

Barbara E. Locke
Florida Bar No.:
Robert M. Dees
Florida Bar No.:  714399
Frederick D. Page
Florida Bar No.:  968587
50 N. Laura Street, Suite 3900
Jacksonville, Florida  32202
Tel:  (904) 353-2000
Fax: (904) 358-1872

Attorneys for Plaintiffs First South
Development & Investment, Ltd. and
William T. Stover

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Amended and Supplemental Complaint has been served via hand delivery on CIGNA Insurance Company of Europe, c/o Mendes & Mount, 750 Seventh Avenue, New York, New York  10019, on this 25th day of January, 2000.

_____
Atttorney

JAX1 #512407 v2

8

# *C. A. Hansen*

A Division of Brown & Brown, Inc.
5900 N. Andrews Avenue, Suite 900
Fort Lauderdale, FL. 33309
Tel: 954-776-2222
Fax: 954-493-9730

July 21, 1999

## COVERNOTE

*In accordance with your instructions the following insurance has been effected through our correspondent broker in London on your behalf:*

COVER NOTE:  MH995605

FORM:  MAR 91

ASSURED:  Bill Stover and/or First South Development

VESSEL:  "BLUE PACIFIC" 1994 90' Fiberglass Twin Man Diesel Montefino Motor Yacht.

PERIOD:  Twelve months at noon, 1st May 1999, Eastern Standard Time

INTEREST:  <u>Hull Machinery & Equipment valued</u>: USD1,500,000. including personal effects; including tenders & outboards/watercraft; including electronics.
<u>Protection & Indemnity</u>:  USD1,000,000. Any One Person/Any One Accident
<u>Medical Payments</u>:  USD100,000 Any One Person
USD500,000 Any One Accident
(Including Named Assured)
<u>Uninsured Boaters</u>:  USD2,000,000. Any One Accident.

SUM INSURED:  100% of Value and Limits

CONDITIONS:  Hansen Yacht Form 893CW00048 with Section A-Exclusions 2, 3 & 5 deleted.
Including Strikes, Riots, Civil Commotions, Vandalism and Malicious Mischief 893CW00111.
Warranted Private Pleasure Use including Charter, warranted owner/owners skipper in charge.
Omnibus Clause amended to include a paid Master or a paid member of the crew of the insured vessel while acting in their capacity as Captain and Crew of the insured vessel.
Noted and agreed that in cases where the liability of the Assured shall be contested in any suit or action with the consent in writing of the Assurers, the Assurers will pay such ensuing costs as the Assured may incur as a result of such suit or action in addition to the applicable limits of insurance coverage stated in the relevant Sections of this insurance.
This insurance does not cover any liability cost or expense in respect of fines, penalties, punitive or exemplary damages, howsoever described but agreed to pay any fine or penalty assessed by any Government or agency thereof for damage to marine environment or pollution to marine environment subject to a maximum limit of USD500,000.
Section "D" - Medical Payments Insurance extended to include repatriation expenses and to include captain and crew while in the employment of the Assured and signed onto the Yacht, ashore and afloat.

Page 1 of 3

# C. A. Hansen

*Attaching to and forming part of Cover Note Number:*      MH995605

CONDITIONS:      Institute Additional Perils Clauses-Hulls (1/10/83)CL.301 amended for use with Hansen Yacht Form.

Agreed provide cover for the act of any Governmental Authority or State Authority done for the purpose of saving the yacht.

Agreed pay the reasonable cost of inspecting the bottom of the vessel after grounding, even if no damage be found, without application of any deductible.

Uninsured Boaters Wording.

American Institute Hull War Risks Clauses dated 1st December, 1977 87B-108 and Addendum dated 1st April, 1984 amended to apply to war and Related Exclusions of the Hansen Yacht Form and extended to include claims for loss, damage or expense caused by or resulting from any terrorist or any person acting maliciously or from a political motive.

Deliberate Damage Clause 893CW00041.

War Protection and Indemnity Clause R.13 extended to include claims for loss, damage or expense caused by or resulting from any terrorist or any person acting maliciously or from a political motive.

Subject to current war risk trading warranties.

Personal Effects Clause 893CW00132.

Institute Radioactive Contamination Exclusion Clause(CL.356).

Cancelment Notice Clause 893CW00105.

Institute Service of Suit Clause (USA) CL.355.

Computer Date Recognition ("Millennium Bug") Wording as attached.

Including Master/Crew Endorsement 893CW00088.

Agreed to provide additional protection in the event there is an emergency situation where the Assured and the Insured Vessel are in not in imminent danger.

Agreed to reimburse reasonable costs incurred, not to exceed a total of USD50,000 resulting from the following services to the Insured Vessel if help is not available and commercial assistance must be obtained:

    a.   towing to the nearest place where necessary repairs can be made;

    b.   delivery of gas, oil, parts or loaned battery (excluding the cost of these items themselves) or emergency labor, while away from safe harbour.

The policy deductible does not apply to this coverage.

Noted & agreed that from time to time there may be more than 12 passengers on board whilst alongside, at anchor or whilst under way at sea.

Agreed pay for loss or damage to the vessel when caused by the breach of any warranty contained in this policy by a paid Captain and/or paid crew members or charterer provided the breach of such warranty does not constitute a violation of the laws of the country that has jurisdiction over the yacht at the time the breach occurred or breach is not committed with the consent, approval or knowledge of the Assured.

Provided this insurance is renewed with the same Underwriters and upon receipt of written confirmation from the Assured that there are no claims attaching to this policy, it is agreed that there shall be payable at expiry a no claims bonus calculated at 5% of the current years premium paid by the Assured, after all adjustments for additional &/or return premiums.

Page 2 of 3

# *C. A. Hansen*

*Attaching to and forming part of Cover Note Number:*          MH995605

CONDITIONS:     Subject to Underwriters Sight and Approval of a satisfactory proposal form signed by the assured or his authorized representative prior to attachment.
Subject to Underwriters sight and approval of full crew details/resumes prior to attachment.

DEDUCTIBLE:     USD15,000. as clauses; deductible in respect of Personal Effects USD100. as Clauses; deductible in respect of Tenders and Outboards USD250. each vessel; deductible in respect of electronics, communications and navigation equipment USD500. each and every loss; but deductible not applicable to claims for Sue and Labour following an incident likely to produce a claim under the policy and where the Assured is attempting to mitigate loss to Insuring Underwriters.

12 Months in Commission

NAVIGATING:     Western Hemisphere not North of 50 degrees North Latitude, nor South of the Equator; excluding waters of Cuba, Colombia, Haiti, the Panama Canal, Pacific Ocean and Trans-Atlantic voyages.

PREMIUM:        USD13,500.

SECURITY:       100% Cigna Insurance Company of Europe S.A.-N.V

INFORMATION:    Coverage to include 5 (five) permanent paid crew.

*Every proposer when seeking new insurance or renewing an existing policy must disclose any information which might influence the underwriters in deciding whether or not to accept the risk, what the terms should be, or what premiums to charge. Insurance contracts being subject to a duty of the utmost good faith, failure to do so may render the insurance voidable from inception and enable the underwriters to repudiate liability.*

*This cover note is our advice to you that a contract of insurance has been effected with the underwriters shown, using the information which you have provided or agreed. The insurance contract is subject to all terms and conditions of the policy to be issued and in the event of any inconsistency between the policy and this cover note, the policy shall prevail.*

*Please examine this cover note carefully to confirm that coverage has been arranged in accordance with your requirements and that the security shown is acceptable. If not, please advise us immediately.*

_____

*C. A. Hansen*

Page 3 of 3

# *C. A. Hansen*

A Division of Brown & Brown, Inc.
5900 N. Andrews Avenue, Suite 900
Fort Lauderdale, FL. 33309
Tel: 954-776-2222
Fax: 954-493-9730

July 21, 1999

## COVERNOTE

*In accordance with your instructions the following insurance has been effected through our correspondent broker in London on your behalf:*

COVER NOTE:    MP995606

FORM:    MAR 91.

ASSURED:    Bill Stover and/or First South Development

VESSEL:    "BLUE PACIFIC" 1994 90' Fiberglass Twin Man Diesel Montefino Motor Yacht

PERIOD:    Twelve months at noon, 1st May 1999, Eastern Standard Time

LIMITS:    Protection & Indemnity

USD1,000,000. Any One Person/Any One Accident
Excess of
USD1,000,000. Any One Person/Any One Accident

SUM INSURED:    100% Limits

CONDITIONS:    As Underlying as far as applicable

PREMIUM:    USD500.

