UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
AT LAW AND IN ADMIRALTY

ACE INSURANCE COMPANY S.A.-N.V.
(FORMERLY KNOWN AS CIGNA INSURANCE
COMPANY OF EUROPE S.A.-N.V.),

CASE NO. 00-6097
JUDGE DIMITROULEAS
FLORIDA BAR NO. 218421

Plaintiff,

v.

FIRST SOUTH DEVELOPMENT AND
INVESTMENT LTD., and
WILLIAM STOVER,

Defendants.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS**


Of Counsel:

PALMER BIEZUP & HENDERSON LLP
Michael B. McCauley
H. Coleman Switkay
956 Public Ledger Building
620 Chestnut Street
Philadelphia, PA 19106
Tel: (215) 625-9900
Fax: (215) 625-0185


DATED:   April 3, 2000

FERTIG & GRAMLING
Christopher R. Fertig
Florida Bar No. 218421
200 S.E. 13th Street
Fort Lauderdale, FL 33316
Tel: (954) 763-5020
Fax: (954) 763-5412

Attorneys for Plaintiff
ACE Insurance Company S.A.-N.V.
(formerly known as CIGNA Insurance
Company of Europe S.A.-N.V.)



# I.
# PRELIMINARY STATEMENT

This dispute involves a policy of marine insurance. It is a case governed by federal maritime law.

Plaintiff ACE Insurance Company S.A.-N.V., formerly known as CIGNA Insurance Company of Europe S.A.-N.V. ("ACE"), seeks to rescind the marine insurance contract which it issued to First South Development and Investment, Ltd. ("First South") and William Stover ("Stover"), and requests this Court to declare the contract null and void. ACE is requesting such relief because defendants breached their duty of "utmost good faith" under the federal maritime doctrine of "uberrimae fidei" as a result of material misrepresentations and non-disclosures when obtaining the policy, and also because defendants breached the implied warranty of seaworthiness that exists in a policy of marine insurance as a matter of admiralty law. In its Complaint for Rescission and for Declaratory Judgment, ACE has invoked this Court's admiralty jurisdiction in order to address and resolve the issues of federal maritime law controlling the parties' dispute.

Because this case turns on federal law issues, it is plainly not one that is more appropriate for a state court rather than a federal court to decide. Indeed, defendants have provided no valid reason for this Court to conclude that it should not proceed with this case. Neither the "Service of Suit" Clause mistakenly relied upon by defendants as a mandatory forum selection clause, nor the Florida statutory provision defendants have cited in an effort to convince this Court that it should not hear this case, has any application to these proceedings. Moreover, none of the numerous cases listed by defendants in an attempt to support their request that this Court should abstain in deference to the Florida state court action they instituted has any application. This is because federal maritime law -- not state law -- controls the proper resolution of this dispute.

Nor is this case one in which the Florida state court system has any special interest. The vessel insured under the marine insurance contract at issue is a foreign-flagged yacht that is registered in a foreign country. The owner of the vessel is a foreign corporation. The loss occurred in foreign waters. The policy was placed in a foreign country and issued by a foreign insurer.

In these circumstances, given the predominant role of federal maritime law in the proper resolution of these proceedings, this Court should properly exercise its admiralty jurisdiction to decide the parties' dispute. Defendants' Motion to Dismiss or, in the Alternative, for a Stay of Proceedings should be denied.

## II.
## STATEMENT OF FACTS

### A.    Background Information

Pursuant to an endorsement, the marine insurance policy issued to defendants by ACE, a London-based insurer, insured the M/Y BASIL'S, a foreign-flagged vessel, from July 1, 1999 through May 1, 2000. The policy was placed in London on behalf of defendants through their agents, C. A. Hansen and Crawley Warren & Company, Ltd. (a London-based broker). The M/Y BASIL'S flew the British flag, with a hailing port of Georgetown, Grand Cayman. The vessel was registered according to the laws of the Cayman Islands, a British Crown Colony. The vessel was not registered in Florida. First South, which has been the owner of M/Y BASIL'S at all times material hereto, is a corporation formed under the laws of the Cayman Islands with its principal place of business in the Cayman Islands. First South does not conduct business in Florida, is not registered to do business in Florida, and has no offices in Florida. The loss at issue, which was caused when the M/Y BASIL'S caught fire, occurred on July 25, 1999 during a voyage from Chub Cay, Bahamas,

and resulted in a sinking in Bahamian waters.[1]

B.    **Procedural History**

On January 20, 2000, ACE filed its Complaint with this Court, on the basis that defendants had breached the duty of "uberrimae fidei" and the implied warranty of seaworthiness.

Thereafter, on January 25, 2000, after becoming aware of ACE's Complaint, defendants served ACE with an Amended and Supplemental Complaint, which they subsequently filed with the Florida state circuit court for Broward County. In addition, on January 25, defendants also served ACE with the "Complaint" they had previously filed in the state court on October 11, 1999, and also with the Summons for the "Complaint."[2] Defendants had previously chosen to withhold the October 11, 1999 "Complaint" and Summons from service.[3]

───────────────────────

[1]Defendant Stover now purports to be a Florida resident. However, in the application for insurance on the M/Y BASIL'S, dated July 1, 1999, he provided a North Carolina address.

