NON-COMPLIANCE OF S.D. fla. L.R. 5.1(A)(1)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
AT LAW AND IN ADMIRALTY

CIGNA INSURANCE COMPANY  CASE NO. 00-6097 (WPD)
OF EUROPE S.A.-N.V.

      Plaintiff,  FLORIDA BAR NO. 503630

v.

FIRST SOUTH DEVELOPMENT
AND INVESTMENT LTD., And
WILLIAM STOVER,

      Defendants.
_____/



APR 12 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D OF FLA. FT. LAUD.

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS

Defendants First South Development and Investment Ltd. (hereinafter "First South") and William Stover (hereinafter "Stover"), by and through their undersigned attorneys, pursuant to Local Rule 7.1(c), file this memorandum in reply to the plaintiff's response in opposition to motion to dismiss or, in the alternative, for a stay of proceedings, and state as follows:

      **I.**    **Preliminary Statement**

The gist of CIGNA Europe's response to First South's and Stover's motion to dismiss is that the case is governed by "federal maritime law" and it is therefore more appropriate for a Federal court to hear the case. This position represents a fundamental misinterpretation of maritime law. State and federal courts exercise concurrent jurisdiction over maritime claims, and state courts have played a large role in the development of maritime law.



In <u>Romero v. International Terminal Operating Co.</u>, 358 U.S. 354, 79 S. Ct. 468 (1959), the United States Supreme Court rejected the argument that maritime cases should be considered federal question cases. The Court stated that:

> By making maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters – a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve.
>
> \* \* \*
>
> Although the corpus of admiralty law is federal in the sense that it derives from the implications of Article III evolved by the courts, to claim that all enforced rights pertaining to matters maritime are rooted in federal law is a destructive oversimplification of the highly intricate interplay of the States and the National Government in their regulation of maritime commerce. It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still leaves the States a wide scope.
>
> \* \* \*
>
> Maritime law is not a monistic system. The State and Federal Governments jointly exert regulatory powers today as they have played joint roles in the development of maritime law throughout our history.
>
> 358 U.S. 372-374, 79 S. Ct. 480, 481.

The saving-to-suitors clause of 28 U.S.C. 1333(1) grants jurisdiction of admiralty or maritime claims to district courts, while "saving to suitors in all cases all other remedies to which they are otherwise entitled." The saving-to-suitors clause provides a plaintiff who has an *in personam* claim the choice of proceeding in an ordinary civil action in a state or federal court,

2

rather than bringing a libel in admiralty in federal court. Concordia Co. v. Panek, 115 F. 3d 67 (1st Cir. 1997). See also, Lady Deborah, Inc. v. Ware, 855 F. Supp. 871 (E.D. Va. 1994) (staying vessel owner's declaratory judgment action in deference to plaintiff's choice of state forum in action for maintenance and cure arising out of injuries onboard vessel).

States have traditionally exercised broad regulatory powers particularly with respect to marine insurance. The United States Supreme Court emphasized this fact in Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S. Ct. 368 (1955). The plaintiffs in Wilburn Boat owned a vessel which was destroyed by fire. Fireman's Fund denied the plaintiff's insurance claim and the plaintiffs filed suit in state court. Fireman's Fund removed the case based on diversity. The plaintiffs argued that Texas state law with respect to enforcement of insurance policy warranties applied. The district court rejected the plaintiff's arguments based upon its conclusion that since a marine policy is a maritime contract, federal admiralty law governed, as opposed to state law. The Fifth Circuit affirmed the ruling, but the Supreme Court reversed. The Court noted that state regulatory power "has always been particularly broad in relation to insurance companies and the contracts they make" and that "Congress has not taken over the regulation of marine insurance contracts . . . ." 348 U.S. at 314, 75 S. Ct. at 370. The Court went on to state that "the whole judicial and legislative history of insurance regulation in the United States warns us against the judicial creation of admiralty rules to govern marine policy terms and warranties." 348 U.S. at 316, 75 S. Ct. at 371. In its concluding paragraph, the Court stated that "[w]e, like Congress, leave the regulation of marine insurance where it has always been – with the States." 348 U.S. 321, 75 S. Ct. 374.