SECURITY:    This Insurance is placed with various Underwriting Members of Lloyd's, London. Each Member being liable only for their own share of this Insurance and not one for another. The total percentage undertaken by Lloyd's Underwriters subscribing to this Insurance is 100 per cent.

*Every proposer when seeking new insurance or renewing an existing policy must disclose any information which might influence the underwriters in deciding whether or not to accept the risk, what the terms should be, or what premiums to charge. Insurance contracts being subject to a duty of the utmost good faith, failure to do so may render the insurance voidable from inception and enable the underwriters to repudiate liability.*

*This cover note is our advice to you that a contract of insurance has been effected with the underwriters shown, using the information which you have provided or agreed. The insurance contract is subject to all terms and conditions of the policy to be issued and in the event of any inconsistency between the policy and this cover note, the policy shall prevail.*

*Please examine this cover note carefully to confirm that coverage has been arranged in accordance with your requirements and that the security shown is acceptable. If not, please advise us immediately.*

C. A. Hansen

Page 1 of 1



# *C. A. Hansen*

| Attached to and forming part of:<br>MH995605 | Company:<br>Cigna Insurance Company of Europe | Endt. No.:<br>1 |
|---|---|---|
| Insured:<br>First South Development and<br>Bill Stover | Effective Date:<br>06/11/99 | Expiration Date:<br>05/01/00 |

"BLUE PACIFIC"

Notwithstanding anything contained herein to the contrary it is hereby noted and agreed, effective 11th June, 1999, vessel named hereon is amended to read as follows: -

"CHRISTINE"

It is further noted and agreed, effective inception, number of crew is amended to read as follows:

Coverage to include two (2) permanent paid crew and three (3) part-time paid crew.
New annual Protection and Indemnity etc. premium: USD250 in full.
For Protection and Indemnity/Medical/Uninsured Boaters, plus USD250. in full per permanent paid crew member, plus USD125. in full per part-time paid crew member.

All other terms, clauses and conditions remain unaltered.

**ALL OTHER TERMS AND CONDITIONS
OF THE POLICY REMAIN UNCHANGED**

# C. A. Hansen

| Attached to and forming part of:<br>MH995605 | Company:<br>Cigna Insurance Company of Europe | Endt. No.:<br>2 |
|---|---|---|
| Insured:<br>First South Development and<br>Bill Stover | Effective Date:<br>07/01/99 | Expiration Date:<br>05/01/00 |

"CHRISTINE"

It is hereby noted and agreed, effective 1st July 1999, to include the following vessel hereon: -

"BASIL'S    1993 116' Fiberglass Mondomarine Motor Yacht
Twin 1200 H.P. Caterpillar Diesel Engines.

Hull Machinery & Equipment valued: USD3,500,000. including personal effects; including tenders & outboards/watercraft; including electronics.

Protection & Indemnity:    USD1,000,000. Any One Person/Any One Accident
Medical Payments:        USD100,000 Any One Person
                         USD500,000 Any One Accident
                         (Including Named Assured)
Uninsured Boaters:        USD2,000,000. Any One Accident.

Subject deductible USD35,000. as Clauses

All other terms and conditions as policy.

Premium: Pro rata premium USD19,124 (annual USD22875.)

Information:   Coverage to include three (3) permanent paid crew.

**ALL OTHER TERMS AND CONDITIONS**
**OF THE POLICY REMAIN UNCHANGED**                _____

$\mathcal{C}.\mathcal{A}.\mathcal{H}ansen$

| Attached to and forming part of:<br>MP995606 | Company:<br>Lloyds and other British Companies | Endt. No.:<br>3 |
|---|---|---|
| Insured:<br>First South Development &<br>Bill Stover | Effective Date:<br>07/01/99 | Expiration Date:<br>05/01/00 |

"CHRISTINE"

It is hereby noted and agreed, effective 1st July 1999, to include the following vessel hereon:-

"BASIL.'S     1993 116' Fiberglass Mondomarine Motor Yacht.
              Twin 1200 H.P. Caterpillar Diesel Engines.

LIMITS:       Protection & Indemnity:

              USD3,000,000. Any One Person/Any One Accident
              Excess of
              USD1,000,000. Any One Person/Any One Accident

All other terms and conditions as policy.

Premium:      Pro rata premium USD1,254. (annual USD1,500.)

All other terms and conditions remain unaltered.

**ALL OTHER TERMS AND CONDITIONS
OF THE POLICY REMAIN UNCHANGED**

# HANSEN YACHT FORM

## WARRANTIES AND GENERAL CONDITIONS
### (Applicable to all coverages unless otherwise indicated.)

**Privileges**

In port and at sea, under power or sail, in docks and graving docks, in hauling and launching, and on ways, gridirons, pontoons, and on shore, and while being transported. With leave to sail with or without pilots to tow and assist vessels or craft in all situations and to be towed.

**Private Pleasure Warranty**

Warranted to be used solely for private pleasure purposes and not to be hired or chartered unless approved and permission endorsed hereon.

**Continuation Clause**

If the vessel insured hereunder is at sea, at the expiration of this Policy, the risk may be continued until the arrival of the vessel at her port of destination on her being moored therein twenty-four (24) hours in good safety, provided notice be given to the Assurers and additional premium paid as required.

**Transfer of Interest**

This Insurance shall inure to the benefit only of the named assured and shall be void in case this Policy or the interest insured thereby shall be sold, assigned, transferred or pledged without the previous consent in writing of these Assurers.

**Personal Negligence**

Personal negligence or fault of the Owner or Assured in the navigation of the yacht or privity or knowledge in respect thereto (excepting loss, damage or liability willfully or intentionally caused by the Owner or Assured) shall not relieve the Assurers of liability under this Policy.

**Other Insurance**

If a named Assured has other insurance against a loss covered by any section of this Policy, the Assurers shall not be liable under this Policy for a greater proportion of such loss than the applicable amount stated bears to the total amount of all valid and collectable insurance against such loss. If an Assured other than a named Assured has other insurance against a loss covered by any section of this Policy, this insurance shall be excess over other such insurance.

**Notice of Loss and Filing of Proof**

It is agreed by the Assured to report immediately to the Assurers or their representative who shall have issued this policy every occurrence which may become a claim under this policy and afford to the Assurers, if they deem it desirable, an opportunity to appoint surveyors and/or investigators prior to any repairs being undertaken; Assureds shall also file with the Assurers and/or their representatives a detailed sworn Proof of Loss, proof of interest and in a case of partial loss, receipted bills as soon as practicable following the date of loss.

**Payment of Loss**

In case of loss payable under this policy, such loss to be paid by Assurers within 90 days after receipt by the Assurers and/or their representative who issued this policy, satisfactory proof of loss, proof of interest in the property insured and in the event of partial loss, receipted bills, all indebtedness of the Assured being first deducted.

**Subrogation**

Upon making payment under this policy the Assurers shall be vested with all of the assured's rights of recovery against any person, corporation, vessel or interest and the Assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

Any agreement, contract or act, past or future, expressed or implied, by the Assured whereby any right of recovery of the Assured against any vessel, person or corporation is released, decreased, transferred or lost which would, on payment of claim by the Assurer, belong to the Assurer but for such agreement, contract or act shall render this policy null and void as to the amount of any such claim, but only to the extent and to the amount that said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of the Assurer, but the Assurers' right to retain or recover the full premium shall not be affected.

**Time for Suit Against the Assurers**

No suit or action on this Policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Policy, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that were such limitation of time is prohibited by the laws of the state wherein this Policy is issued, then, and in that event, no suit or action under this Policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state.

**Action Against the Assurers**

Any person or organization or the legal representative thereof who has secured judgement against the Assured shall be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. Bankruptcy or insolvency of the Assured or of the Assured's estate shall not relieve the Assurers of any of their obligations hereunder.

**Legal Representation and Cooperation Clause**

The Assured shall cooperate with the Assurers and shall not assume any obligation, admit any liability or incur any expense for which the Assurers may be liable, without the written approval of the Assurers, except as may be necessary and permitted to safeguard the Yacht under the "SUE AND LABOR" clause in section "A" of this Policy. In case the liability of the Assured shall be contested with the written approval of the Assurers first obtained, the Assurers will pay the cost and expense of such defense, in which event the Assurers shall have the option of naming the attorneys who shall represent the Assured in said defense, and, if such option is exercised, shall have the direction and control thereof. The Assured shall, whenever required, attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits and limitations proceedings.