[2]In accordance with the policy's "service of suit" provisions, defendants effected service of process by delivering their legal papers to Mendes & Mount, a law firm in New York.

[3]A review of defendants' "Complaint" reveals it is a sham filing that, on its face, does not state a justiciable controversy or any legally cognizable cause of action against ACE. Defendants purported to sue ACE because ACE -- in response to a Notice of Loss defendants submitted on July 26, 1999 and a "Proof of Loss" defendants submitted on August 6, 1999 in respect of the fire and sinking of the M/Y BASIL'S (a vessel on which defendants had placed $3.5 million of insurance) -- advised defendants on August 17, 1999 that it was investigating the loss and therefore could not accept that defendants had satisfactorily proved the loss. In their "Complaint," defendants claim that such advice was a "breach of the terms of the policy" and further assert that they "anticipate that [ACE] will further breach the policy by refusing to pay the agreed value of the vessel under the policy on or before November 4, 1999." Defendants effectively admit in their Complaint, however, that there was no obligation on the part of ACE to pay before November 4, 1999, 24 days after the Complaint was filed on October 11. As a result, defendants' October 11, 1999 "Complaint" was evidently simply designed by defendants to enable them to attempt to secure a premature docketing in state court. Similarly, the pleading which defendants have designated as an "Amended and Supplemental Complaint" is also legally invalid pursuant to Florida state court procedural rules. Because of these deficiencies, ACE has filed a motion in state court to strike defendants' pleadings and has requested a stay of the state court action in light of the proceedings in this Court. ACE's motion is presently pending in state court.

Defendants' Motion to Dismiss or, in the Alternative, for a Stay of Proceedings seeks to make their state court action the exclusive forum for resolving the parties' dispute.

**III.**
**ARGUMENT**

**A.      The Policy's "Service of Suit" Clause Does Not Bar These Proceedings Since The Applicable Provisions Of The Clause Specifically Preserve ACE's Right To Institute An Action In This Court And Since, In Any Event, Such Provisions Do Not Constitute A Mandatory Forum Selection Clause.**

Defendants initially cite to the "Service of Suit" Clause found in the standard form of yacht policy used by their brokers C.A. Hansen and Crawley Warren (the "Hansen Yacht Form")[4] and argue that pursuant to these form provisions ACE contractually agreed that defendants' Florida state court action is the exclusive jurisdiction in which this dispute is to be litigated. Defendants have attempted to convert language that merely evidences the insurer's consent to in personam jurisdiction in a court selected by the policyholder into a mandatory forum selection clause which precludes this Court from exercising its admiralty jurisdiction over this matter.

Defendants' argument fails both because the form "Service of Suit" Clause they have cited is not the applicable "Service of Suit" Clause the parties actually agreed upon when entering into the policy, and because even the "Service of Suit" Clause mistakenly relied upon by defendants may not be enforced as a mandatory forum selection clause since it lacks the requisite language specifying exclusivity of jurisdiction.

_____

[4]In this regard, defendants have pointed to Section "F" of the Hansen Yacht Form, which provides that:

> SERVICE OF SUIT CLAUSE. It is agreed that in the event of the failure of the Assurers to pay any amount claimed to be due hereunder, the Assurers, at the request of the Assured ..., will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

4

The "Service of Suit" Clause that applies here is specifically designated in the policy's Covernote (MH995605) detailing the terms, conditions and exclusions of the policy. In this regard, the Covernote specifies which sections of the Hansen Yacht Form are incorporated into the policy. In contrast to the Covernote's specific references to various other sections of the Hansen Yacht Form that are a part of the policy, in a modified format or otherwise, no reference whatsoever is made to Section "F" of the Hansen Yacht Form, which contains the "Service of Suit" provisions cited by defendants. The reason for this is simple: Section "F" of the Hansen Yacht Form is not a part of the policy since the Covernote instead specifies the use of the Institute "Service of Suit" Clause (USA) CL.355. The Institute "Service of Suit" Clause (USA) CL 355 provides:

> It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.
>
> Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

(Emphasis added).[5]

In their Brief, defendants have tried to mislead this Court into believing that this "Service of Suit" Clause relates only to preserving ACE's right to remove cases from state court. (Mem. at p.6 n.1). However, the Clause plainly does more than just that. The language in the Institute "Service of Suit" Clause also expressly preserves the right of ACE to do exactly what it has done here:

---

[5] A copy of Covernote MH995605 and the designated Institute "Service of Suit" Clause (USA) CL 355 (previously provided to this Court as an attachment to ACE's Complaint) is also attached hereto for ease of reference as Exhibit "A."

commence an action in a federal district court to enforce its rights in respect of the policy. Thus, far from eliminating ACE's right to maintain a federal action -- as defendants wrongly contend -- the policy's "Service of Suit" Clause actually confirms ACE's entitlement to institute federal proceedings. Because the "Service of Suit" Clause relied upon by defendants is inapplicable, the legal authority cited by defendants in their Brief on this point (Mem. at pp. 5,6) is inapposite.