In short, state courts are as capable as federal courts of applying maritime law and are probably more appropriate for determining issues of state law regarding interpretation and enforcement of marine insurance policies.

## II.     Reply to CIGNA Europe's Statement of Facts

The allegations in CIGNA Europe's statement of facts are primarily aimed toward disclaiming any relationship between this insurance claim and the State of Florida. CIGNA Europe's allegations in this respect are belied by the fact that they filed this suit in Florida. Also, CIGNA Europe notes that "defendant Stover now purports to be a Florida resident." See Footnote 1, p. 3 of CIGNA Europe's Memorandum. To the contrary, Stover has been a Florida resident since 1987. He is registered to vote in Florida and holds a Florida driver's license. See pages 8-11, Examination Under Oath of William Stover, dated January 6, 2000, copies of which pages are attached. Stover was not asked on the insurance application for his residence address. In response to a question concerning the owner's address on the application, Stover listed a post office box for First South. If CIGNA Europe wanted to know the location of Stover's residence, it should have asked.

In addition, CIGNA Europe argues that First South's and Stover's state court complaint was premature and even calls it a "sham". First South and Stover believe that they had a cause of action for anticipatory breach when CIGNA Europe rejected their proof of loss. The 90-day period for payment under the policy is triggered by the insureds' filing of a proof of loss. The insurer's unauthorized and unilateral rejection of the proof of loss was also a rejection of its obligation to pay within 90 days of the insureds' filing their proof of loss. Those issues, however, are before the state court to decide.

## III.    Service of Suit Clause

CIGNA Europe argues that it is not bound by the Service of Suit Clause contained in Section "F" of the policy because Section "F" is not a part of the policy and because the Service of Suit Clause is not a mandatory forum selection clause. First, with respect to whether Section "F" is part of the policy, the entire policy is attached to CIGNA Europe's complaint.

4

Section "F" is clearly a part of the policy and nothing in the policy states to the contrary. An insurance company cannot issue a policy containing a particular clause and then take the position that the clause is not part of the policy because some other part of the policy does not refer to that clause.

This Court does not need to reach the issue as to whether the Service of Suit Clause is a mandatory forum selection clause. Section "F" of the policy states that "[i]t is agreed that in the event of the failure of the Assurers to pay any amount claimed to be due hereunder, the Assurers, at the request of the Assured (or Reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court." Particularly since the insureds filed suit first, CIGNA Europe is obligated under Section "F" to "comply with all requirements necessary" to give the state court jurisdiction and all matters arising in the claim "shall be determined in accordance with the law and practice" of the state court. CIGNA Europe requests this Court to ignore the plain meaning of those words.

**IV.   CIGNA Europe is Prevented by Florida Law From Filing Suit in Florida**

CIGNA Europe attempts to avoid Florida's statutory bar against suits in the state brought by unauthorized insurers by arguing that the state law does not apply because this is a maritime case, and by arguing that the statute only applies to subjects of insurance which have a "fixed or permanent" connection with Florida. There is no legal basis for CIGNA Europe's first argument and no logical basis for its second argument.

As set forth fully in Section I, above, states have broad rights to regulate the insurance industry, including maritime insurers. It cannot be seriously contended, and CIGNA Europe does not appear to contend, that there is an entrenched admiralty rule allowing marine

5

insurers to file suit wherever they choose without respect to authorization from the states in which they transact insurance. CIGNA Europe argues that Section 624.402(2), Florida Statutes, relieves it from the requirement of obtaining a certificate of authority. That subsection only exempts "subjects of insurance not resident, located, or expressly to be performed in this state at the time of issuance, and lawfully solicited, written, or delivered outside this state." The policy was issued in July, and the application stated that the vessel's summer mooring would be Fort Lauderdale. Accordingly, the subject of insurance was located or resident in Florida and the exemption in 624.402(2) is not applicable.