**Examination Under Oath**

The Assured, as often as may be reasonably required, shall exhibit to any person designated by the Assurers all that remains of any property herein described, and shall submit, and in so far as is within his or their power cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Assurers and subscribe the same; and as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Assurers or their representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Assurers or any of their employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Assurers might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Assurers' liability.

**Misrepresentation or Fraud**

This entire Policy shall be void if the Assured or their representative has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Assured therein, or in case of fraud or false swearing by the Assured touching any matter relating to this insurance of the subject thereof whether before or after a loss.

**Notice of Cancellation and Return Premium for Cancellation**

This Policy may be cancelled by the Assured by surrender thereof to the Assurers or their representative by mailing to the Assurers or their representative written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Assurers or their representative by mailing to the Assured at the address shown in this Policy or last known address, written notice stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the Policy period. Delivery of such written notice either by the assured or by the Assurers or their representative shall be equivalent to mailing.

If the Assured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Assurer cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is affected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Assurers' or their representative's check mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Assured.

**Premium Fully Earned**

There shall be no return of premium under any section of this Policy if the insured yacht is a total or constructive total loss by a peril insured against.

# PARAMOUNT EXCLUSIONS

Warranted free from any claim for loss, damage or expense caused by or resulting from capture, seizure, arrest, restraint or detainment or the consequences thereof or of any attempt thereat or any taking of the vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; also from all consequences of hostilities or warlike operations (whether there be a declaration or war or not) but the foregoing shall not exclude collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power, and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power; also warranted free, whether in time of peace or war, from all loss, damage or expense caused by any weapon or war employing atomic or nuclear fission and/or other fusion or other reaction or radioactive force or matter.

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom. If, however, war risks are hereafter insured by endorsement on the policy, such endorsement shall supersede the above exclusions only to the extent that their terms are inconsistent and only while such war risks endorsement remains in force.

> This Policy is made and accepted subject to the foregoing stipulations and conditions, and to the conditions on the following pages which are hereby specially referred to and made a part of this Policy, it being understood and agreed that in the case of any conflict or inconsistency the foregoing provision shall prevail over those which follow; provided, however, that with respect to any insurance under Section "E" of this Policy, the liability of the Assurers for the term above stated shall be in all respects as provided in such Section "E", unaffected by any other condition or provision of this Policy.

## SECTION "A" — HULL INSURANCE

**Property Covered**  
Upon the Hull, Spars, Sails, Fittings, Gear and Equipment, Apparel, Provisions, Stores, Machinery, Boats and other Furniture and Furnishings of and in the yacht hereby insured, subject to all of the terms and conditions (including the Running Down Clause) of this Policy. The foregoing does not include fishing tackle, moorings, firearms, jet skis, land vehicles, aircraft, windsurfers, or personal property.

## COVERAGE

The insurance provided by this Section covers, SUBJECT TO THE EXCLUSIONS AND LIMITATIONS OF THIS POLICY, against physical loss or damage to the property covered from any external cause, as well as physical loss or damage directly caused by fire, explosions, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull (excluding the cost and expense of repairing or replacing any defective part), provided such loss or damage has not resulted from want of due diligence or intentional act by the owners of the Yacht or by the Assured; provided always that the amount recoverable hereunder shall not exceed the amount of insurance.

**Deductible Clause**  
When a deductible amount is stated on this Policy, each claim for loss or damage covered under Section "A" shall be adjusted separately and from the aggregate amount of each separately adjusted claim, the sum so stated shall be deducted. Such deduction shall not apply in the event of Total Loss or Constructive Total Loss of the vessel covered nor shall it apply with respect to claims under the Running Down Clause.

**Equipment Separated and on Shore**  
It is also agreed that should any part of the furniture, boats or other property of the said yacht be separated and laid up on shore during the life of this Policy, then this Policy shall cover the same to an amount not exceeding 50% of the sum stated under the heading "Amount of Insurance". The amount attaching on the said yacht shall be decreased by the amount so covered.

**Valuation Clause**  
The said yacht, for so much as concerns the Assured by agreement between the Assured and the Assurers is and shall be valued at the amount stated under the heading "Agreed Valuation".

**Partial Loss**  
In the event of partial loss or damage, cost of repairs to be paid without deduction, new for old, except with respect to sails and covers of canvas or other like material; the Assurers shall be liable for no more than the cost of repair or a reasonable value, whichever is less.

**Constructive Total Loss**  
No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and repairing the vessel shall exceed the amount of insurance on hull and machinery.

**Unrepaired Damage**  
In no case shall the Assurers be liable for unrepaired damage in addition to a subsequent total loss sustained during the term covered by this Policy.

**Proportion of Loss Covered**  
Where the amount of insurance as set forth is less than the agreed valuation stated herein, the Assurers shall be liable only for such proportion of any loss recoverable under this Section as the said amount of insurance bears to the said agreed valuation.

**Strikes Clause**  
This insurance also covers loss of or damage to the property hereby insured caused by strikers, locked out workmen or persons taking part in labour disturbances, riots or civil commotions or caused by vandalism or persons acting maliciously.

**Tenders**  
The tenders of the yacht are insured subject to all of the terms and conditions, including the Running Down Clause, of this Policy.

**Running Down Clause**  
And it is further agreed that if the yacht hereby insured shall come into collision with any other ship or vessel, and the Assured shall, in consequence thereof, become liable to pay, and shall pay by way of damages to any other person or persons, any sum or sums not exceeding in respect of any one such collision the value of the yacht hereby insured, we, the Assurers, will pay the Assured such sum or sums so paid up to the amount hereby insured. And in cases where the liability of the Assured has been contested, with the consent, in writing, of the Assurers, we will also pay the costs thereby incurred or paid; but when both vessels are to blame, then unless the liability of the owners of one or both of such vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of CROSS LIABILITIES, as if the owners of each vessel had been compelled to pay to the owners of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such collision; and it is further agreed that the principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the managing owners of both vessels, and one to be appointed by the majority in amount of Underwriters interested in each vessel; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single, or of any two of such three Arbitrators, appointed as above, to be final and binding.

Provided always that the foregoing clause shall in no case extend to any sum which the Assured may become liable to pay, or shall pay for removal of obstructions under statutory powers, for injury to harbors, wharves, piers, stages, and similar structures, consequent on such collisions, or in respect of the cargo or engagements of the insured yacht, or for loss of life, or personal injury.

**Members of Assured's Family**  
It is understood and agreed that the word "Assured" shall include, in addition to the named Assured hereunder, irrespective of interest in the insured yacht, the members of the immediate family of the Assured, who may be operating the yacht with the prior permission of the Assured.

**Sue and Labor Clause**  
And in case of any loss or misfortune, it shall be lawful and necessary for the Assured, their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said yacht or any part thereof, without prejudice to this insurance; the charges whereof we, the Assurers, will pay. And it is especially declared and agreed that no acts of the Assurer or Assured in recovering, saving or preserving the property insured shall be considered as a waiver or estoppel of any provision of this policy or acceptance of abandonment.

JUL 26 1999 10:10

## EXCLUSIONS

**This Insurance does not cover:**

1. Any loss or damage directly or indirectly caused by or resulting from wear and tear, gradual deterioration, inherent vice, marine borers, vermin, electrolysis, or osmosis.

2. Theft or mysterious disappearance of equipment or accessories, other than tenders and their motors, unless occurring in conjunction with theft of the entire yacht or unless there be visible evidence of forcible entry.

3. Any loss, damage or expense directly or indirectly caused by or in consequence of ice and/or freezing.

4. Any loss, damage or expense directly or indirectly caused by or in consequence of faulty construction and/or improper design.

5. Any loss or damage to electrical apparatus including wiring, directly or indirectly caused by electricity, other than lightning, unless fire ensues and then only that loss or damage by such ensuing fire.

6. Wages and/or provisions.

7. Mechanical breakdown or derangement of machinery.

8. Any loss of use, demurrage or charter hire to the yacht insured hereunder.

9. Any losses or damages directly or indirectly caused by or in consequence of the wilful or intentional acts of the Assured or negligence of the Assured in maintaining the vessel, whether ashore or afloat.