Moreover, defendants' authority is of no moment in any event. First, defendants have cited only cases in which the effect of the "Service of Suit" Clause upon removal was at issue[6] or central to the court's reasoning.[7] Such circumstances are not in question here since this is not a removed case but instead one in which ACE invoked this Court's original jurisdiction over admiralty matters pursuant to 28 U.S.C. § 1333 (1). Not surprisingly, defendants have attempted to ignore the case law which makes clear that the "Service of Suit" Clause has no application in circumstances involving the commencement of proceedings by an insurer. See, e.g., International Ins. Co. v. McDermott, 956 F.2d. 93 (5th Cir.), cert. denied, 113 S. Ct. 826 (1992) ("Service of Suit" Clause does not foreclose an insurer from instituting declaratory judgment proceedings simply because the insured chooses to bring suit in a state court forum); Columbia Cas. Co. v. Bristol-Myers Squibb Co., 635 N.Y. S.2d 173, 176 (A.D. 1 Dept. 1995) (same -- even when insurer's declaratory suit is commenced after insured's action); Cannelton Indus. Inc. v. Aetna Cas. & Sur. Co., 194 W.Va. 186, 200-202, 460 S.E. 2d 1, 15-17 (W.Va. 1994) ("Service of Suit" Clause is not a mandatory forum selection clause binding an insurer to the policyholder's selected state court forum and prohibiting

---

[6] E.g., Foster v. Chesapeake Ins. Co. Ltd., 933 F.2d 1207 (3d Cir. 1991); City of Rose City v. Nutmeg Ins. Co., 931 F.2d 13 (5th Cir. 1991); Archdiocese of Milwaukee v. Underwriters at Lloyds, 955 F.Supp. 1066 (E.D. Wis. 1997).

[7] Aegeon Ins. Co. Ltd. v. Willamina Lumber Co., 844 F. Supp. 332 (S.D. Tex. 1994).

the insurers' declaratory suit).

Second, the "Service of Suit" Clause which defendants have mistakenly asserted is a part of the policy is simply not a mandatory forum selection clause. Case law in this Circuit is quite clear that a clause specifying only jurisdiction -- as is so in respect of the "Service of Suit" Clause relied upon by defendants -- will not be enforced as a mandatory forum selection clause in the absence of further specific language in the clause clearly and unambiguously expressing the parties' intent to make the jurisdiction in a particular forum exclusive. See, e.g., Florida Polk County v. Prison Health Services, 170 F.3d 1081, 1083 n. 8 (11th Cir. 1999) (providing that in order to constitute a mandatory forum selection clause, the clause must unambiguously designate the specific forum in which the parties are required to enforce their contractual rights); Citro Florida, Inc. v. Citrovale, S.A., 760 F.2d 1231, 1231-32 (11th Cir. 1985) (requiring that a mandatory forum selection clause must clearly specify that a particular forum is the only place of jurisdiction); Creative Tile Marketing v. SICIS Intern., 922 F. Supp. 1534, 1538 (S.D. Fla. 1996) (holding that a forum selection clause is "mandatory" only if it specifies that a specific forum shall have "exclusive jurisdiction" over a dispute; in the absence of such language, a forum selection clause will be viewed as a "permissive" provision serving only to permit, but not require, jurisdiction in a given forum).

Defendants have also omitted from their Brief any mention of the abundant case authority holding that the very type of "Service of Suit" Clause cited by defendants is not a mandatory forum selection clause, but instead simply documents a foreign insurer's amenability to personal jurisdiction. See, e.g., In Re Delta America Re Ins. Co. 900 F.2d 890, 893, 894 (6th Cir.), cert. denied, 498 U.S. 890 (1990) ("Service of Suit" Clause not a forum selection clause but rather a clause designed to confer in personam jurisdiction). See also Brooke Group Ltd. v. JCH Syndicate

7

488, 87 N.Y. 2d 530, 534 (N.Y. 1996) ("Service of Suit" Clause was incorporated into Lloyd's policies to assure potential policyholders that Lloyd's "would be amenable to service of process in the United States"; Clause is not mandatory forum selection clause since "the plain meaning of the words used by the parties to this contract does not manifest an intention to limit jurisdiction to a particular forum"); Columbia Cas. Co. v. Bristol-Myers Squibb Co., 635 N.Y.S. 2d at 177(same -- "Service of Suit" Clause is a "permissive" or "Consent to Jurisdiction" provision, not a mandatory forum selection clause); Price v. Brown Group, Inc. 619 N.Y.S. 2d 414, 417, 418 (A.D. 4 Dept. 1994) (same).[8]

Indeed, when effecting service of their state court papers upon Mendes & Mount in accordance with the provisions of the "Service of Suit" Clause, defendants themselves previously recognized that the purpose of the Clause is simply to confer personal jurisdiction. In these circumstances, defendants cannot properly hope to succeed in using the "Service of Suit" Clause as a mandatory forum selection clause for purposes of excluding this Court's jurisdiction.