CIGNA Europe also argues that § 626.903, Florida Statutes, does not apply to vessels because they are transient. If the Legislature had intended to exempt vessels, or wet marine insurance in general, from § 626.903, it could have done so. For example, wet marine is exempted from §§ 626.904 through 626.911. See § 626.912. There is no such exemption for wet marine insurance from § 626.903. The fact that vessels can be transient is irrelevant. The same could be said for automobiles or aircraft. If CIGNA Europe's argument were adopted, an insurer of virtually any type of vehicle could argue that it is not required to obtain a certificate of authority to transact insurance in Florida simply because the vehicle could move to another state or country.

### V.   This Court Should Exercise Its Discretion to Dismiss or Stay These Proceedings in Favor of the Insureds' State Action

CIGNA Europe cites to only one maritime case in support of its argument that this Court should not stay or dismiss this case. The only maritime case CIGNA Europe cites is Youell v. Exxon Corp., 74 F. 3d 373 (2d Cir. 1996). In Youell, the Second Circuit specifically determined that, in the wake of the Exxon Valdez oil spill, it was necessary to create a uniform federal rule with respect to whether maritime losses caused by an insured's recklessness are

fortuitous, an issue which the court described as "truly a brooding omnipresence." 74 F. 3d at 376.

The Youell decision was distinguished by the court in John Deere Insurance Co. v. Smith Lighterage Co., Inc., 948 F. Supp. 947 (W.D. Wash. 1996). In John Deere, a marine insurer brought a declaratory judgment lawsuit against its insured seeking a determination of non-coverage for the sinking of the vessel. Two weeks after the insurers filed the declaratory judgment suit, the insureds filed suit in state court in Alaska. The insureds moved the federal court to dismiss the insurer's declaratory judgment action and the court granted the motion. The court distinguished Youell stating that "[t]hat case can be distinguished because the Second Circuit decided that the question presented . . . was significant enough to warrant formulation of a rule in federal maritime law." 948 F. Supp. at 949.

Like CIGNA Europe in this case, the insurers in John Deere argued that the doctrines of *uberrimae fidei* and unseaworthiness justified the federal court in retaining jurisdiction over the case. The court rejected the argument, citing to other issues which would be determined in accordance with state law, such as the "important issue of the relationship between insurance brokers and underwriters." 948 F. Supp. at 949. That issue will also be important in this case with respect to not only C.A. Hansen in Fort Lauderdale, but Crawley Warren, who CIGNA Europe claims is the agent of the insureds. The insureds vehemently deny that Crawley Warren acts in any way on their behalf or in their favor.

Some of the other issues governed by state law which will be addressed in this case include (1) where the contract was formed; (2) where the contract was to be performed; (3) the effect of the Service of Suit Clause; (4) whether CIGNA Europe transacted insurance in Florida; (5) whether CIGNA Europe is authorized to file suit in the State of Florida; (6) the legality of CIGNA Europe's investigation in the State of Florida; (7) the materiality of

representations which CIGNA Europe claims were not accurate; and (8) whether CIGNA Europe had a contractual right to unilaterally reject the insureds' proof of loss.

The remaining cases CIGNA Europe cites are inapposite because they are not maritime cases and involve federal law issues such as patent and violations of the Lanham Act.

### VI.   Conclusion

Based upon the foregoing and for the reasons more fully set forth in the insureds' motion to dismiss, this Court should dismiss or stay these proceedings pending the outcome of the state court action previously filed by the insureds.

Dated this 10th day of April, 2000.

HOLLAND & KNIGHT LLP

By: _____
J. Raul Cosio
Florida Bar No.: 503630
Robert M. Dees
Florida Bar No.: 714399
701 Brickell Avenue, Suite 3000
Miami, Florida 333131
Tel: (305) 374-8500
Fax: (305) 789-7799

Attorneys for Plaintiffs First South
Development & Investment, Ltd. and
William T. Stover

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served by U.S. Mail to Christopher R. Fertig, Esquire, Fertig & Gramling, 200 Southeast 13th Street, Fort Lauderdale, Florida 33316, on this 12th day of April, 2000.

                                        _____
                                                  Attorney

JAX1 #543836 v1

# ADDITIONAL ATTACHMENTS NOT SCANNED

PLEASE REFER TO COURT FILE