## SECTION "B" — PROTECTION AND INDEMNITY INSURANCE

If the Assured shall by reason of his interest in the insured yacht become liable to pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages, and/or expense or shall become liable for any other loss arising from or occasioned by any of the following matters or things during the currency of this Policy in respect of the yacht hereby insured, that is to say:—

**Property Damage**   (I)   Loss of or damage to any other ship or boat or goods, merchandise, freight or other things or interest whatsoever, on board such other ship or boat, caused proximately or otherwise by the yacht insured in so far as the same would not be covered by the Running Down Clause in Section "A" of this Policy, except that if this Policy is subject to a Deductible Average the amount deductible from claims under the said Running Down Clause shall not be recoverable hereunder;

Loss of or damage to any goods, merchandise, freight or other things of interest whatsoever other than as aforesaid, whether on board said yacht or not, which may arise from any cause whatever;

Loss or damage to any harbor, dock (graving or otherwise), slipway, way, gridiron, pontoon, pier,quay, jetty, stage, buoy, telegraph cable, or other fixed or movable thing whatsoever, or to any goods or property in or on the same, however caused;

Any attempted or actual raising, removal or destruction of the wreck of the insured ship or the cargo thereof, or any neglect or failure to raise, remove or destroy the same;

The Assurers will pay the Assured such sum or sums so paid, or which may be required to indemnify the Assured for such loss; PROVIDED always that the amount recoverable hereunder in respect to any one accident or series of accidents arising out of the same event shall not exceed the sum stated under Limit of Protection and Indemnity Insurance.

**Bodily Injury**   (II)   Loss of life, illness, or bodily injury and payments made on account of life salvage:

The Assurers will pay the Assured such sums so paid or which may be required to indemnify the Assured for such loss; PROVIDED always that the liability of these Assurers is limited to the sum stated under Limit of Protection and Indemnity Insurance, and subject to the same limit for each person, it being understood that this limit applies to any one accident or series of accidents arising out of the same event.

**Costs**   (III)   And in case the liability of the Assured shall be contested in any suit or action with the consent in writing of these Assurers, we will also pay such ensuing costs as the Assured may incur as a result of such suit or action.

**Aggregate Limit**   The total amount recoverable under the Protection and Indemnity Insurance coverage of this Policy, for all losses, including property damage, personal injury, loss of life, payments made on account of life salvage, and costs, resulting from any accident or series of accidents arising out of the same event, shall not exceed, in the aggregate, the sum stated under Limit of Protection and Indemnity Insurance.

**Pollution**   This Policy does not insure against any loss, damage, cost, liability, or expense, imposed on the Assured, arising out of the discharge, dispersal, release, or escape of oil, fuel, chemicals, waste materials, or other pollutants, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

**Members of Assured's Family**   It is understood and agreed that the word "Assured" whenever used in this Section shall include, in addition to the named Assured hereunder, irrespective of interest in the insured yacht, the members of the immediate family of the Assured, domiciled with the Assured, who may, at the time liability was incurred, be operating the yacht with the prior permission of the Assured.

**Exclusions**   The Assurers will not be liable for:

1. Any fine, or penalty or assessment against the Assured or yacht named herein, by any national, state or local government;

2. Liability of any charterer of the yacht named herein;

3. Any liability assumed by the Assured under any contract or agreement unless specifically endorsed hereon.

4. Any liability while the vessel is being transported on land.

5. Any liability arising out of the ownership or use of any property not covered under Section A.

6. Any liability for bodily injury including but not limited to loss of life, illness or bodily injury, and payments made on account of life salvage of any Assured caused by or resulting from any action, negligence, malfeasance or misfeasance, whether intentional or unintentional, of a co-insured whether said co-insured is a spouse, parent, son or daughter, or an unrelated individual or company; or to any property damage or loss sustained by any Assured caused by or resulting from any action, negligence, malfeasance, misfeasance, whether intentional or unintentional, of a co-insured whether said co-insured is a spouse, parent, son or daughter, or an unrelated individual or company.

## SECTION "C" — OMNIBUS CLAUSE

It is understood and agreed that the word "Assured" whenever used in the Running Down Clause in Section "A" — Hull Insurance, of this Policy, and whenever used in Section "B" — Protection and Indemnity Insurance of this Policy, includes in addition to the named Assured any person, firm, corporation or other legal entity who may be operating the vessel with the prior permission of the named Assured, but does not include a charterer or a paid Master or a paid member of the crew of the insured vessel or a person, firm, corporation or other legal entity, or any agent or employee thereof, operating a shipyard, boat repair yard, marina, yacht club, sales agency, boat service station, or similar organization. Notwithstanding anything contained herein, the insurance provided by this clause does not cover liability of such additional Assureds to the Assured and/or Assureds named in this Policy. This insurance is conditioned upon compliance by an Assured with all the terms, conditions and warranties applicable to the named Assured. Nothing contained herein shall be construed to increase the limits of the Assurers' liability as stated in this Policy.

## SECTION "D" — MEDICAL PAYMENTS INSURANCE

The Assurers agree to pay to or for each person who sustains bodily injury caused by accident occurring during the Policy period, while in or upon, boarding or leaving the yacht insured hereunder, the reasonable expense of necessary medical, surgical, ambulance, hospital and professional nursing services and, in the event of death resulting from such injury, the reasonable funeral expense, all incurred within one (1) year from the date of accident, subject to the following conditions:

**Limit of Liability**

Notwithstanding the foregoing, the Assurers shall not be liable hereunder for any expense or combined expenses incurred in excess of that stated, as a result of any one accident or series of accidents arising out of the same event.

**Exclusions**

The coverage afforded shall not apply:

(1)    To bodily injury to or death of any person:

   (a)    To or for whom benefits are payable under any Workmen's Compensation or under the Federal Longshoremen's and Harbor Workers' Compensation Act;

   (b)    Who is a trespasser in or upon or boarding or leaving the insured yacht;

   (c)    Who is an employee of the Assured while engaged in the employment of the Assured except those in domestic service for whom no benefits are payable or required to be provided under any Workmen's Compensation Law;

(2)    To liability assumed by the Assured under any contract or agreement;

(3)    While the yacht is being used for other than private pleasure purposes;

(4)    To death of the Assured or registered owner of the yacht;

(5)    To bodily injury to the Assured or registered owner of the yacht, unless in excess of any other medical payments insurance collectible.

**Medical Reports; Proof and Payment of Claim**

As soon as practicable, the injured person or someone on his behalf shall give the Assurers written proof of claim, under oath if required, and shall, after each request from the Assurers, execute authorization to enable the Assurers to obtain medical reports and copies of records.

The injured person shall submit to physical examination by physicians selected by the Assurers when and as often as the Assurers may reasonably require.

The Assurers may pay the injured person or any persons or organizations rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute admission of liability of the Assured, or, except hereunder, of the Assurers.

## SECTION "E" — FEDERAL LONGSHOREMEN'S AND HARBOR WORKERS' COMPENSATION INSURANCE

The Assurers agree to insure under this Section for the term of the policy as stated, any liability of the Assured in respect of the insured yacht which shall arise under the United States Longshoremen's and Harbour Workers' Compensation Act, U. S. Code (1946) Title 33, Sections 901-49, and all laws amendatory thereof or supplementary thereto which may be or become effective while this Section of the Policy is in force.

## SECTION "F" — SERVICE OF SUIT

**SERVICE OF SUIT CLAUSE.** It is agreed that in the event of the failure of the Assurers to pay any amount claimed to be due hereunder, the Assurers, at the request of the Assured (or Reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon: Mendes & Mount, 3 Park Ave., New York, N.Y. 10016, that in any suit instituted against any one of them upon this contract, the Assurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The named are authorized and directed to accept service of process on behalf of the Assurers in any such suit and/or upon the request of the Assured (or Reinsured) to give a written undertaking to the Assured (or Reinsured) that they will enter a general appearance upon the Assurers' behalf in the event such a suit shall be instituted. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Assurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

This Clause shall be paramount and shall override anything contained in this insurance inconsistent herewith.
In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

(1).    ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

(2).    the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

(3).    any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

It is a provision of this Radioactive Contamination Exclusion Clause that:

If fire is an insured peril and where the subject matter insured is within the U.S.A., its islands, on shore territories or possessions and a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1 and 2 of this Radioactive Contamination Exclusion Clause: any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, excluding however any loss, damage, liability or expense caused by nuclear reaction, nuclear radiation contamination arising directly or indirectly from that fire.

## STRIKES CLAUSES (INCLUDING VANDALISM) - HULLS - TIME

Subject always to the Exclusion hereinafter referred to, this insurance also covers loss of or damage to the vessel caused by: -

(a)  Strikers, locked-out workmen or persons taking part in labour disturbances, riots or civil commotions;

(b)  Any terrorist or any person acting maliciously or from a political motive;

(c)  Vandalism.