**B.    The Florida Statutory Provision Cited By Defendants In An Effort To Bar This Court From Hearing This Action Is Inapplicable.**

As part of its effort to avoid this Court's jurisdiction, defendants have also urged that ACE is prohibited from maintaining this action by Section 626.903 of the Florida Statutes. (Mem. at pp. 8, 9). This is incorrect. Federal maritime law, not Florida law, controls this case, and, in any event, the cited statutory provision does not support defendants' position.

---

[8]Such case law is set forth in the analogous setting of forum non conveniens motions brought by insurers to change the state court venue chosen by an insured in coverage disputes arising in respect of policies containing "Service of Suit" Clauses identical to that relied upon here by defendants.

Section 626.903 provides that:

> As to transactions not permitted under s. 624.402, no unauthorized insurer shall institute, file, or maintain, or cause to be instituted, filed, or maintained, any suit, action, or proceeding in this state to enforce any right, claim, or demand arising out of any insurance transaction in this state.

Section 626.903 (emphasis added).

Defendants have mistakenly claimed that none of the categories of transactions set forth in Section 624.402 as being exempted from the provisions of Section 626.903 applies to the circumstances of this case. Actually, subsection (2) of Section 624.402 is applicable, and relieves ACE from the requirement of obtaining a certificate of authority. Subsection (2) provides that:

> A certificate of authority shall not be required of an insurer with respect to:
>
> (2) Transactions involving a policy, subsequent to issuance thereof, covering only subjects of insurance not resident, located, or expressly to be performed in this state at the time of issuance, and lawfully solicited, written, or delivered outside this state.

Defendants have claimed that this exemption does not apply because they indicated in their insurance application that the M/Y BASIL'S would be moored in the Bahamas during the Winter and in Florida during the Summer. (Mem. at p. 9). Defendants' argument misses the mark. The exemption is clearly intended to relieve an insurer from the obligation of obtaining a certificate of authority in circumstances other than those in which the subject of insurance has a fixed or permanent connection with the State of Florida. Such circumstances are, of course, present here, where the subject of insurance is a British-flagged super-yacht which is registered and listed as having its hailing port in a foreign country, is owned by a foreign corporation, and, by its very nature, is transient and, hence, has no fixed location. See, e.g., Merchants Nat. Bank v. Dredge Gen. G.L. Gillespie, 663 F.2d 1338, 1344, 1348 (5th Cir. 1981) (noting the "wandering" and "fugacious" nature of vessels in the maritime lien context).

Thus, because there is no fixed or permanent relationship between the M/Y BASIL'S and Florida, the policy does <u>not</u> cover the type of risk viewed by Florida statutory provisions as being "resident, located, or expressly to be performed in" Florida. Moreover, because the policy covering the M/Y BASIL'S was properly placed with ACE in London through defendants' London agent, Crawley Warren & Company, there is no valid basis for defendants to dispute the fact that this insurance was "lawfully solicited, written, or delivered outside [Florida]." Indeed, defendants do not seriously contend otherwise.

In such circumstances, Section 626.903 clearly does not operate to prevent this Court from continuing with these proceedings. An inapplicable state statute simply cannot properly be utilized to preclude this Court from exercising the original jurisdiction it has long had over admiralty matters pursuant to Article III, § 2, cl. 1 of the United States Constitution. Defendants' statutory argument is plainly unavailing and should be rejected.

**C.    Because This Dispute Is Governed By Federal Maritime Law, There Is No Proper Basis For Defendants' Request That This Court Dismiss Or Stay These Proceedings In Favor Of Defendants' State Court Action.**

Defendants devote the majority of their Brief to urging this Court to refuse to hear ACE's Complaint on the basis that it is somehow more appropriate for a state court to resolve the parties' dispute. (Mem. at pp. 9-19). To this end, defendants have mistakenly represented that their request for a dismissal or stay of these proceedings is proper under the standards established by the United States Supreme Court's decisions in <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491, 62 S. Ct. 1172 (1942) and, most recently, <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 115 S. Ct. 2137 (1995). They have also claimed their motion is supported by a host of other federal court decisions listed in their papers.

Defendants' position is fundamentally flawed because this dispute is governed by federal

maritime law, not state law, and involves ACE's suit to rescind the marine insurance contract at issue based upon established principles of admiralty law. As a result, the authorities upon which defendants have relied -- all of which involve state law issues only -- are inapposite. Obviously, a case that turns upon federal law issues rather than state law issues is not one that "can better be settled" by a state court. Instead, a case controlled by federal law is for a federal court to hear and decide.