## EXCLUSION

This insurance excludes any claim for expenses arising from delay except such expenses as would be recoverable in principle in English Law and Practice under the York-Antwerp Rules 1974.


893CW00111

(1/10/83)

## INSTITUTE ADDITIONAL PERILS CLAUSES - HULLS
### (For use only with the American Institute Hull Clauses)

| | |
|---|---|
| 1. | In consideration of an additional premium this insurance is extended to cover    1 |
| | 1.1    the cost of repairing or replacing    2 |
| | 1.1.1    any boiler which bursts or shaft which breaks    3 |
| | 1.1.2    any defective part which has caused loss or damage to the vessel covered    4 |

1.     In consideration of an additional premium this insurance is extended to cover     1
    1.1     the cost of repairing or replacing     2
    1.1.1     any boiler which bursts or shaft which breaks     3
    1.1.2     any defective part which has caused loss or damage to the vessel covered     4
        by the peril 'any latent defect in the machinery or hull' as it appears in     5
        lines 79/80 of the American Institute Hull Clauses (June 2, 1977)     6
    1.2     loss of or damage to the Vessel caused by any accident or by negligence,     7
        incompetence or error of judgement of any person whatsoever.     8

2.     Except as provided in 1.1.1 and 1.1.2, nothing in these Additional Perils Clauses shall allow     9
any claim for the cost of repairing or replacing any part found to be defective as a result of     10
a fault or error in design or construction and which has not caused loss of or damage to the     11
Vessel.

3.     The cover provided in Clause 1 is subject to all other terms, conditions and exclusions     12
contained in this insurance and subject to the proviso that the loss or damage has not resulted     13
from want of due diligence by the Assured, Owners or Managers, Master Officers Crew or     14
Pilots not to be considered Owners within the meaning of this Clause should they hold shares     15
in the Vessel.

---

CL.301

# UNINSURED BOATER WORDING

**Perils Insured Against:**   Underwriters will pay the damages which, because of bodily injury received aboard your Yacht, you are legally entitled to recover from the uninsured owner or operator of another yacht.

"Uninsured Boater" and "Uninsured Owner or Operator" mean an owner or operator of a yacht other than the yacht named in this policy who is legally responsible for the accident, and;
a) to whom no liability policy applies; or
b) who cannot be identified (such as a hit and run operator).

**Exclusions:**   Underwriters do not provide Uninsured Boater coverage:
a) for claims settled without our written consent;
b) [illegible] unit;
c) for yachts owned by or furnished for the regular use of you, a member of your immediate family, or any person insured by this policy;
d) for an insured using a yacht without permission; or
e) when the yacht named in this policy is being chartered.
f) where no evidence of physical contact exists between your yacht and an unidentified yacht or where no evidence of physical contact exists between your yacht and an uninsured yacht.

This coverage will not apply directly or indirectly to the benefit of any insurer under any state or federal compensation law or act.

Payment made for this coverage to or for an insured person will reduce the amount that person is entitled to recover from the Liability coverage of this policy

**Amount of Insurance:**   The amount shown for Uninsured Boater Coverage on Policy Schedule is the most Underwriters will pay under this Insurance, regardless of the number of insured persons, claims made, or yachts involved in any one accident or series of accidents arising out of the same event.

MISCUBW

American Institute

87B-108

Hull War Risks and Strikes Clauses
(Including Automatic Termination and Cancellation Provisions)
For Attachment to American Institute Hull Clauses
December 1, 1977

To be attached to and form a part of Policy No. ................................. of the.................     1

...............................................................................     2

This insurance, subject to the exclusions set forth herein, covers only those risks which would be covered by the     3
attached Policy (including collision liability) in the absence of the WAR, STRIKES AND RELATED EXCLUSIONS clause     4
contained therein but which are excluded thereby and which risks shall be construed as also including:     5
1. Any mine, bomb or torpedo not carried as cargo on board the Vessel;     6
2. Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force     7
    or matter;     8
3. Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom;     9
4. Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power;     10
5. Malicious acts or vandalism to the extent only that such risks are not covered by the attached Policy;     11
6. Hostilities or warlike operations (whether there be a declaration of war or not) but this paragraph (6) shall not     12
    include collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object, or strand-     13
    ing, heavy weather, fire or explosion unless caused directly by a hostile act by or against a belligerant power     14
    which act is independent of the nature of the voyage or service which the Vessel concerned or, in the case of     15
    a collision, any other vessel involved therein, is performing. As used herein, "power" includes any authority     16
    maintaining naval, military or air forces in association with a power.     17

## EXCLUSIONS

This insurance does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence     18
of:     19
a. Any hostile detonation of any weapon of war described above in paragraph (2);     20
b. Outbreak of war (whether there be a declaration of war or not) between any of the following countries: United     21
    States of America, United Kingdom, France, the Union of Soviet Socialist Republics or the People's Republic     22
    of China;     23
c. Delay or demurrage;     24
d. Requisition or preemption;     25
e. Arrest, restraint or detainment under customs or quarantine regulations and similar arrests, restraints or detain-     26
    ments not arising from actual or impending hostilities;     27
f. Capture, seizure, arrest, restraint, detainment, or confiscation by the Government of the United States or of the     28
    country in which the Vessel is owned or registered.     29

## HELD COVERED AND OTHER PROVISIONS

The held covered clause appearing under the heading ADVENTURE in the attached Policy is deleted and the follow-     30
ing clause substituted therefore:—     31
    "Subject to the provisions of the Automatic Termination and Cancellation Clauses below, held covered in the     32
    event of any breach of conditions as to loading or discharging of cargo at sea, or towage or salvage activities     33
    provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the     34
    Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are     35
    agreed to by the Assured."     36

If at the natural expiry time of this insurance the Vessel is at sea, this insurance will be extended, provided previous     37
notice be given to the Underwriters, for an additional premium at a rate to be named by the Underwriters, until midnight     38
Local Time of the day on which the Vessel enters the next port to which she proceeds and for 24 hours thereafter, but     39
in no event shall such extension affect or postpone the operation of the Automatic Termination and Cancellation Clauses     40
below.     41

Warranted not to abandon in case of capture, seizure or detention, until after condemnation of the property insured.     42
The provisions of the attached Policy with respect to constructive Total Loss shall apply only to claims arising from     43
physical damage to the Vessel.     44

## AUTOMATIC TERMINATION AND CANCELLATION CLAUSES

45   A.   This insurance and any extension thereof, unless sooner terminated by the provisions of section B or C, shall terminate
46         automatically upon and simultaneously with the occurrence of any hostile detonation of any nuclear weapon of war
47         as defined above, wheresoever or whensoever such detonation may occur and whether or not the Vessel may be
48         involved.

49   B.   This insurance and any extension thereof, unless sooner terminated by the provisions of section A or C, shall termi-
50         nate automatically upon and simultaneously with the outbreak of war, whether there be a declaration of war or not,
51         between any of the following countries: United States of America, United Kingdom, France, the Union of Soviet
52         Socialist Republics or the People's Republic of China.

53   C.   This insurance and any extension thereof, unless sooner terminated by section A or B, shall terminate automatically
54         if and when the Vessel is requisitioned, either for title or use.

55   D.   This insurance and any extension thereof may be cancelled at any time at the Assured's request, or by Underwriters
56         upon 14 days' written notice being given to the Assured, but in no event shall such cancellation affect or postpone
57         the operation of the provisions of sections A, B or C. Written or telegraphic notice sent to the Assured at his (its)
58         last known address shall constitute a complete notice of cancellation and such notice mailed or telegraphed to
59         the said Assured, care of the broker who negotiated this insurance, shall have the same effect as if sent to the
60         said Assured direct. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date
61         and hour of cancellation shall be 14 days from midnight Local Time of the day on which such notice was mailed or
62         telegraphed as aforesaid. Underwriters agree, however, to reinstate this insurance subject to agreement between
63         Underwriters and the Assured prior to the effective date and hour of such cancellation as to new rate of premium
64         and/or conditions and/or warranties.

### RETURNS OF PREMIUM

65         The RETURNS OF PREMIUM clause of the attached Policy is deleted and the following substituted therefore:—
66         "In the event of an automatic termination or cancellation of this insurance under the provisions of sections
67         A, B, C or D above, or if the Vessel be sold, pro rata net return of premium will be payable to the Assured,
68         provided always that a Total Loss of the Vessel has not occurred during the currency of this Policy. In no
69         other event shall there be any return of premium."