1. **The Standards Established in <u>Wilton</u> and <u>Brillhart</u> Focus On Whether The State Court Is Better Suited Than The Federal Court To Resolve The Parties' Dispute In Cases Not Governed By Federal Law.**

Defendants have urged this Court to "apply the standards set forth in <u>Wilton</u> and <u>Brillhart</u> and dismiss or stay [ACE's] lawsuit." (Mem. at p. 11). The problem with defendants' request is that it misperceives what the Supreme Court actually said in <u>Wilton</u> and <u>Brillhart</u>. Far from supporting defendants' motion to dismiss or stay these proceedings, the Supreme Court's reasoning actually demonstrates why defendants' motion should be denied.

The Supreme Court granted certiorari in <u>Wilton</u> in order to resolve a split among circuit courts concerning whether the <u>Brillhart</u> "discretionary" standard or the <u>Colorado River</u>/<u>Moses H. Cone</u> "exceptional circumstances" test[9] governs a district court's decision to dismiss or stay a declaratory judgment action in favor of a parallel state court proceeding 515 U.S. at 281. In addressing this issue in <u>Wilton</u> -- an action which was governed exclusively by state law -- the Supreme Court endorsed the <u>Brillhart</u> test and affirmed the lower court's stay of the federal

---

[9]<u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 96 S. Ct. 1236 (1976); <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 103 S. Ct. 927 (1983).

declaratory suit in deference to the state court action. Id. at 289-90.[10]

The Brillhart guidelines specifically address cases governed by state or "local" law. 316 U.S. at 496. Indeed, Brillhart made clear it was not speaking to cases governed by federal law, but rather only cases to be decided under state law and as to which a federal court's "[g]ratuitous interference with the orderly and comprehensive disposition of state court litigation should be avoided." Id. at 495.

As the Court recognized in Wilton, the critical inquiry under Brillhart is whether the nature of the controversy between the parties to the federal suit is such that their "dispute can better be settled" in the state court proceeding. Brillhart, 316 U.S. at 495, quoted in Wilton, 515 U.S. at 282

---

[10]Under the Colorado River/Moses H. Cone standard, federal district courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred by Congress. Colorado River, 424 U.S. at 817-18. In accordance with this standard, "[a]bdication of the obligation to decide cases can be justified...only in the exceptional circumstances where the order to repair to the State court would clearly serve an important countervailing interest." Moses H. Cone, 460 U.S. at 14, quoting Colorado River, 424 U.S. at 813. Under this test, "only the clearest of justifications will warrant dismissal." Moses H. Cone, 460 U.S. at 16, quoting Colorado River, 424 U.S. at 819 (emphasis in Moses H. Cone). The presence of federal law issues obviously must always be a "major consideration" that further weighs against finding those "exceptional circumstances" in which surrendering jurisdiction can be justified. Moses H. Cone, 460 U.S. at 26.

Because ACE's Complaint expressly seeks to rescind the policy as a result of defendants' material misrepresentations and non-disclosures, this action is not one that simply requests declarations interpreting an insurance contract. As a consequence, this Court's decision on whether to maintain and exercise jurisdiction may actually properly be conducted pursuant to the Colorado River/Moses H. Cone "exceptional circumstances" test. First State Ins. Co. v. Callan Assoc., Inc., 113 F.3d 161, 163 (9th Cir. 1997) (recognizing that a district court has a "virtually unflagging" obligation to hear an insurer's action to rescind a policy as a result of material misrepresentations and non-disclosures pursuant to the abstention standard set forth in Colorado River. Accord GEICO v. Dizol, 133 F. 3d 1220, 1225 & n.6 (9th Cir. 1998).

However, given the dominance of federal maritime law issues governing the resolution of this dispute, abstention in favor of defendants' state court action is clearly unwarranted even under the Brillhart test relied upon by defendants, as demonstrated below. It follows, a fortiori, that defendants' request for the dismissal or stay of ACE's Complaint also lacks any basis under the more exacting Colorado River/Moses H. Cone abstention standard.

12

(emphasis added). The <u>Wilton</u> Court described both the type of inquiry to be made under <u>Brillhart</u> and <u>Brillhart</u>'s caution against federal court interference in litigation that may more sensibly be handled as a matter of state law by the state court:

> The Court [in <u>Brillhart</u>] explained that '(o)rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, <u>not governed by federal law</u>, between the same parties.' The question for a district court presented with a suit under the Declaratory Judgment Act, the Court [in <u>Brillhart</u>] found, is 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, <u>can better be settled in the proceeding pending in the state court</u>.'

515 U.S. at 282, quoting <u>Brillhart</u>, 316 U.S. at 495 (emphasis added).

The <u>Wilton</u> Court also explained what this inquiry involves:

> If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment <u>will serve no useful purpose</u>, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.