70   THIS INSURANCE SHALL NOT BECOME EFFECTIVE IF, PRIOR TO THE INTENDED TIME OF ITS ATTACHMENT, THERE
71   HAS OCCURRED ANY EVENT WHICH WOULD HAVE AUTOMATICALLY TERMINATED THIS INSURANCE UNDER THE
72   PROVISIONS OF SECTIONS A, B, OR C HEREOF HAD THIS INSURANCE ATTACHED PRIOR TO SUCH OCCURRENCE.

CL 237.   Sold by Witherby & Co. Ltd., London.

## DELIBERATE DAMAGE CLAUSE

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which the Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard or threat.  Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

893CW00041

R13

## "WAR ETC." PROTECTION & INDEMNITY CLAUSE
## INCLUDING CONFISCATION & EXPROPRIATION

This insurance is to cover in full (up to the amount of this policy in respect of any one occurrence but including costs as below in addition) such claims for Protection and Indemnity as per clauses or conditions of Protection and Indemnity Insurance and/or entry (with any Lloyd's Underwriters, Companies or Protection and Indemnity Associations) in connection with insured vessel, as are not and/or may not be recoverable under such insurance and/or entry by reason of any clause or clauses therein excluding capture, seizure, arrest, restraint or detainment confiscation, expropriation or the consequences thereof or any attempt thereat, hostilities, warlike operations or the consequences thereof whether there be a declaration of war or not, civil war, revolution, rebellion, insurrection or civil strife arising therefrom mines, torpedoes, bombs or other engines of war, piracy, strikes, lockout, political or labor disturbances, riots, civil commotions, military or usurped power or acts of persons acting maliciously, or any of them by reason of any conditions in such insurance and/or entry stating that the insured vessel shall be deemed to be entered in a "WAR RISKS ASSOCIATION".

Should the insurance and/or entry for Protection and Indemnity risks in connection with the insured vessel omit and/or exclude any of the protection granted by entry against all Protection and Indemnity risks with and/or under Hansen Yacht Form then for the purpose of this insurance such omitted and/or excluded protection shall be deemed to be included in such insurance and/or Club entry.

In the event of there being no insurance and/or Club entry against Protection and Indemnity risks it is agreed that for the purpose of this clause the vessel shall be deemed to be entered for all Protection and Indemnity risks with and/or under Hansen Yacht Form.

Underwriters hereunder agree to waive any right they might have to disclosure of the terms of the insurance and/or Club entry against Protection and Indemnity risks.

All claims under this policy shall be paid in full and without deduction or franchise even though such claims might impliedly be subject to limit deduction or franchise by reason of the terms of the insurance and/or Club entry against Protection and Indemnity risks.

Any costs incurred, with the consent of the majority (in amount) of the Underwriters hereunder, in determining the liability of the Assured to any third party or of any third-party (which expression shall include any other Underwriters) to the Assured or the Underwriters hereunder shall be payable by the latter without regard to any sum which may or may not be payable hereunder.

Underwriters liability under this clause shall be limited to the amount insured hereunder any one accident or occurrence (including costs in addition) independently of all other claims arising hereunder.
Nevertheless these risks are subject to the Automatic Termination and Cancellation Provisions contained in the American Institute Hull War Risks and Strikes Clauses - December 1, 1977 including Addendum dated April 1, 1984.

15 April 1999

## WAR RISK TRADING WARRANTIES

### For use with Insurances on Vessels engaged in "World-Wide" Trade.

1.  This coverage shall extend world-wide, but in the event of a vessel or craft insured hereunder sailing for, deviating towards, or being within the Territorial Waters of any of the Countries or places described in the Current Exclusions as set out below (including any port area that at the date of this notice constitutes part of such a country or place however it may hereafter be described) additional premium shall be paid at the discretion of insurers hereon.

    Information of such voyage or deviation shall be given to insurers as soon as practicable, and the absence of prior advice shall not affect the cover hereon. In the event of the assured not requiring continuation of coverage for a vessel proceeding into or remaining within an excluded area, he shall so advise insurers hereon before the commencement of such voyage, deviation or period, and it shall be at the insurers' discretion whether and on what terms the insurance shall be reinstated.

2.  Current Exclusions

    A) Persian or Arabian Gulf and adjacent waters including the Gulf of Oman North of 24° N
    B) Angola (including Cabinda)
    C) Israel
    D) Lebanon
    E) Libya (including Gulf of Sidre/Sirte)
    F) Eritrea
    G) Somalia
    H) Congo, Democratic Republic of (formerly Zaire)
    I) Liberia
    J) Sri Lanka
    K) Albania
    L) Sierra Leone
    M) Yugoslavia, Federal Republic of (Serbia & Montenegro)
    N) Bosnia - Herzegovina
    O) Croatian Ports South of 42° 53' 48" N and East of 017° 39' 36" E

## PERSONAL EFFECTS CLAUSE

It is hereby agreed that this Policy is extended, for the period stated hereunder, to cover the Personal Effects of the Assured and/or Assured's family and/or crew and/or passengers against all risks of whatsoever nature but excluding claims arising from:

1.   Damp, mould, mildew, moth, vermin, wear, tear and gradual deterioration.

2.   Breakages of articles of a brittle nature unless such is caused by burglars, thieves, fire, stress of weather, stranding, sinking or collision.

This cover only to operate whilst embarking/disembarking and on board, or used in connection with the insured vessel.

Total value to be insured USD N/A. (Maximum value).

USD N/A any single article.

## AVERAGE CLAUSE

This insurance is subject to the conditions of average that is to say, if the property covered shall at the time of any loss be of greater value than the sum insured hereby, the Assured shall only be entitled to recover hereunder such proportion of the said loss as the sum insured bears to the total value of the said property.

## NON CONTRIBUTION CLAUSE

This insurance does not cover any loss or damage which at the time of the happening of such loss or damage is insured by or would but for the existence of this Policy, be insured by any other existing policy or policies except in respect of any excess beyond the amount which would have been payable under such other policy or policies had this insurance not been effected.

Subject to a deductible of USD 100 each and every loss.

893CW00132

## INSTITUTE RADIOACTIVE CONTAMINATION EXLUSION CLAUSE

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1. In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

   1.1 ionising radiations from or contamination by radioactivity from any nuclear waste or from combustion of nuclear fuel.

   1.2 the radioactive, toxic explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

   1.3 any weapon or war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

CL 356
1st October 1990

## CANCELMENT NOTICE CLAUSE

Whereas (notwithstanding anything contained in this Policy to the contrary) credit has been given by CRAWLEY WARREN & COMPANY LIMITED (hereinafter called the Brokers) for premium due to them hereon it is hereby agreed between the Assured and the Brokers that in the event of the premium or any instalment thereof not having been received by the Brokers as soon as it has become due to them and/or in the event of the Assured not having paid the premium or any instalment thereof prior to the expiry of the five days hereinafter mentioned the Brokers are hereby authorised by the Assured on the expiry of the five days from dispatch to the Assured of a telegram demanding payment to cancel risk under this Policy from expiry of the aforesaid five days or from any later date at the sole discretion of the Brokers and on such cancellation the Underwriters shall not be responsible for accidents that can be proved to have happened after such cancellation and the Brokers may collect and retain any return premium hereon.  In such case Underwriters hereby agree to cancel and return to the Brokers any premium that may have been already received by the Underwriters in excess of pro-rata premium up to cancelling date or if the premium shall not then have been paid to the Underwriters they shall receive from the Brokers the balance of premium up to the said cancelling date.  This clause shall not prejudice or affect the Brokers lien on this policy for any amount remaining due to them whether in connection with this Policy or otherwise or any right of the Brokers against the Assured.

1/5/90

## INSTITUTE SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters severally subscribing this Insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to Jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

Subject to the Underwriters' rights set forth above:

(a)   It is further agreed that the Assured may serve process upon any senior partner in the firm of:

Mendes & Mount (Attorneys), 3 Park Avenue, New York, N. Y. 10016

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

(b)   The above named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

(c)   The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgagee under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgagee.

(d)   Further, pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the Officer is authorized to mail such process or a true copy thereof.

If this clause is attached to a contract of reinsurance the terms insurance and Assured shall mean reinsurance and Reassured respectively.

———————————————

CL.355

## MASTER/CREW ENDORSEMENT

The inclusion of the Master and/or Crew of the insured vessel as an additional assured under the Protection and Indemnity section of this policy, shall not affect their rights against any other named assured in this policy; nor will it affect any named assured's right of recovery under the terms of this insurance for any claim made by them or indemnification for any claim made against them.