515 U.S. at 288 (emphasis added).

Surely there are instances where a state court can better handle disputes to be resolved under state law, and where, for that reason, continuing federal court involvement "will serve no useful purpose." That is exactly why the Court in <u>Wilton</u> determined that, in the case before it, the lower court's stay was supported by the admonition in <u>Brillhart</u> against a federal court's "gratuitous interference" with a state court's disposition of cases involving only state law issues. Indeed, <u>Brillhart</u> cautioned against a federal court's "attempt to pronounce independently upon [state] law," reasoning that "[t]o do so would be to disregard the limitations inherent in our appellate jurisdiction. It is not our function to find our way through a maze of [state] statutes and decisions ..." <u>Brillhart</u>, 316 U.S. at 497. Thus, consistent with <u>Brillhart</u>, the Court concluded in <u>Wilton</u> that the lower court

13

was justified in deciding that the litigation could "better be settled" in state court:

> ... <u>Brillhart</u> indicated that, <u>at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court</u>, a district court might be indulging in '(g)ratuitous interference' if it permitted the federal declaratory action to proceed.
>
> <u>Brillhart</u>, without more, clearly supports the District Court's decision in this case.

515 U.S. at 283, quoting <u>Brillhart</u>, 316 U.S. at 495 (emphasis added).

The <u>Wilton</u> Court made clear, however, that its decision did no more than analyze a district court's discretion to abstain from a declaratory suit in favor of a concurrent state court action when the parties' dispute involves only state law issues. The court expressly stated that it was <u>not</u> addressing the issue of what discretion a federal court has in deciding whether to proceed in a declaratory action raising issues of federal law:

> We do not attempt at this time to delineate the outer boundaries of [a district court's] discretion in other cases, for example, <u>cases raising issues of federal law</u> or cases in which there are no parallel state proceedings. Like the Court of Appeals, we conclude only that the District Court acted within its bounds in staying this action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court.

515 U.S. at 290 (emphasis added).

In stark contrast to the <u>Wilton</u> and <u>Brillhart</u> cases, this action does not involve solely state law issues. Because the case at bar instead raises -- indeed, turns on -- important federal maritime law issues, it involves a federal interest of the very type absent in <u>Wilton</u> and <u>Brillhart</u>. It is precisely because federal maritime law is dispositive of the parties' dispute that this case does not begin to involve a federal court's "gratuitous interference" with a state court's handling of litigation raising state law issues, or a federal court's "attempt to pronounce independently upon [state] law." <u>Brillhart</u>, 316 U.S. at 497. Under the <u>Brillhart</u> test, because of the importance of federal maritime

law issues, the parties' dispute cannot "better be settled" in defendants' Florida state court action.

Thus, this is hardly a case where further federal court involvement would "serve no useful purpose."

To the contrary, the federal interest in this Court's exercise of its admiralty jurisdiction over this case

is compelling because federal maritime law supplies the rule of decision.

**2.    The Established Federal Maritime Law Principles Of "Uberrimae Fidei" And
The Implied Warranty Of Seaworthiness Control This Dispute.**

There are two-well settled rules of federal maritime law which govern this dispute: the

doctrine of "uberrimae fidei" and the implied warranty of seaworthiness. In its Complaint, ACE has

pleaded both of these admiralty principles.

**(a)    The Doctrine Of "Uberrimae Fidei"**

It is well-established in the Eleventh Circuit that the doctrine of "uberrimae fidei" is a firmly

entrenched principle of federal maritime law that governs an insurer's entitlement to rescind a marine

insurance contract based upon the insured's material misrepresentations or non-disclosures.

Steelmet, Inc. v. Caribe Towing Corp., 747 F.2d 689, 695 (11th Cir. 1984); Certain Underwriters at

Lloyds, London v. Giroire, 27 F. Supp. 2d 1306, 1311-12 (S.D. Fla. 1998); Northfield Ins. Co. v.

Barlow, 983 F. Supp. 1376, 1379 (N.D. Fla. 1997). As this Court recognized in Giroire:

> "Uberrimae fidei" requires parties to a maritime insurance contract to deal in utmost
> good faith. The insurance applicant must voluntarily and accurately disclose to the
> insurance company all facts which might have a bearing on the insurer's decision to
> accept or reject the risk...The rationale for applying the doctrine of "uberrimae fidei"
> was stated long ago by the Supreme Court which recognized that a marine
> underwriter often has no practicable means of checking on either the accuracy or the
> sufficiency of the facts furnished him by a prospective insured until after the risk has
> been accepted. The doctrine of "uberrimae fidei" was established in order to ease the
> insurer's burden.

29 F. Supp. 2d at 1311 (citation omitted).

Thus, as this Court has previously held, under "uberrimae fidei," a material non-disclosure

or misrepresentation -- even if innocent or inadvertent -- voids the contract and is grounds for rescission. Giroire, id. at 1312.

Here, as in Giroire, ibid., the parties clearly intended the obligations under the principle of "uberrimae fidei" to apply to the marine insurance policy at issue since language in the Covernotes issued by defendants' London and U.S. brokers, as well as in the policy itself, is consistent with the duty of full and accurate disclosure under this doctrine. Counts I, II, and III of ACE's Complaint have therefore sought rescission of the policy pursuant to the doctrine of "uberrimae fidei" in light of defendants' material misrepresentations and non-disclosures in respect of multiple aspects of their application for insurance, including the loss history of the M/Y BASIL'S and the purchase price, condition/classification, crew and use of the vessel.