893CW00088

## COMPUTER DATE RECOGNITION PROBLEMS ("MILLENIUM BUG")

We are writing to you to inform you of an issue that concerns all owners of pleasure craft and, indeed, larger vessels.   Much has been written about the "so-called" Millenium Bug, a convenient shorthand for describing a range of problems affecting computers, microchips and the GPS navigation system.   These problems can be summarised as follows:-

1.      Some computers and computer chips are programmed to identify dates using a two-digit designation - "97" for 1997, "98" for 1998, and so on.   At the end of 1999, therefore, the computer may not recognise "00" as 2000, but possibly 1900 or some other date.   The likely consequence of this is that the software or hardware freezes, crashes, or produces corrupted data.

2.      Some programming languages attach significance to a series of nines, often as a code or shorthand for other operations.   The unfortunate consequence of this is that 9 September 1999 ("9/9/99") may be interpreted by the computer as a command to stop functioning or carry out some other operation.

3.      The year 2000 is a leap year, whereas the year 1900 was not.   It is possible that 29 February 2000 may be disregarded by some software.

4.      There is a separate problem arising from the Global Positioning System ("GPS").  The system is designed to operate in periods of 1024 weeks until it resets.   This has been calculated to occur at midnight on 22 August 1999 UTC.   It is possible that, once the system has reset on that day, it may revert to the original date 1024 weeks earlier, 6 January 1980.   The consequences of this are almost impossible to predict.

The problem affects computers and software, as well as embedded chips in a wide variety of equipment, or subsidiary control and monitoring systems.   These often are found in objects that do not resemble traditional computers in the sense of desk tops or lap tops.   Typically, yachts and small pleasure craft contain one or any combination of types of equipment which may be reliant on computer software or embedded micro-processor chips.   Such equipment includes:

1.      GPS and other navigational systems
2.      Telecommunications
3.      Radar
4.      Echo-sounding, depth and distance-measuring equipment
5.      Alarms systems (fire, smoke, engine temperature, etc.)
6.      Helm control systems (speedometers, tachometers, etc.)
7.      Data-recording systems
8.      Automatic pilot systems
9.      Security systems.
10.    Engine management and control systems

This list is not intended to be exhaustive.

If you are in any doubt as to any of the systems employed on your vessel, we would advise you to contact the manufacturer and/or suppliers of any such equipment.

Obviously, any insured who fails to recognise and address problems associated with the so-called Millenium Bug places himself, his vessel and the public in harm's way. We strongly recommend that, in compliance with your obligations under your insurance policy, you take all necessary steps to ensure that your vessel, its systems and equipment will not be affected by any date recognition problem whatsoever. For the avoidance of doubt, any costs or expenses incurred in connection with these efforts are for your account. Underwriters will not respond to them.

# PROOF OF LOSS

$3,500,000.00
Amount of policy at time loss

MH995605
Policy No.

To:     CIGNA Insurance Company of Europe
        c/o ACE USA
        Tampa, Florida

1.  My name is William T. Stover, and I am the Sole Director of First South Development and
    Investment, Ltd., ("First South"), the record owner of the M/Y BASIL's ("Vessel").

2.  At the time of loss described herein, by the above indicated policy of insurance, you insured First
    South against loss by fire and other perils which might befall the M/Y BASIL's, Official Number
    (Cayman) 732394, according to the terms and conditions of the policy and all forms, endorsements,
    transfers, and assignments attached to it.

3.  On July 1, 1999, First South entered into a contract of insurance (the "Policy") for the Vessel through
    C.A. Hansen.  The Policy provides for hull and machinery coverage in addition to protection and  -
    indemnity insurance on the Vessel.  The term of the Policy runs from July 1, 1999 through May 1,
    2000.

4.  On Sunday, July 25, 1999, at approximately 1:30 in the afternoon as the Vessel was en route from
    Chubb Key to Ft. Lauderdale, Florida, a fire broke out on the Vessel.  It is believed that the fire
    originated in the engine room of the Vessel although the cause of the fire is unknown and is currently
    the subject of investigation.  Despite the efforts of the captain and crew to extinguish the fire, it
    burned intensely, resulting in the captain and crew abandoning the Vessel in fear of danger to life and
    limb.  The Vessel burned to the water line and eventually sank.

5.  There were no known personal injuries as a result of the fire.

6.  Immediately following the loss, First South notified C.A. Hansen.  First South has cooperated with the
    insurer to preserve and protect the integrity of the Vessel for purposes of investigating the cause and
    origin of the fire, as well as to salvage and protect both the Vessel and the surrounding environment.

7.  Upon commencement of the voyage during which the fire occurred, and at all relevant times, the
    Vessel was in all respects seaworthy, properly manned, equipped and supplied.

8.  At the time of the loss, First South owned 100% of the Vessel.  No other person or persons had any
    interest therein or encumbrance thereon, except for Branch Banking & Trust which is the mortgagee
    under a first preferred ship mortgage on the Vessel.

9.  Since the policy was issued, there has been no assignment, change of interest, use, occupancy,
    possession or exposure of the Vessel.

10. The total amount of insurance on the Vessel at the time of the loss was Three Million Five Hundred
    Thousand Dollars ($3,500,000), besides which there was no other policy or other contract of insurance,
    written or oral, valid or invalid.

11. As a result of the fire, the Vessel was rendered a total loss.  The amount claimed under the above
    numbered policy is Three Million Five Hundred Thousand Dollars ($3,500,000).

12. The loss did not originate by any act, design or procurement on the part of your insured, or this affiant.
    Nothing has been done by or with the privity or consent of your insured or this affiant to violate the
    conditions of the policy, or to render it void.

13. Any other information that may be required will be furnished and considered a part of this proof.

Dated this _18th_ day of August, 1999.

FIRST SOUTH DEVELOPMENT AND
INVESTMENT LTD.

By _[signature]_
William T. Stover

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

    The foregoing Proof of Loss was acknowledged before me this 6th day of August, 1999, by

William T. Stover, the sole  Director of First South Development and Investment Ltd., a Cayman Island

Company.  He is personally known to me or has produced _____ as identification and who

did/did not take an oath.

_[signature]_
Notary Public, State of Florida
My Commission Expires:

Julie L. Dunham
MY COMMISSION # CC648024 EXPIRES
May 23, 2001
BONDED THRU TROY FAIN INSURANCE, INC.

MIA1 #858275 v1

JUL 29 1999 17:30 FR HOLLAND KNIGHT          TO 7760437464#1113 P.02/02

| ACORD. | PROPERTY LOSS NOTICE | | OP ID | DATE (MM/DD/YY) 07/26/99 |
|---|---|---|---|---|

| PRODUCER | PHONE (A/C, No, Ext) 954-776-2222 | MISCELLANEOUS INFO (E&x & Tropion code) | DATE OF LOSS AND TIME 07/25/99 | AM | PREVIOUSLY REPORTED |
|---|---|---|---|---|---|
| C. A. Hansen Marine Insurance | | | | PM | YES | NO |

C. A. Hansen Marine Insurance
A Division of Brown & Brown
P.O. Box 5727
Fort Lauderdale FL 33310-5727
James Scott Sharrod

| | TYPE | COMPANY AND POLICY NUMBER | NAIC CODE | POLICY DATES |
|---|---|---|---|---|
| | PROP HOME | CO: 98 Crawley Warren CIGNA | | EFF: 05/01/99 |
| | | POL: MH999605 | | EXP: 05/01/00 |
| | FLOOD | CO: | | EFF: |
| | | POL: | | EXP: |
| | WIND | CO: | | EFF: |
| | | POL: | | EXP: |

| CODE: | SUB CODE: |
|---|---|

AGENCY CUSTOMER ID
FIRS-22

| INSURED | | CONTACT | CONTACT INSURED | |
|---|---|---|---|---|
| NAME AND ADDRESS | SOC SEC #: | NAME AND ADDRESS | | WHERE TO CONTACT |

INSURED NAME AND ADDRESS:
First South Development
William T. Stover
P.O. Box 14280
Greensboro NC 27415

CONTACT NAME AND ADDRESS:
BARBARA LOCKE
305 789-7760
CAPT. BLAKE 954 523-9172 OR
CELL# 629-7940

| RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) |
|---|---|---|---|

## LOSS

| LOCATION OF LOSS | 18MILES NE BIMINI ON BAHAMA BANK. | POLICE OR FIRE DEPT TO WHICH REPORTED |
|---|---|---|

| KIND OF LOSS | X FIRE | LIGHTNING | FLOOD | OTHER (explain) | PROBABLE AMOUNT ENTIRE LOSS |
|---|---|---|---|---|---|
| | THEFT | HAIL | WIND | | 3,500,000 |

DESCRIPTION OF LOSS & DAMAGE (Use separate sheet, if necessary)
FUEL IN ENGINE ROOM STARTED FIRE. BOAT ENGULFED IN FLAMES.
CAPT. AND 1 CREWMAN JUMPED OFF AND WERE RESCUED NO INJURIES
AWAIT INFO ON EXACT LOCATION OF VESSEL FROM COAST GUARD.