**(b)    The Implied Warranty Of Seaworthiness**

The implied warranty of seaworthiness is also "solidly entrenched in federal maritime jurisprudence" and therefore clearly governs this dispute. See Aguirre v. Citizens Cas. Co. of New York, 441 F.2d 141, 146 (5th Cir.), cert. denied, 404 U.S. 829 (1979). The warranty of seaworthiness means that "the vessel is reasonably fit for the intended use." Id. at 144. Accord Lloyd's U.S. Corp. v. Smallwood, 719 F. Supp. 1540, 1549 (M.D. Fla. 1989), aff'd 903 F.2d 828 (11th Cir. 1990). The warranty therefore includes not only the requirement that the vessel is fitted out with all proper equipment in good working order but also the requirement of an adequate and competent crew. Aguirre, 441 F.2d at 144.

Under federal maritime law, two warranties of seaworthiness are implied in a time hull insurance policy such as is at issue here. The first is an absolute warranty that the vessel is seaworthy at the inception of the policy. The breach of this warranty voids the policy. Kilpatrick

Marine Piling v. Fireman's Fund Ins. Co., 795 F.2d 940, 945 (11th Cir. 1986); Saskatchewan Government Ins. Office v. Spot Pack, Inc., 242 F.2d 385, 388 (5th Cir. 1957); Smallwood, 719 F. Supp. at 1549. The second implied warranty applies after the policy has attached and is a negative, modified warranty "that the Owner, from bad faith or neglect, will not knowingly permit the vessel to break ground in an unseaworthy condition." The breach of this warranty means there is no liability under the policy for loss or damage that results from the unseaworthy condition. Spot Pack, 242 F.2d at 388. Accord Kilpatrick, 795 F.2d at 945; Smallwood, 719 F. Supp. at 1549.

ACE's Complaint asserts in Counts IV and V that defendants breached both the absolute warranty of seaworthiness at the inception of the policy and the negative, modified warranty after the policy attached. The Complaint alleges that the M/Y BASIL'S was unseaworthy for a number of reasons, including its insufficient and incompetent crew, its non-functional fire alarm and fire suppression systems, and also its lack of maintenance, and seeks to void the policy as a consequence.

**3.     Case Law Applying The Wilton and Brillhart Standards To Disputes Governed By Federal Law Demonstrates That A Federal Court Should Exercise Jurisdiction Rather Than Defer To A Parallel State Court Action.**

Because federal maritime rules control this dispute, a proper application of the Wilton and Brillhart standards supports the exercise of this Court's admiralty jurisdiction. The case law applying these standards to proceedings involving federal law issues -- while conspicuously absent from the lengthy list of authorities provided to the Court by defendants -- clearly demonstrates that such proceedings are obviously not better suited for a state court and that it is therefore not appropriate for a federal court to defer to a state court in such circumstances.

For example, in Youell v. Exxon,[11] 74 F.3d 373 (2d Cir.), cert. denied, 517 U.S. 1251, 116

---

[11]The full citation is 48 F.3d 105 (2d Cir.), cert. granted, judgment vacated, 516 U.S. 801, 116 S. Ct. 43 (1995), on remand, 74 F.3d 373, cert. denied, 517 U.S. 1251, 116 S. Ct. 2514 (1996).

S.Ct. 2514 (1996), the Second Circuit applied the <u>Brillhart</u> test to review the district court's dismissal of a declaratory judgment action, brought by underwriters and over which there was admiralty jurisdiction, in favor of the parallel state court action instituted by the policyholder. The federal proceedings involved a contract of marine insurance and were governed by federal maritime law. Indeed, the case presented "a novel issue of federal admiralty law" -- namely, "whether maritime losses caused by an insured's recklessness are fortuitous." 74 F.3d at 376.

The Second Circuit held that, under the <u>Brillhart</u> standard, the district court had abused its discretion in dismissing underwriters' declaratory suit. The Court reached this conclusion because, unlike matters involving only state law issues, an important issue of federal maritime law was central to the resolution of the parties' dispute. The Court determined that federal adjudication would not constitute "[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation" and found that the dispute clearly could not "better be settled" in the insured's state court action. <u>Id.</u>, quoting <u>Brillhart</u>, 316 U.S. at 495. The Second Circuit therefore reinstated underwriters' declaratory judgment action. <u>Id.</u>

Other decisions join <u>Youell</u> in recognizing that it is inappropriate for a federal court to defer to a state court when the parties' dispute is controlled by federal law issues rather than purely state law issues. <u>See, e.g.</u>, <u>Dittmer v. City of Suffolk</u>, 146 F.3d 113, 118 (2d Cir. 1998) (abstention inappropriate when dispute raises federal law issues); <u>Epling v. Golden Eagle/Satellite Archery, Inc.</u>, 17 F. Supp. 2d 207, 210-11 (S.D.N.Y. 1997) (issues of federal patent law make abstention in favor of pending state court action inappropriate since dispute cannot better be resolved in state court litigation); <u>Cortez v. CMG Worldwide, Inc.</u>, 962 F. Supp. 308, 310 (N.D.N.Y. 1997) (abstention inappropriate in light of novel federal question involving Lanham Act).