## POLICY INFORMATION

MORTGAGEE
X NO MORTGAGEE

HOMEOWNER POLICIES SECTION 1 ONLY (Complete for coverages A, B, C, D & additional coverages. For Homeowners Section II Liability Losses, use ACORD 3.)

| A. DWELLING | B. OTHER STRUCTURES | C. PERSONAL PROPERTY | D. LOSS OF USE | DEDUCTIBLES | DESCRIBE ADDITIONAL COVERAGES PROVIDED |
|---|---|---|---|---|---|
| | | | | | ON |

COVERAGE A EXCLUDES WIND
SUBJECT TO FORMS (insert form numbers and edition dates, special descriptions)

FIRE, ALLIED LINES & MULTI-PERIL POLICIES (Complete only those items involved in loss)

| ITEM | SUBJECT OF INSURANCE | AMOUNT | % COINS | DEDUCTIBLE | COVERAGE AND/OR DESCRIPTION OF PROPERTY INSURED |
|---|---|---|---|---|---|
| | BLDG   CNTS | 3,500,000 | | 35,000 | |
| X | HULL | | | | |
| | BLDG   CNTS | | | | |
| | BLDG   CNTS | | | | |

SUBJECT TO FORMS (insert form numbers and edition dates, special descriptions)

| FLOOD POLICY | BUILDING: | | DEDUCTIBLE: | | ZONE | PRE FIRM POST FIRM | DIFF IN ELEV | FORM TYPE | GENERAL DWELLING | CONDO |
|---|---|---|---|---|---|---|---|---|---|---|
| | CONTENTS: | | DEDUCTIBLE: | | | | | | | |
| WIND POLICY | BUILDING | DEDUCTIBLE | CONTENTS | | ZONE | FORM TYPE | GENERAL DWELLING | CONDO | | |

REMARKS/OTHER INSURANCE (List companies, policy numbers, coverages & policy amounts)
WILL ADVISE IF BOAT WAS SALVAGED WHEN WE ARE ABLE TO CONTACT BARBARA LOCKE
WHO HAS BEEN WORKING WITH THE COAST GUARD.

| CAT # S. | FICO # | ADJUSTER ASSIGNED | | ADJUSTER # | DATE ASSIGNED |
|---|---|---|---|---|---|

| REPORTED BY CAPT. KELLY BLAKE | REPORTED TO ARLENE WHICHER | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER James Scott Sharrod |
|---|---|---|---|

ACORD 1 (1/97)        NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE        © ACORD CORPORATION 1968

JUL 29 1999 09:42                                    ** TOTAL PAGE.02 **

# *C. A. Hansen*



A Division of Brown & Brown, Inc.
5900 N. Andrews Avenue, Suite 900
Fort Lauderdale, FL. 33309
Tel: 954-776-2222
Fax: 954-493-9730

July 21, 1999

## COVERNOTE

*In accordance with your instructions the following insurance has been effected through our correspondent broker in London on your behalf:*

COVER NOTE:   MP995606

FORM:   MAR 91.

ASSURED:   Bill Stover and/or First South Development

VESSEL:   "BLUE PACIFIC" 1994 90' Fiberglass Twin Man Diesel Montefino Motor Yacht

PERIOD:   Twelve months at noon, 1st May 1999, Eastern Standard Time

LIMITS:   Protection & Indemnity:

     USD1,000,000. Any One Person/Any One Accident
     Excess of
     USD1,000,000. Any One Person/Any One Accident

SUM INSURED:   100% Limits

CONDITIONS:   As Underlying as far as applicable

PREMIUM:   USD500.

SECURITY:   This Insurance is placed with various Underwriting Members of Lloyd's, London. Each Member being liable only for their own share of this Insurance and not one for another. The total percentage undertaken by Lloyd's Underwriters subscribing to this Insurance is 100 per cent.

*Every proposer when seeking new insurance or renewing an existing policy must disclose any information which might influence the underwriters in deciding whether or not to accept the risk, what the terms should be, or what premiums to charge. Insurance contracts being subject to a duty of the utmost good faith, failure to do so may render the insurance voidable from inception and enable the underwriters to repudiate liability.*

*This cover note is our advice to you that a contract of insurance has been effected with the underwriters shown, using the information which you have provided or agreed. The insurance contract is subject to all terms and conditions of the policy to be issued and in the event of any inconsistency between the policy and this cover note, the policy shall prevail.*

*Please examine this cover note carefully to confirm that coverage has been arranged in accordance with your requirements and that the security shown is acceptable. If not, please advise us immediately.*

*C. A. Hansen*

Page 1 of 1

## SECTION "D" — MEDICAL PAYMENTS INSURANCE

The Assurers agree to pay to or for each person who sustains bodily injury caused by accident occurring during the Policy period, while in or upon, boarding or leaving the yacht insured hereunder, the reasonable expense of necessary medical, surgical, ambulance, hospital and professional nursing services and, in the event of death resulting from such injury, the reasonable funeral expense, all incurred within one (1) year from the date of accident, subject to the following conditions:

**Limit of Liability** Notwithstanding the foregoing, the Assurers shall not be liable hereunder for any expense or combined expenses incurred in excess of that stated, as a result of any one accident or series of accidents arising out of the same event.

**Exclusions** The coverage afforded shall not apply:

(1) To bodily injury to or death of any person:

(a) To or for whom benefits are payable under any Workmen's Compensation or under the Federal Longshoremen's and Harbor Workers' Compensation Act;

(b) Who is a trespasser in or upon or boarding or leaving the insured yacht;

(c) Who is an employee of the Assured while engaged in the employment of the Assured except those in domestic service for whom no benefits are payable or required to be provided under any Workmen's Compensation Law.

(2) To liability assumed by the Assured under any contract or agreement;

(3) While the yacht is being used for other than private pleasure purposes;

(4) To death of the Assured or registered owner of the yacht;

(5) To bodily injury to the Assured or registered owner of the yacht, unless in excess of any other medical payments insurance collectible.

**Medical Reports; Proof and Payment of Claim** As soon as practicable, the injured person or someone on his behalf shall give the Assurers written proof of claim, under oath if required, and shall, after each request from the Assurers, execute authorization to enable the Assurers to obtain medical reports and copies of records.

The injured person shall submit to physical examination by physicians selected by the Assurers when and as often as the Assurers may reasonably require.

The Assurers may pay the injured person or any persons or organizations rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute admission of liability of the Assured, or, except hereunder, of the Assurers.

## SECTION "E" — FEDERAL LONGSHOREMEN'S AND HARBOR WORKERS' COMPENSATION INSURANCE

The Assurers agree to insure under this Section for the term of the policy as stated, any liability of the Assured in respect of the insured yacht which shall arise under the United States Longshoremen's and Harbour Workers' Compensation Act, U. S. Code (1946) Title 33, Sections 901-49, and all laws amendatory thereof or supplementary thereto which may be or become effective while this Section of the Policy is in force.

## SECTION "F" — SERVICE OF SUIT

SERVICE OF SUIT CLAUSE. It is agreed that in the event of the failure of the Assurers to pay any amount claimed to be due hereunder, the Assurers, at the request of the Assured (or Reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon: Mendes & Mount, 3 Park Ave., New York, N.Y. 10016, that in any suit instituted against any one of them upon this contract, the Assurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The named are authorized and directed to accept service of process on behalf of the Assurers in any such suit and/or upon the request of the Assured (or Reinsured) to give a written undertaking to the Assured (or Reinsured) that they will enter a general appearance upon the Assurers' behalf in the event such a suit shall be instituted. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Assurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

This Clause shall be paramount and shall override anything contained in this insurance inconsistent herewith.
In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

(1) ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

(2). the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

(3). any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

It is a provision of this Radioactive Contamination Exclusion Clause that:

If fire is an insured peril and where the subject matter insured is within the U.S.A., its islands, on shore territories or possessions and a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1 and 2 of this Radioactive Contamination Exclusion Clause; any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, excluding however any loss, damage, liability or expense caused by nuclear reaction, nuclear radiation contamination arising directly or indirectly from that fire.