The case law providing that it is not appropriate for a federal court to defer to a state court in proceedings involving federal law issues makes fundamental good sense. A federal court should decide issues of federal law. Unlike cases involving solely state law issues, a state court is simply not better suited than a federal court to hear and resolve cases governed by federal law.

None of the authorities furnished by defendants when requesting this Court to dismiss or stay these proceedings supports their request. Even though ACE's Complaint makes clear that this dispute is plainly governed by principles of federal maritime law, all of the case law cited by defendants -- 28 cases in all -- involves disputes raising state law issues. None of these cases discusses the significance of a federal admiralty court deciding issues of federal maritime law. Hence, none of defendants' authorities actually even applies.[12]

_____

[12]Both Travelers Indem. Co. v. Boles, 503 F. Supp. 179 (N.D.Ca. 1980) and Homestead Ins. Co. v. Kim Hung, Inc., 1994 WL 518261 (E.D. La. 1994), cases decided before Wilton and Youell and cited by defendants at pp. 18, 19 of their Brief, are among defendants' inapposite authorities. In Boles, the court focused on the state law claims asserted in the state court action and also noted that the insurers argued only that admiralty law "might" apply to an interpretation of the policy, pointing out that the insurers had failed to provide any special reason why it should not defer to the policyholder's state court proceeding. 503 F. Supp. at 182. Likewise, in Kim Hung, no governing principle of admiralty law was presented to the district court as controlling the parties' dispute. This is hardly so here where ACE's action to rescind the policy is based upon governing principles of federal maritime law that are dispositive of the parties' dispute. It is, of course, the dominance of federal maritime issues in these proceedings that defeats defendants' request for dismissal or a stay. Cf. John Deere Ins. Co. v. Smith Lighterage Co., Inc., 948 F. Supp. 947, 949-50 (W.D. Wash. 1996) (deferring to a state court where "important" state law issues "predominate" the parties' dispute such that they "outweigh" any federal maritime issues that are also part of the case).

Much of defendants' effort is also devoted to their claim that ACE's Complaint should be dismissed because it was filed for purposes of "procedural" fencing to try to deprive defendants of their chosen forum. (Mem. at pp. 11-15). This argument is of no moment. Not only is the charge untrue -- if anything, it is defendants' state court proceedings, including their sham October 11, 1999 "Complaint" filed to secure a premature docketing, that represent the type of preemptive strike that is sometimes disapproved. More importantly, after Wilton, defendants' erroneous claim of forum shopping is not even a factor to consider in the proper application of the Brillhart test. See, e.g., Cortez, 962 F. Supp. at 310 n.4. Rather, what matters is whether the dispute involves purely state law issues which the federal court determines "can better be settled" in state court, or, as here, is a

## IV.
## CONCLUSION

There is no merit in any of the arguments asserted by defendants in support of their effort to avoid this Court's exercise of admiralty jurisdiction. Matters of federal maritime law should be heard and resolved by a federal court. Because this dispute is properly before this Court, this Court should decide it.

WHEREFORE, for all of the foregoing reasons, this Court is respectfully requested to deny defendants' Motion to Dismiss or, in the Alternative, for a Stay of Proceedings.

Respectfully submitted,

FERTIG & GRAMLING
200 S.E. 13th Street
Fort Lauderdale, FL 33316
Tel: (954) 763-5020
Fax: (954) 763-5412

Of Counsel:

PALMER BIEZUP & HENDERON LLP
Michael B. McCauley
H. Coleman Switkay
956 Public Ledger Building
620 Chestnut Street
Philadelphia, PA 19106
Tel: (215) 625-9900
Fax: (215) 625-0185

By:_____
Christopher R. Fertig
Florida Bar No. 218421
Attorneys for Plaintiff
ACE Insurance Company S.A.-N.V.
(formerly known as CIGNA Insurance
Company of Europe S.A.-N.V.)

DATED: April 3, 2000

---

dispute governed by federal law. Indeed, one of defendants' own cases -- <u>Lumbermens Mut. Cas. Co. v. Ins. Co. of Pa.</u>, 45 F. Supp. 2d 1349 (S.D.Fla. 1999), a case also raising only state law issues -- recognizes that defendants have missed the mark with their mistaken claim of forum shopping, pointing out that, under the <u>Wilton</u> and <u>Brillhart</u> standards: "What is more important in the final analysis is that the district court look at whether the state and federal court proceedings involve 'ventilation of the same state law issues.'" <u>Id.</u> at 1352, quoting <u>Wilton</u>, 515 U.S. at 283.